## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| KLEIN & HEUCHAN, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> COSTAR REALTY INFORMATION, INC., and COSTAR GROUP, INC., <br><br> *Defendants-Counterclaim Plaintiffs,* <br><br> v. <br><br> SCOTT BELL and KLEIN & HEUCHAN, INC., <br><br> *Counterclaim-Defendants.* | Civil Action No. 8:08-cv-01227-JSM-MSS |

### COUNTERCLAIM PLAINTIFFS COSTAR REALTY INFORMATION, INC. AND COSTAR GROUP, INC.'S OPPOSITION TO COUNTERCLAIM DEFENDANT <u>SCOTT BELL'S MOTION TO DISMISS</u>

Counterclaim Plaintiffs CoStar Realty Information and CoStar Group, Inc. (collectively, "CoStar"), by their attorneys, submit this Opposition to the Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) filed by Counterclaim Defendant Scott Bell. For the reasons set forth below, Bell's motion should be denied in its entirety.

1

## INTRODUCTION AND SUMMARY

Bell's motion to dismiss ignores the well-pleaded allegations of CoStar's complaint against him. CoStar's allegations provide a more than ample basis to support CoStar's claims against Bell, and his motion should be dismissed.[1]

**CoStar Has Sufficiently Alleged A Claim Under 18 U.S.C. § 1030**. Bell's central contention in his motion to dismiss CoStar's claim under 18 U.S.C. § 1030 is that CoStar has failed to allege that it has suffered an *interruption in service* that caused it a $5,000 or greater loss. However, Bell's assertion that CoStar is required to plead and prove an interruption of service is based on an incorrect reading of the civil remedy provisions of Section 1030 that has been adopted by a minority of district courts. As set forth in detail below, the plain language of Section 1030 suggests that a civil plaintiff need only plead and prove *any* loss of $5,000 or more, which *includes* losses from an interruption of service, but does not *exclude* any other losses. 18 U.S.C. § 1030(e)(11). Indeed, Bell's reading of the Section 1030(e)(11) would render portions of that subsection a nullity, a result that should be avoided under established canons of statutory interpretation.

**CoStar Has Sufficiently Alleged A Copyright Claim.** Bell's key contention as to why CoStar has failed to allege a copyright infringement claim with specificity is based solely on an Eastern District of Virginia case that has not only has been specifically criticized by the leading

---

[1] Moreover, Bell's brief copies verbatim portions of a motion filed against CoStar in the District of Maryland in another case, *CoStar Realty Information, Inc. et al. v. Mark Field d/b/a Alliance Valuation, et al.*, Dist. Md. Docket No. 8:08-CV-663-AW. Indeed, Bell's brief does not even make substantial efforts to update the precedent to reflect the fact that this case is before a Florida court rather than one in Maryland. And, had Bell engaged in his own independent evaluation of the arguments made in CoStar's opposition to the Maryland motion, he would have learned that at least one of the cases upon which he relies, *Paragon Services, Inc. v. Hicks,* 843 F. Supp. 1077, 1081 (E.D. Va. 1994), is a case that was later recognized *by the same court* to have been wrongly decided, *Jetform Corp. v. Unisys Corp.*, 11 F. Supp. 2d 788, 789-90 (E.D. Va. 1998), as explained further below.

treatise on civil procedure, but was later acknowledged to be bad law and counter to Supreme Court precedent by another court in the same district. Given the obvious lack of legal precedence of that case, Bell's argument is simply frivolous.

**Bell's "Commingling" Argument Is Wholly Unsupported**. Bell seeks to have the Court dismiss CoStar's cross-complaint on the grounds that CoStar has "commingled' its causes of action by engaging in the mundane act of *reincorporating by reference* the other allegations of the cross-complaint into each claim, and by requesting equitable relief on its breach of contract claim. This bizarre argument is unsupported by any precedent – and, indeed, the precedent cited by Bell has nothing whatsoever to do with the argument he raises. It should not have been raised by Lawson in the first instance, and Bell's attempt to re-assert that claim is cause for sanctions.

## FACTUAL BACKGROUND

Headquartered in Maryland, CoStar is a leading, national, commercial real estate information services provider. *See* Counterclaim ¶¶ 1, 2 & 9. This case arises out of Counterclaim Defendants' unauthorized use of CoStar's services, fraudulent representations and contract violations. *See id.* at ¶¶ 19-25.

CoStar's suite of proprietary, web-accessed information services help commercial real estate professionals, such as brokers, owners, lenders, appraisers, and REITs, to understand market conditions and identify and evaluate specific opportunities. *Id.* at ¶¶ 9-10. CoStar invests enormous effort and expense in building and maintaining its services, employing a research force of several hundred individuals located in Maryland alone. *Id.* CoStar licenses its products to businesses pursuant to written license agreements, for use by a designated number of individuals that are employees for those businesses at a site designated in the CoStar license agreement. *Id.* at ¶¶ 11-13. The CoStar license agreement prohibits password sharing of any

3

kind and set forth certain permitted and prohibited uses of the CoStar service and the content obtained therefrom. *Id.* ¶¶ 13-17. Furthermore, CoStar's login web page, as well as its web site Terms of Use, specifically reference the prohibition on logins by unauthorized users. *See id.* at ¶¶ 15-16.

CoStar provided Scott Bell's prior employer with a licensing agreement, which allowed Bell to use CoStar's services while he was still employed by that company. *See id.* at ¶¶ 19-21. However, as alleged in the cross-complaint, Bell continued to gain access to CoStar's services after his termination and provided data and the benefits from those services to his new employer, Plaintiff-Counterclaim Defendant Klein & Heuchan, Inc. *See id.* at ¶¶ 22-25. Bell used his unlicensed user name and password to obtain access to CoStar's products and to make unauthorized copies of CoStar's copyrighted works, including copyrighted photographs. *See id.* at ¶¶ 24-25.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a claim if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of a Rule 12(b)(6) motion, all of the factual allegations in the counterclaim must be accepted and construed in the light most favorable to the plaintiff. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998). A motion to dismiss does not test the merits of a case, but only requires that "the plaintiff's factual allegations, when assumed to be true '[are] enough to raise a right to relief above the speculative level.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).

**ARGUMENT**

I. **COSTAR HAS ALLEGED A VALID COPYRIGHT CLAIM**

Bell makes the argument that CoStar has failed to allege its copyright claim with sufficient particularity under a purportedly heightened pleading standard. In doing so, Bell hangs his rhetorical hat on a single case, *Paragon Services, Inc. v. Hicks,* 843 F. Supp. 1077, 1081 (E.D. Va. 1994), which, even a modicum of research would show is not only solitary among federal courts in its application of a heightened pleading standard to copyright infringement claims, but *is no longer good law in the district in which it was decided*. Bell's argument is thus not only meritless, it is frivolous.

After *Paragon* was decided, it was specifically criticized in the leading federal civil procedure treatise as being "in clear violation" of the Supreme Court's ruling in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160 (1993). *See* 5 Charles A. Wright & Arthur R. Miller, FED. PRACTICE AND PROCEDURE, § 1237 (Supp. 1997). And, indeed, when the Eastern District of Virginia, from whence *Paragon* came, revisited *Paragon*'s ruling just four years later, the court concluded that *Paragon* was wrongly decided. *See Jetform Corp. v. Unisys Corp.*, 11 F. Supp. 2d 788, 789-90 (E.D. Va. 1998). Instead, the *Jetform* court decided to follow the precedent of the Seventh Circuit in *Mid America Title Company v. Kirk,* 991 F.2d 417, 421-22 and n. 9 (7th Cir. 1993), which held that copyright infringement claims which merely allege ownership of the copyright by the plaintiff, registration in compliance with the applicable statute, and infringement by the defendant are sufficient under Fed. R. Civ. P. 8.[2]

---

[2] Bell also cites *Franklin Electronic Publisher, Inc. v. Unisonic Products Corp.* 763 F. Supp. 1 (S.D.N.Y. 1991) and *Hartman v. Hallmark Cards, Inc.*, 639 F. Supp. 816 (W.D. Mo. 1986) for the contention that there is a higher standard of pleading for copyright cases. It is inconceivable

In this case, CoStar has easily alleged sufficient facts to support a copyright claim against both Bell and Klein & Heuchan. In paragraphs 27 and 28 of the Counterclaims, CoStar alleges that it owns valid and registered copyrights in its databases of commercial real estate information as well as millions of photographs. In paragraphs 29 and 30 of the Counterclaim, CoStar alleges that Bell used his unauthorized access to CoStar's password-protected *services to make unauthorized copies and displays of CoStar's copyrighted databases and photographs*. And, as paragraphs 29 and 30 allege, such actions constituted infringement of CoStar's copyrights, which is consistent with an unbroken line of copyright precedents. *See, e.g.*, *Lowry's Reports, Inc. v. Legg Mason, Inc.* 271 F. Supp. 2d 737, 745 (D. Md. 2003); *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 518-19 (9th Cir. 1993) (finding that unauthorized transfer of copyrighted material into a computer's random access memory infringed owner's copyrights). CoStar then further provides, by way of example, a list of such photographs infringed by Bell, as well as their copyright registration numbers, as Exhibit A to the Counterclaim. *See* Counterclaim at ¶ 30 and Exh. A. Accordingly, CoStar has alleged the elements that are necessary to prove its copyright infringement claim. *See, e.g.*, *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1300 (11th Cir. 2008) ("To make out a prima facie case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright in [the allegedly infringed work] and (2) defendants copied protected elements from the [work].").

---

as to why Bell would cite these cases. In *Franklin Electronic Publisher*, the court *rejected* a heightened pleading standard for copyright cases, and evaluated the plaintiff's complaint under Federal Rule of Civil Procedure 8. *See* 763 F. Supp. at 4. In *Hartman*, in deciding a motion for summary judgment on a copyright claim, the court noted that "the plaintiff has presented a complaint which barely, if at all, is sufficient under Rule 8 . . . ." *Hartman*, 639 F. Supp. at 820. While the court went on to decide the merits of the summary judgment motion, it noted that general allegations of infringement of "all other animated productions, paper products, dolls, toys, and any other merchandising and licensing products" was too "broad" and "sweeping" to comply with Rule 8. *Id*. Unlike the *Hartman* plaintiff, CoStar has identified specific examples of registered copyrights infringed by Bell .

## II. COSTAR HAS STATED A CLAIM UNDER 18 U.S.C. § 1030

The crux of Bell's motion to dismiss CoStar's claim under 18 U.S.C. § 1030 is that CoStar has failed to allege that it has suffered an adequate loss of $5,000 or more under § 1030(e)(11). Citing two cases that stand in the distinct minority among federal cases, Bell would have the Court rewrite § 1030 to be limited only to instances in which the loss suffered by the Plaintiff resulted from an *interruption in service*. However, that reading is not only implausible in light of the plain language of the statute, but would render other portions of the statute a nullity, in violation of basic tenets of statutory construction.

The fallacy of Bell's position is made plain by the text of the definition of "loss" itself, which reads:

> (g) the term "loss" means *any reasonable cost to any victim*, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11) (emphasis added). By its own terms, Section 1030 applies broadly to "*any reasonable cost to any victim*" and then sets forth specific types of damages that are *included* in that definition of "reasonable cost." When a statute introduces a list with the term "including," courts generally interpreted the language that follows as enumerating "illustrative application[s]," not as constituting an "all-embracing definition." *Federal Land Bank of St. Paul v. Bismarck Lumber Co.,* 314 U.S. 95, 100, 62 S.Ct. 1 (1941). *Accord Bautista v. Star Cruises*, 396 F.3d 1289, 1297 (11th Cir. 2005).

The majority of courts addressing the issue have interpreted the plain language of Section 1030 broadly and to include losses arising from unauthorized access to the plaintiff's computers for the purposes of accessing information, such as presented in this case. In *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991, 996-97 (E.D. Cal. 2007), the court held

7

that the plaintiff had asserted a valid claim under 18 U.S.C. § 1030 when it alleged that it had suffered a loss of more than $5,000 as a result of the defendant's unauthorized use of a user name and passcode to access the plaintiff's computers. *See Charles Schwab & Co. v. Carter,* 2005 WL 351929, *3 (N.D. Ill. Feb. 11, 2005) (stating "several district courts have recognized that damage caused by unauthorized access or access in excess of authorization to a computer system may be redressed under the CFAA."); *Pacific Aerospace & Electronics, Inc. v. Taylor,* 295 F. Supp. 2d 1188, 1195 (E.D. Wash. 2003) ("Caselaw supports an employer's use of the CFAA's Civil Remedies to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer system"); *George S. May Int'l Co. v. Hostetler,* 2004 WL 1197395, *3 (N.D. Ill. May 28, 2004) (holding that plaintiff stated a claim under the CFAA when it alleged that the defendant had exceeded his authorized access and acquired trade secrets that were later used to the detriment of the plaintiff); *Creative Computing v. Getloaded.com LLC,* 386 F.3d 930, 936 (9th Cir. 2004) (holding that loss of business and business goodwill constitutes recoverable damages under the CFAA); *Resource Center for Independent Living, Inc. v. Ability Resources, Inc.*, 534 F. Supp. 2d 1204, 1210-11 and n. 30 (D. Kan. 2008).

To underscore the point that the CFAA's civil cause of action provision is not limited to interruptions of service, the court in *Frees, Inc. v. McMillan*, 2007 WL 2264457, *5-6 (W.D. La. Aug. 6, 2007), conducted an exhaustive analysis of the jurisdictional requirements of 18 U.S.C. § 1030. The court concluded that there was no statutory requirement that a loss be related to an "interruption of service" based on a reading of the plain language of the statute.[3] *Accord Ervin*

---

[3] All of these cases were decided *after* Congress's 2001 amendment to the Computer Fraud and Abuse Act. Accordingly, any argument that they are no longer good law is meritless. There is no basis for arguing (as Lawson did in its Maryland reply brief) that the courts deciding these

*& Smith Adver. & Pub. Rels., Inc. v. Ervin,* 2009 U.S. Dist. LEXIS 8096, *26-27 (D. Neb. February 3, 2009) (rejecting that losses are limited to those resulting from an interruption of service).

Bell's argument that claims under 18 U.S.C. § 1030 are limited to losses related to interruptions of service improperly reads out significant portions of the statute. As noted above, the definition of loss is written with an "including" clause that demands that the rest of the definition be read as *illustrative* and not exclusive. However, if, as Bell argues, the statute limited losses to those resulting from "interruptions of service," the language between "any reasonable cost to any victim" and "because of interruption of service" would be rendered superfluous. The cost of "conducting a damage assessment," despite being specifically allowed, could not support a claim under Bell's reading if there was no interruption of service. It is well-established that "'courts should disfavor interpretations of statutes that render language superfluous,'" *Gordon v. Novastar Mortg., Inc. (In re Hedrick)*, 524 F.3d 1175, 1189 (11th Cir. 2008) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146 (1992)) and that doing otherwise is an "interpretative no-no," *id*.[4]

Moreover, Bell's imposition of an "interruption of service" requirement on Section 1030 claims would make the tail of the statute (the jurisdictional "loss" requirement) wag the dog. After all, Section 1030(a)(4) makes it unlawful to knowingly access a computer without authorization does not reference an "interruption of service":

> knowingly and with intent to defraud, access[] a protected computer without authorization, or exceed[] authorized access, and by means of such conduct

---

cases were unaware of the 2001 amendment to the definition of loss. Indeed, their interpretation of § 1030(e)(11) is the only one consistent with the plain statutory construction of § 1030(e)(11).
[4] Indeed, had Congress intended to limit "losses" to those resulting from an "interruption of service," the easiest and most grammatically clear way to do so would have been to define loss as "any reasonable cost to any victim because of the interruption of service, including . . . ."

> further[] the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

This language – which explains exactly what the unlawful conduct giving rise to a claim is – is predicated on unauthorized *access* to a protected computer (*i.e.*, one used in interstate commerce, such as CoStar's database servers) to obtain something of value (here, CoStar's data). Bell incorrectly interprets the $5,000 jurisdictional loss requirement of § 1030(e)(11) to negate the broad prohibition of § 1030(a)(4) against the accessing of a protected computer without authorization for the purpose of taking something of value. Reading in an "interruption of service" element is plainly inconsistent with the overall scheme of the statute.

### III. BELL'S "COMMINGLING CAUSES OF ACTION" ARGUMENT SHOULD BE REJECTED

The Court should reject Bell's bizarre argument that CoStar's Counterclaims should be dismissed in their entirety because, CoStar has "commingled" legal and equitable causes of action in its pleading. Bell's principle authority for its argument is a 1949 Supreme Court case that – quite offhandedly – notes that, while not fatal, it is not proper to plead different *theories* in the same paragraph of a complaint. *See O'Donnell v. Elgin, J. & E. Ry. Co.*, 338 U.S. 384, 392, 70 S.Ct. 200 (1949). Indeed, that sentence was only dictum in that case, as the Court was not ruling on the propriety of the pleading. *See id.* Bell's other authority, a Pennsylvania district court case, involved a plaintiff's failure to identify his breach of contract claim as a separate *count* in his complaint, leaving the court and the defendant with no indication that he intended to pursue that separate cause of action. *See Dodge v. Susquehanna Univ.*, 796 F. Supp. 829, 831 (W.D. Pa. 1992). At the time the plaintiff made the court aware of that claim, the defendant had filed for summary judgment on the plaintiff's federal discrimination claim. *See id.* Having decided that the defendant was entitled to summary judgment on the federal claim, which was

the sole basis for its jurisdiction, the court found that the sanction of dismissing plaintiff's claim in its entirety would be a "harsh" result and simply dismissed the breach of contract claim without prejudice so that it could be re-filed in state court. *See id.* It is hard to see why Bell would believe that either precedent would reasonably support the argument it asserts – that CoStar's claims should be dismissed *in their entirety* because CoStar incorporated the other allegations into each count of the Counterclaim.[5]

CoStar's Counterclaim was a fairly standard pleading under the Federal Rules. It contains introductory paragraphs, statements of jurisdiction and venue, a statement of the case, separate counts, and a prayer for relief. Undoubtedly, the Court has seen many of these types of pleadings before, and there is no reason to believe that it is in any way inconsistent with Fed. R. Civ. P. 10(b), which states that "[i]f doing so would promote clarity," separate claims should be put into separate counts. There is no basis for dismissing the First Amended Complaint based on Bell's argument, which can only be construed as a means of further increasing CoStar's costs in responding to Bell's motion.

## CONCLUSION AND REQUEST FOR FEES AND COSTS

For the foregoing reasons, CoStar respectfully requests that Bell's Motion to Dismiss pursuant to 12(b)(6) be denied.

---

[5] Bell's statement that CoStar's pleading fails because CoStar requests injunctive relief on its breach of contract claim because "some of its injury is irreparable." Counterclaim at ¶ 55. This contention is beyond a red herring – the courts are no longer divided between law and equity and it is black letter law that a breach of contract claim can lead to injunctive relief. *See, e.g., Capraro v. Lanier Bus. Prods.*, 466 So. 2d 212, 213 (Fla. 1985) (noting that injunction was appropriate relief for breach of contract claim involving breach of covenant not to compete). This is especially true in cases where intellectual property rights are involved. *See, e.g.*, *Dairy King, Inc. v. Kraft, Inc.*, 665 F. Supp. 1181, 1185 (D. Md. 1987).

Dated:  March 9, 2009

Respectfully submitted,

s/Sanya Sarich
William J. Sauers (admitted *pro hac vice*)
Sanya Sarich (admitted *pro hac vice*)
Crowell & Moring LLP
1001 Pennsylvania Ave.
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-8844
wsauers@crowell.com
ssarich@crowell.com

- and -

William C. Guerrant, Jr.
Florida Bar No. 516058
wguerrant@hwhlaw.com
Trial Counsel
William F. Sansone
Florida Bar No. 781231
wsansone@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
Suite 3700 – Bank of America Building
101 East Kennedy Boulevard
Post Office Box 2231
Tampa, Florida 33601
Telephone:  (813) 221-3900
Facsimile:  (813) 221-2900

*Counsel for Defendants-Counterclaim Plaintiffs CoStar Realty Information, Inc. and CoStar Group, Inc*.

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 9, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which sent a notice of electronic filing to the following:

J. Paul Raymond
Jeff Gibson
MacFarlane Ferguson & McMullen
P. O. Box 1669
Clearwater, FL 33757
jpr@clw.macfar.com
jg@macfar.com

*Counsel for Plaintiff-Counterclaim Defendant K&H*


Nicholas Louis Ottaviano
Randall J. Love & Associates, P.A.
5647 Gulf Drive
New Port Richey , FL 34652-4019
(727) 847-0800
Fax: (727) 842-361
Email: nlogator@verizon.net

*Counsel for Counterclaim-Defendant Scott Bell*

                                                s/Sanya Sarich
                                                Sanya Sarich (admitted *pro hac vice*)
                                                Crowell & Moring LLP
                                                1001 Pennsylvania Ave.
                                                Washington, DC 20004
                                                Telephone: (202) 624-2500
                                                Facsimile: (202) 628-8844
                                                wsauers@crowell.com
                                                ssarich@crowell.com

                                                *Counsel for Defendants-Counterclaim Plaintiffs CoStar Realty Information, Inc. and CoStar Group, Inc.*