UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KLEIN & HEUCHAN, INC.**

       **Plaintiff-Counterdefendant,**

**vs.**                      **Civil No.: 8:08-cv-01227-JSM-MSS**

**COSTAR REALTY INFORMATION, INC.,**    **DISPOSITIVE MOTION**
**and COSTAR GROUP, INC.,**

       **Defendants-Counterclaimants.**
_____/

**DEFENDANT-COUNTERCLAIMANTS COSTAR REALTY
INFORMATION, INC. AND COSTAR GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT AGAINST KLEIN & HEUCHAN, INC. ON THEIR
COPYRIGHT COUNTERCLAIMS AND MEMORANDUM OF POINTS AND
<u>AUTHORITIES IN SUPPORT THEREOF</u>**

      Pursuant to Federal Rule of Civil Procedure 56, Defendants-Counterclaimants

CoStar Realty Information, Inc. and CoStar Group, Inc. (collectively, "CoStar") hereby

move for summary judgment on its claims of contributory and vicarious copyright

infringement against Plaintiff-Counterdefendant Klein & Heuchan, Inc. ("Klein &

Heuchan").

**<u>INTRODUCTION AND SUMMARY</u>**

      This case presents a straightforward set of facts that are undisputed between the

parties and that give rise to contributory and vicarious liability for Klein & Heuchan.

Klein & Heuchan knew that one of its sales associates had unlicensed access to CoStar's

commercial real estate information products and, despite that knowledge, continued to

provide him with all the facilities he needed to continue to use that access to engage in

conduct that infringed CoStar's copyrights in the photographs residing within CoStar's

products. Klein & Heuchan's conduct, however, transcends merely passive facilitation of

1

Dockets.Justia.com

this infringement, and involved Klein & Heuchan's owner and an officer directing the associate to engage his access to CoStar's valuable products for their own business purposes and without paying CoStar's license fees. Klein & Heuchan's conduct constitutes a prototypical case of contributory and vicarious copyright infringement.

Prior to his affiliation with Klein & Heuchan, Christopher Scott Bell ("Scott Bell" or "Bell") was affiliated with the large commercial real estate firm Coldwell Banker Commercial NRT. Much like a large law firm would secure access to Westlaw or Lexis for it associates, Coldwell Banker Commercial NRT provided Scott Bell with a user name and password to CoStar's commercial real estate information products. As one might expect, the contract between CoStar and Commercial Banker Commercial NRT allowed only Coldwell Banker Commercial NRT employees and contractors to access CoStar's services, and that when Bell left Coldwell Banker Commercial NRT in late 2006, his authorization to access CoStar's products terminated.

Yet Bell continued to use his access to CoStar's products once he joined Coldwell Banker Commercial NRT. Using the Internet service, e-mail address and printing facilities provided to him by Klein & Heuchan, Bell accessed CoStar over a hundred times over a 15-month period. He used this access to obtain copies of CoStar's property records which, include CoStar's copyrighted photographs. In addition to copying those photographs onto his own computer for use, he created copies of CoStar's data and distributed it to clients and prospective clients using Klein & Heuchan's email service.

Klein & Heuchan was not merely a bystander to Bell's infringement of CoStar's copyrights – it was a key enabler and inducer of Bell's infringement. Very soon after joining Klein & Heuchan, Mark Klein, its owner, and Steve Klein, Mark Klein's son and an officer of Klein & Heuchan himself, discovered that Bell had access to CoStar. Both

Mark and Steve Klein knew that CoStar only provided access to its products pursuant to license, as they had been solicited by CoStar's sales personnel in the past to obtain such a license. Instead of asking Bell to terminate his use of CoStar and use only the products for which Klein & Heuchan had obtained licenses, both Kleins not only continued to allow his CoStar usage, but asked Bell to conduct research using CoStar on their behalf.

These facts demonstrate Klein & Heuchan's liability for contributory and vicarious copyright infringement. Liability for contributory infringement occurs when a party with knowledge of the infringing activity materially contributes to or induces another party's copyright infringement. *See Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987). Here, Klein & Heuchan knew or had reason to know that Bell's access to CoStar's products was unlicensed and provided him with the means and facilities for engaging in his unlicensed use of CoStar's products to infringe CoStar's copyrights. Moreover, Klein & Heuchan induced Bell's infringement by requesting materials from CoStar's products from Bell.

Similarly, these facts demonstrate Klein & Heuchan's liability for vicarious infringement, which occurs when a party profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1139 n. 19 (11th Cir. 2007). Klein & Heuchan, by virtue of being the broker that supervised Bell and the provider of his Internet service and facilities, undoubtedly had the right and ability to control his infringing conduct. And by allowing Bell to use CoStar's products (at times at Mark Klein and Steve Klein's direction), Klein & Heuchan directly benefitted from its avoidance of the license fees that it would otherwise pay CoStar for access to CoStar's copyrighted photographs and commercial real estate information.

As a result, CoStar's motion for summary judgment against Klein & Heuchan on its contributory and vicarious infringement claims should be granted.

## STATEMENT OF UNDISPUTED FACTS

### I. COSTAR BACKGROUND

CoStar is the leading provider of commercial real estate information in the United States and the United Kingdom, with approximately 900 researchers collecting and maintaining data on over 3,000,000 properties and over 1,000,000 active commercial listings. *See* Declaration of Steven J. Williams ("Williams Decl.") at ¶ 3. CoStar's field researchers are trained in photography and have taken millions of professional-quality photographs of commercial real estate and buildings. *See id.* at ¶ 4.

As a part of its regular business practice, CoStar registers its copyrights in the photographs taken by its field researchers with the U.S. Copyright Office. *See id.* at ¶ 5. CoStar has applied for copyright registrations for approximately two and a half million photographs pursuant to the Copyright Office's regulations allowing for collective registration of photographic works. *See id.* Among these copyright registrations, CoStar has obtained registrations VA 1-360-344, VA 1-371-124 and VA 1-407-485. *See id.* at ¶ 6; *See* Exhibits 1, 2, and 3. Each of its registrations are based on registration applications that contain detailed lists of each of the commercial real estate photographs included in such applications. *See* Exs. 1, 2, and 3 (registration applications).

CoStar's commercial real estate information and photographs are made available to the commercial real estate community as a series of database products covering, individually and collectively, all of the U.S. markets. *See* Williams Decl. at ¶ 7. CoStar's customers pay a license fee, typically computed on the basis of the number of commercial real estate professionals associated with the customer, for access to CoStar's

products. *See id.* CoStar's license then allows them to, among other things, make limited reproductions of the photographs contained on those databases and make limited use of the compilation of information maintained in the database. *See id.*

CoStar's products are offered over an interface that resides on CoStar's website, www.costar.com. *See* Declaration of Robert Lardizabal ("Lardizabal Decl.") at ¶ 2. Authorized users of CoStar's products are required to enter a user name and password to access those products, with each user required to either download a certificate restricting use of CoStar to a single computer or to enter a random number generated by a secure access device. *See id.*

CoStar's database servers maintain detailed records of each user's access to CoStar's products. *See id.* at ¶ 3. As a part of these records, CoStar logs the Internet address (IP address) of the user, the time and date of the user's access, the database the user accessed, as well as the number of pages the user visits and the identity of the property records retrieved from CoStar's database – designated by CoStar's property identification number. *See id.*

When CoStar users call up property records from CoStar's database, its computers create electronic copies of those records on their computers, including electronic files containing the photographs associated with the property records. *See id.* at ¶ 4.

## II. BELL'S ACQUISITION AND USE OF COSTAR ACCESS

CoStar entered into a license agreement with Coldwell Banker Commercial NRT on September 30, 2005. *See* Williams Decl. at ¶ 8 and *id.* Ex. A. That agreement allowed Coldwell Banker Commercial NRT to maintain a number of user accounts with access to CoStar's products, with the requirement that such users be employees or independent contractors working for Coldwell Banker Commercial NRT. *See id.* at § 2.2.

5

Scott Bell worked for Coldwell Banker Commercial NRT from September 2005 until November of 2006. *See* Deposition of C. Scott Bell ("Bell Dep. Tr.") at 10. During that period, and pursuant to its license agreement with CoStar, Coldwell Banker Commercial NRT designated Scott Bell as an employee or contractor who would access CoStar, and CoStar provided Bell with a user name and access to CoStar's products. *See* Williams Decl. at ¶ 10 and *id*. Ex. B. When CoStar established Bell's account, it specifically informed Bell that his account was for use only in accordance with Coldwell Banker Commercial NRT's license with CoStar. *See id.* at ¶ 11 and *id*. Ex. C.

Bell left Coldwell Banker Commercial NRT in November 2006 and joined Klein & Heuchan shortly thereafter. *See* Bell Dep. Tr. at 10-11. CoStar's database records show that Bell did not cease his use of his Coldwell Banker Commercial NRT-provided CoStar user account; instead, CoStar's records show that Bell logged into CoStar's products approximately 130 times beginning in January 2007 and continuing into May 2008. *See* Williams Decl. at ¶ 15 and *id*. Ex. D. Bell never informed CoStar that he no longer worked for Coldwell Banker Commercial NRT. *See id*. at ¶ 12. At all times while Bell had access to CoStar's products while affiliated with Klein & Heuchan, materials he prepared and printed from CoStar's website would have included a Coldwell Banker Commercial NRT designation, and an indication that his user account was affiliated with Coldwell Banker Commercial NRT would have been featured prominently on Bell's computer screen. *See id*. at ¶ 13. Indeed, a document printed by Scott Bell from CoStar's database after he joined Klein & Heuchan contains the legend "Scott Bell – Coldwell Banker Commercial NRT." *See* Bell Dep. Tr. at 44-45 and Ex. 4 (Bell Dep. Ex. 6). There is even evidence that Scott Bell ***was aware of this legend and tried to hide it from clients whom he shared the reports w***ith – Exhibit 5 is an email from Scott Bell

to a client in which the legend "Scott Bell – Coldwell Banker Commercial NRT" is blacked out, showing guilty knowledge by Bell that his access was no longer appropriate. *See* Exhibit 5 and Bell Dep. Tr. 64-67. Exhibit 5 was created in January 2007, just after Bell joined Klein & Heuchan. *See id.*

CoStar first detected that Bell was using his Coldwell Banker Commercial NRT-provided user account from IP addresses associated with Klein & Heuchan in the spring of 2008. *See* Williams Decl. at ¶ 16. CoStar had matched the IP addresses used by Bell to access that account with IP addresses used by Klein & Heuchan to access CoStar's products during periods in which CoStar provided Klein & Heuchan with a free trial of CoStar products. *See id.*

During Bell's access through Klein & Heuchan's IP address, Bell viewed over 13,000 pages of information from CoStar's database. *See id.* at ¶ 15. Among these thousands of pages of information and photographs, CoStar's records show that Bell retrieved the property records and photographs associated with six different buildings in the Tampa area, *see* Lardizabal Decl. at ¶¶ 6-8 and Lardizabal Ex. A-C, meaning that Bell's computer made copies of each of those photographs in retrieving those records.

### III.   KLEIN & HEUCHAN'S KNOWLEDGE OF AND ACTIONS RELATED TO BELL'S UNAUTHORIZED ACCESS TO COSTAR.

Klein & Heuchan is a commercial real estate firm located in Piniellas County, Florida. *See* Complaint at ¶¶ 2, 3, 10. Klein & Heuchan is owned by Mark Klein. *See* Deposition of Mark Klein ("Klein Dep. Tr.") at 19. Steve Klein, Mark Klein's son, is an officer of Klein & Heuchan and serves as Executive Vice President. *See id.*

Klein & Heuchan has been aware for some time that CoStar licenses access to its products for a fee and that Klein & Heuchan would need to subscribe to CoStar to gain access. Mark Klein testified that testified that he "knew what CoStar was" and that

CoStar's "salespeople had been calling on me for years." Klein Dep. Tr. at 31. Klein & Heuchan received at least one licensing proposal from CoStar in March 2006. *See* Williams Decl. at ¶ 17. Mark Klein testified that understood that users of CoStar needed to be licensed. *See* Klein Dep. Tr. at 85 (acknowledging that a Klein & Heuchan associate would need to be licensed to use CoStar's products). Similarly, Steve Klein's initial reaction to learning that Scott Bell had access to CoStar was surprise; he asked Scott Bell "[h]ow are you using that," *see* Bell Dep. Tr. at 28, demonstrating an understanding that a Klein & Heuchan employee could not use CoStar without a license. Both Steve Klein and Mark Klein themselves had used CoStar's products pursuant to trial subscriptions. Williams Decl. ¶ 16 and *id*. Exs. E & F.

As mentioned above, Bell came to work for Klein & Heuchan in December of 2006. *See* Klein Dep. Tr. at 22. Klein & Heuchan provided Bell with Internet service, an e-mail account, office facilities, and printers and copiers. *See* Bell Dep. Tr. at 30-33; Klein Dep. Tr. at 26-27. Bell worked under Mark Klein's and Steve Klein's broker license. *See* Klein Dep. Tr. at 23. Mark Klein also personally oversaw Bell's work at Klein & Heuchan. *See id*. at 24.

Soon after Bell joined Klein & Heuchan, Mark Klein and Steve Klein became aware that Bell had access to CoStar's products. *See* Bell Dep. Tr. at 28. In fact, Bell provided CoStar reports directly to Mark Klein and Steve Klein in the first half of 2007. *See id*. at 59-61, 63-64 and Ex. 6 (Bell Dep. Exh. 9) and Ex. 7 (Bell Dep. Exh. 10). Bell testified that he shared a number of additional documents produced from CoStar's products and data with members of Klein & Heuchan's team. *See* Bell Dep. Tr. at 44-46 (discussing his sharing of three different CoStar reports); *id*. at 70-71 (referencing a floor

plan he attempted to send); and *id.* at 78-81 (referencing an Excel spreadsheet created from CoStar's data).

Bell also provided CoStar research materials to Mark and Steve Klein directly, including custom reports created by Bell using his access to CoStar's products at the request of Mark and Steve Klein. *See id.* at 61, 79-80.

There is no evidence that Klein & Heuchan ever directed Scott Bell to cease using his CoStar access until May of 2009.

## **LEGAL STANDARD**

The Court recently reiterated the summary judgment standard in *Turner v. Aldo U.S., Inc.*, Docket No. 8:08-cv-1062-T-30MAP, 2009 U.S. Dist. LEXIS 69913, *5-*7 (M.D. Fla. Aug. 10, 2009):

> Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

> Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

On the substantive law of copyright infringement, the standards are also well known. To make out a *prima facie* case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright and (2) defendants violated one of the exclusive rights of the copyright owner. *See, e.g., Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991); *SunTrust Bank v. Houghton Mifflin* Co., 268 F.3d 1257, 1266 (11th Cir. 2001).

Contributory infringement necessarily must follow a finding of direct or primary infringement. 3 *Nimmer on Copyright* § 12.04[A] at 12-42 to -42.1. The Eleventh Circuit has stated the well-settled test for a contributory infringer as "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Casella v. Morris*, 820 F.2d at 365 (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984); *see also Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 437, 104 S. Ct. 774, 786 (1984) (defining a contributory infringer as one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner."); 3 *Nimmer on Copyright* § 12.04 (generally discussing contributory infringement). Furthermore, the Eleventh Circuit has explained that "the standard of knowledge is objective: 'Know, or have reason to know.'" *Casella*, 820 F.2d at 365 (quoting *Gershwin*, 443 F.2d at 1162).

"Liability for vicarious copyright infringement arises 'when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.'" *BUC Int'l Corp. v.*

*Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1139 n. 19 (11th Cir. 2007) (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913, 931 n.9 (2005))

## ARGUMENT

## I. THE UNDISPUTED FACTS DEMONSTRATE THAT AN INFRINGEMENT OF COSTAR'S COPYRIGHTED PHOTOS OCCURRED

CoStar has adduced undisputed evidence that satisfies both elements of its copyright infringement claim: (1) that it is the owner of copyrights in a number of photographs; and (2) that an infringement of those copyrighted photographs occurred. Section 501 of the Copyright Act, 17 U.S.C. § 501 states that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 . . . is an infringer of the copyright." Section 106 provides copyright owners with the exclusive rights to, among other things, "reproduce the copyrighted work," and "display the copyrighted work publicly." 17 U.S.C. § 106(1), (5). Accordingly, because CoStar has set forth evidence that its exclusive right to reproduce its copyrighted photographs was violated when Scott Bell made reproductions of those photographs on his computer, CoStar is entitled to judgment as a matter of law that a direct infringement of those copyrights occurred.[1]

---

[1] CoStar believes that Klein & Heuchan may be charged with Bell's conduct as a direct infringer, as Bell acted at all times as an employee of Klein & Heuchan and under the direction and supervision of Klein & Heuchan's principals. However, CoStar acknowledges that there may be triable questions of fact concerning whether *respondeat superior* would apply to Bell's actions. Given that liability for contributory and vicarious infringement is equal to that for direct infringement, CoStar believes that the Court can simply avoid the *respondeat superior* issue by ruling on the secondary liability claims, and makes its motion accordingly. CoStar reserves its right to proceed on a direct infringement claim against Klein & Heuchan based on the facts presented at trial, and to conform its counterclaims to the facts presented at trial pursuant to Fed. R. Civ. P. 15.

### A. COSTAR IS THE OWNER OF NUMEROUS VALID COPYRIGHTS

CoStar's ownership of numerous copyrights is not the subject of any dispute. As a core part of its business, CoStar engages field researchers who are trained photographers to canvass metropolitan areas, including the Tampa area, to take high-quality photographs of commercial buildings. *See* Williams Decl. at ¶ 4. CoStar then collects all of the photographs taken by each photographer and registers the copyright in those works collectively pursuant to the Copyright Office's regulations concerning collective registration of photographic works.

CoStar is submitting, along with this motion, three copyright registrations covering ten different photographs on seven different commercial buildings. *See* Exs. 1, 2, and 3. These registrations cover the following building photographs:

| Registration | Building Photo |
|---|---|
| VA 1-360-344 | 4211 W. Boy Scout Blvd., Tampa FL 33607 |
| | 2202 N. West Shore Blvd., Tampa FL 33608 |
| | 15950 Bay Vista Dr., Clearwater, FL 33760 (photo 1) |
| | 15950 Bay Vista Dr., Clearwater FL 33760 (photo 2) |
| | 600 N. Westshore Blvd., Tampa FL 33609 |
| | 4301 Anchor Plaza Pkwy., Tampa FL 33634 |
| | 4343 Anchor Plaza Pkwy., Tampa FL 33634 |

| Registration | Building Photo |
|---|---|
| VA 1-407-485 | 1930 W. Cortez Rd., Bradenton FL 43207 (photo 1) |
| | 1930 W. Cortez Rd., Bradenton FL 43207 (photo 2) |
| | 1930 W. Cortez Rd., Bradenton FL 43207 (photo 3) |

Williams Decl. Ex. H.

As indicated in the registrations, VA 1-360-344, VA-371-124, and VA 1-407-485, the photographs were first published within 90 days of the date the registrations were submitted. *See id.* Accordingly, these registrations constitute *prima facie* evidence that CoStar is the owner of the copyrighted works identified therein and that the copyrights are valid. *See* 17 U.S.C. § 410(c); *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1201 (11th Cir. 2009). No further proof from CoStar is required, and at no time has Klein & Heuchan ever disputed CoStar's ownership of its copyrights.[2]

**B. THE UNDISPUTED EVIDENCE DEMONSTRATES UNAUTHORIZED REPRODUCTION AND DISPLAY OF COSTAR'S COPYRIGHTED WORKS**

CoStar has adduced undisputed evidence that Scott Bell, with the material assistance and knowledge of Klein & Heuchan, engaged in the unauthorized reproduction and display CoStar's copyrighted works, thereby establishing its direct infringement claim as a matter of law. Scott Bell, once a licensed user of CoStar's products with the

_____

[2] CoStar notes that its evidence of copyright ownership for the purposes of this motion is exemplary in nature rather than comprehensive. At any trial to establish the measure of Klein & Heuchan's damages liability, CoStar would come forward with evidence of the additional copyrighted photographs and other works that Klein & Heuchan has infringed during the course of the infringing activity described herein to sustain its burden to obtain such damages. CoStar does not wish to burden the Court with extensive and ultimately cumulative and duplicative submissions of copyright registrations and photographs when the predicate acts leading to infringement liability are the same.

large firm Coldwell Banker Commercial NRT, continued to gain access to those products after leaving Coldwell Banker Commercial NRT without securing CoStar's permission. As a result, Bell was able to use his computer to make unauthorized reproductions and displays of CoStar's copyrighted photographs in violation of CoStar's exclusive rights, and CoStar's undisputed evidence shows that Bell in fact did access and make copies of CoStar copyrighted photographs, including the ten photographs identified in CoStar's counterclaim and in Section I.A. above.

### 1. SCOTT BELL REPRODUCED COSTAR'S COPYRIGHTED WORKS

There is no dispute that Scott Bell, working through Klein & Heuchan, engaged in the reproduction of CoStar's copyrighted photographs. In his deposition, Scott Bell admitted that he used CoStar's services after joining Klein & Heuchan in December 2006, even though neither he nor Klein & Heuchan subscribed to CoStar, using an account he acquired from a CoStar subscriber, Coldwell Banker Commercial NRT, with whom he had previously been employed. *See* Bell Dep. Tr. at 10.

CoStar's internal electronic records establish both Bell's use of CoStar's products from Klein & Heuchan's facilities and his infringement of the identified CoStar copyrighted photographs. As detailed in the declaration of Robert Lardizabal, CoStar in the ordinary course of its business collects the details surrounding each use of its web-based products, including the time and date of the use, the IP address from which the use was emanating, the user account associated with the usage, and which property records were retrieved from CoStar's databases. *See* Lardizabal Decl. at ¶ 3.

CoStar's database records show that Bell accessed the property records associated with the photographs identified in Section I.A. above. *See* Lardizabal Decl. at ¶¶ 6-8 and Lardizabal Exs. A-C. When property records are retrieved from CoStar's database by an

Internet user, photographs of the subject property are provided to the user. *See* Lardizabal Decl. at ¶ 4. Those photographs would have been copied by Bell's computer and rendered as a display on Bell's screen for him to view. *See id.* Accordingly, by identifying CoStar's database records of the properties viewed by Bell, CoStar has also identified the photographs that Bell's computer has reproduced.

It is well established at this point that the copying of a copyrighted work in the memory of a computer constitutes a "reproduction" for the purposes of the Copyright Act. *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc.,* 487 F.3d 701, 716 (9th Cir. 2007) (recognizing that a photographic "image stored in the computer is the 'copy' of the work for purposes of copyright law."); *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 518 (9th Cir. 1993); *Advanced Computer Servs. v. MAI Systems Corp.,* 845 F. Supp. 356, 363 (E.D. Va. 1994); *see generally,* Jane C. Ginsburg, *Putting Cars on the "Information Superhighway": Authors, Exploiters, and Copyright in Cyberspace,* 95 COLUM. L. REV. 1466, 1476 (1995) ("Copies of a work are made . . . when a temporary copy is received into the memory of [a] computer.").

Therefore, because Scott Bell created reproductions of CoStar's copyrighted photographs when he viewed CoStar property records through his illicit access to CoStar's database, he infringed CoStar's exclusive right of reproduction in those photographs.

## 2. NO EXISTING LICENSE PERMITTED USE OF COSTAR'S SERVICES BY SCOTT BELL

Given that CoStar has shown that Scott Bell has violated CoStar's exclusive right of reproduction in its copyrighted photographs, CoStar need only show that the violation of that right was unauthorized. As reflected in the declaration of Steven Williams,

CoStar did not specifically authorize Bell to use CoStar's products or reproduce its copyrighted photographs. *See* Williams Decl. at ¶ 12.

Moreover, Scott Bell was not authorized under any license agreement to use CoStar's products. While Bell's usage of CoStar was licensed while he was an employee of Coldwell Banker Commercial NRT, the license agreement with Coldwell Banker does not allow for non-employees or former employees to access CoStar's services. Specifically, in relevant part, the license agreement reads:

> Each portion of [CoStar's products] may be used by no more than the number of users set forth on Exhibit A and *all of such users must be Authorized Users. . . . All of such users* ("Authorized Users") [of CoStar's products] *must be individuals* (i) *employed by* [Coldwell Banker Commercial NRT] *or an Independent Contractor* (as defined below) *of* [Coldwell Banker Commercial NRT] at a an Authorized Site identified in Exhibit A or at an Additional Authorized Site (as defined below); (ii) designated by [Coldwell Banker Commercial NRT] as an employee or Independent Contractor requiring access to [CoStar's products]; and (iii) included on CoStar's list of Authorized Users for [CoStar's products].

*Id*. Ex. A at p. 1 (Section 2.2) (emphasis added).

Scott Bell was specifically informed when he received his user name and password that his access was subject to the agreement between Coldwell Banker Commercial NRT and CoStar:

> If there is not a valid subscription license agreement in place **between your company and CoStar** relating to the delivery of the above-referenced CoStar service(s), then you should reply to this email and notify CoStar Customer Support of the error. You may not access or use the CoStar service(s) if you are a non-subscriber.
>
> . . . **Use of this password and the CoStar service(s)** it allows you to access **is subject to the provisions set forth in the written license agreement(s) between your company and CoStar** as well as the accompanying online terms of use for the particular CoStar service(s).

*Id*. Ex. C. (emphasis added)

There is no dispute in this case that Scott Bell left the employment of Coldwell Banker Commercial NRT in 2006.  *See* Bell Dep. Tr. at 10.  Accordingly, he would not have been an Authorized User under CoStar's license agreement with Coldwell Banker Commercial NRT after his period of unemployment.  Indeed, the evidence shows that Bell was aware his use was no longer authorized and improper; he tried to hide this fact when he carefully deleted the legend "Scott Bell – Coldwell Banker Commercial NRT" from a report he generated using CoStar when sending it to a client.  *See* Ex. 5.

Because Scott Bell no longer had lawful access to CoStar's products under the Coldwell Banker Commercial NRT license, his reproduction of photographs acquired from CoStar's database constitutes copyright infringement.  A copyright owner may bring a claim for infringement against a licensee (or, in this case, a former licensed user) whose actions exceed the scope of the license.  *Tingley Sys. v. Healthlink, Inc.*, 509 F. Supp. 2d 1209, 1217 (M.D. Fla. 2007) (citing *Leutwyler v. Royal Hashemite Court of Jordan,* 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001)).  *See also MCA Television Ltd. v. Feltner*, 89 F.3d 766, 768 (11th Cir. 1996); *CBS Inc. v. Primetime 24 Joint Venture*, 76 F. Supp. 2d 1333, 1337 (S.D.Fla.1998) ("it is well settled that federal copyright law jurisdiction exists where a copyright owner claims that a licensee exceeded the scope of its license."); *see generally* Paul Goldstein, *Copyright* § 13.2.1.1 (2d ed. 1996).

Accordingly, because Scott Bell was not a licensed user of CoStar's products, he was not authorized to reproduce CoStar's copyrighted photographs, and his conduct constituted an infringement of CoStar's copyrights in those photographs.

## II. THE UNDISPUTED FACTS SHOW THAT KLEIN & HEUCHAN ENGAGED IN CONTRIBUTORY COPYRIGHT INFRINGEMENT BY MATERIALLY CONTRIBUTING TO AND INDUCING THE INFRINGEMENT WITH KNOWLEDGE THAT SUCH INFRINGEMENT WAS OCCURRING.

In addition to demonstrating that a direct infringement occurred, the undisputed facts demonstrate that Klein & Heuchan engaged in contributory copyright infringement because it materially contributed to that infringement by providing Scott Bell with the facilities and means for the infringement with knowledge that Bell was engaged in infringing activity. As such, CoStar is entitled to judgment as a matter of law that Klein & Heuchan is liable for contributory infringement. *See Casella*, 820 F.2d at 365 ("one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.").

### A. KLEIN & HEUCHAN WAS AWARE THAT SCOTT BELL WAS ENGAGING IN UNAUTHORIZED USE OF COSTAR'S SERVICES AND THEREBY INFRINGING COSTAR'S COPYRIGHTS

The Eleventh Circuit has established that, for a contributory infringement claim, "the standard of knowledge is objective: Know, or have reason to know." *Id*. (internal quotations and citation omitted). Here, Klein & Heuchan both knew and had reason to know of the direct infringement of Scott Bell. The testimony of Klein & Heuchan's corporate designee and Bell, as well as the documents produced by Bell and Klein & Heuchan eliminate, any genuine issue of material fact that Klein & Heuchan was aware of Bell's infringing conduct.

First, Scott Bell testified directly that Klein & Heuchan's management was aware of his use of CoStar:

Q: So they knew you had access to CoStar?
A: Yes.
Q: Do you know when they became aware that you had access to CoStar?

A:    I want to say it was probably a couple of months after I joined, a few months after.[3]

Q:    How did they become aware?

A:    I had shown them an office report, and that's -- that's how.

Q:    And then they -- did they ask you if you had access?

A.    Yeah, they -- they -- he did ask me. He said, you know, "Where -- how are you using that?" And I said, "Well, they -- we got a subscription from -- I had a subscription bought from -- while I was at Coldwell Banker."

Q.    Do you know if Mark -- was that discussion with Mark Klein or with Scott Klein or with both?

A.    It was with Mark and Steve.[4]

Bell. Dep. Tr. at 28.

Bell's testimony was reinforced by the documents he produced in response to CoStar's discovery requests. Those documents show that Bell provided CoStar reports and spreadsheets derived from CoStar data directly to Mark Klein and Steve Klein. On April 4, 2007, Bell sent Steve Klein a CoStar Office Report for the Tampa/St. Petersburg Office Market. *See* Bell Dep. Tr. at 63-64 (indicating that Bell sent the report to Klein as "a tool to research and provide information"); Ex. 7 (Bell Dep. Ex. 10). Similarly, Bell sent to Mark Klein an e-mail on August 16, 2007, entitled "Costar [sic] report" attaching data that he had compiled by using CoStar's products. *See* Bell Dep. Tr. at 59-61; Ex. 6 (Bell Dep. Ex. 9). Bell testified that Mark Klein asked him to provide him that report. *See* Bell Dep. Tr. at 61. Indeed, Bell testified that he shared a number of additional documents produced from CoStar's products and data with members of Klein & Heuchan's team. *See* Bell Dep. Tr. at 44-46 (discussing his sharing of three different CoStar reports); *id*. at 70-71 (referencing a floor plan he attempted to send); and *id.* at 78-

---

[3] Scott Bell joined Klein & Heuchan in December 2006 or January 2007. *See* Bell Dep. Tr. at 9-10.

[4] Mark Klein and Steve Klein are the owner and corporate officers of Klein & Heuchan. *See* Klein Dep. Tr. at 19; *see also* Bell Dep. Tr. at 15 (identifying both Mark and Steve Klein as owners of Klein & Heuchan).

81 (referencing an Excel spreadsheet created from CoStar's data). Accordingly, there is no genuine issue that Klein & Heuchan was aware of Bell's access to CoStar.

There is also no legitimate issue of material fact that Klein & Heuchan should have known (and had reason to know) that it was not entitled to obtain access to CoStar's products without a license and that Bell's access was improper. Mark Klein, Klein & Heuchan's owner, testified that he "knew what CoStar was" and that CoStar's "salespeople had been calling on me for years." Klein Dep. Tr. at 31. Klein & Heuchan received at least one licensing proposal from CoStar in March 2006. *See* Williams Decl. at ¶ 17. Mr. Klein understood that users of CoStar needed to be licensed. *See* Klein Dep. Tr. at 85 ("Did [Chris Howell] use CoStar while he was at Klein & Heuchan? A: No, he did not. Q: Why not? A. Because he didn't have any need for it and he wasn't licensed."). Similarly, Steve Klein's initial reaction to learning that Scott Bell had access to CoStar was surprise; he asked Scott Bell "[h]ow are you using that," *see* Bell Dep. Tr. at 28, betraying an understanding that a Klein & Heuchan employee could not use CoStar without a license. Moreover, Mark Klein was given a trial subscription to CoStar in 2007 and CoStar's records showed that he accessed CoStar's database in November 2007 – even after he knew Scott Bell was gaining access. *See id.* at 32-33; Williams Decl. ¶ 16 and *Id.* Ex. E.[5] In other words, Klein knew that CoStar was in the business of licensing its products for a fee and that a license was necessary for access. As such, Klein & Heuchan should have known that Scott Bell's unpaid, legacy access to CoStar was improper and that Klein & Heuchan was required to obtain a license in order to enjoy the benefits of CoStar's products. As a result, Klein & Heuchan had reason to know (and

---

[5] Steve Klein also had access to CoStar in 2006 pursuant to a promotional coupon. *See* Williams Decl. ¶ 16 and Williams Decl. Ex. F.

should have known) that Bell's access to CoStar as a Klein & Heuchan agent was improper, rendering it subject to liability for contributory infringement. *See Casella*, 820 F.2d at 365

**B.     KLEIN & HEUCHAN MATERIALLY CONTRIBUTED TO BELL'S CONDUCT BY PROVIDING HIM THE MEANS AND FACILITIES TO ENGAGE IN SUCH INFRINGING CONDUCT**

The undisputed facts show that Klein & Heuchan materially contributed to Bell's infringing conduct by providing him with the means and facilities to engage in that conduct. As the Ninth Circuit has held in the widely-followed *Fonovisa* case, a party "materially contributes" to infringement by providing the "site and facilities" for the infringing activity. *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).

Klein & Heuchan provided Scott Bell with the means and facilities necessary to engage in infringing conduct. As acknowledged by Bell and Mark Klein, Klein & Heuchan provided him with the Internet access he used to access CoStar's products on Klein & Heuchan's premises. *See* Bell Dep. Tr. at 30; Klein Dep. Tr. at 26. CoStar's internal database records demonstrate that the bulk of Bell's unauthorized access originated from Klein & Heuchan's IP address. *See* Williams Decl. ¶ 16 and *Id.* Ex. D. Klein & Heuchan also provided Bell with an e-mail account he used to distribute CoStar reports to clients and fellow Klein & Heuchan agents. *See* Bell Dep. Tr. at 30-31; Exs 5, 8, 9 (emails from Bell using Klein & Heuchan's email address to distribute CoStar data and reports); Klein Dep. Tr. at 26. Klein & Heuchan provided him with a printer and a copier to create hard copies of CoStar data and reports. *See* Bell Dep. Tr. at 33. As such, there is no genuine issue of material fact that Klein & Heuchan materially contributed to Bell's infringing conduct by providing him the means to engage in that conduct. *See,*

*e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (providing Internet facilities to access websites and engage in infringing activity would be considered a material contribution); *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995) (holding that provision of Internet services with knowledge of infringing activity could support a contributory infringement claim).

Because Klein & Heuchan materially contributed to Bell's infringement – allowing him to use its facilities and Internet access to engage in unauthorized usage – with sufficient knowledge of Bell's infringing conduct, CoStar is entitled to judgment as a matter of law that Klein & Heuchan is liable for contributory infringement.

## C. KLEIN & HEUCHAN INTENTIONALLY INDUCED THE INFRINGEMENT OF COSTAR'S COPYRIGHTS

In the alternative, Klein & Heuchan is also liable for contributory infringement because, even if its contribution to Bell's infringement was not material, it intentionally induced Bell's infringement by making requests of Bell to use CoStar's products (thus infringing CoStar's copyrights) knowing that such use was unauthorized, and, indeed, was something that Klein & Heuchan knew it needed to pay for.

As described above, Klein & Heuchan did more than just allow Bell to use its facilities to engage in his infringing conduct. Instead, Steve Klein and Mark Klein specifically requested that Bell use his access to CoStar's database of commercial real estate information to prepare reports for them. As demonstrated by Exhibit 10 (Bell Dep. Ex. 13), Steve Klein received a CoStar Office Report from Bell in April 2007 and then, as Bell testified, asked Bell for more detailed information from CoStar's database. *See* Bell Dep. Tr. at 79-80 ("He was looking for information on office – what appears – it's pretty much in the report here. . . . I'm not sure what project he was working on. He just

asked me for this information."). Similarly, Mark Klein received a similar report – entitled "CoStar report" – from Bell prepared from CoStar's database after Mark Klein had asked Bell to prepare the report. *See id*. at 61.

Mark Klein and Steve Klein's actions in requesting that Bell retrieve CoStar property records and data from CoStar's products are paradigmatic examples of copyright infringement. As the Supreme Court stated, "[t]he classic case of direct evidence of unlawful purpose [supporting contributory infringement liability] occurs when one induces commission of infringement by another, or 'entic[es] or persuad[es] another' to infringe." *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 935 (2005) (citing Black's Law Dictionary 790 (8th ed. 2004). Accordingly, even if Klein & Heuchan were not liable for contributory infringement as a result of its material contribution to Bell's infringement, the would be liable for inducing his infringement of CoStar's copyrighted works.

III.     **THE UNDISPUTED FACTS DEMONSTRATE THE KLEIN & HEUCHEN IS LIABLE FOR VICARIOUS INFRINGEMENT BECAUSE IT HAD THE RIGHT AND ABILITY TO CONTROL THE INFRINGING CONDUCT AND RECEIVED A DIRECT FINANCIAL BENEFIT FROM THE INFRINGING CONDUCT.**

CoStar has also adduced undisputed evidence that Klein & Heuchan is equally liable for vicarious infringement as a result of the fact that it unquestionably had the right and ability to control Bell's infringing conduct and that it received a direct financial benefit – it avoided paying for access to CoStar – from that conduct.

A.     **KLEIN & HEUCHAN ADMITS THAT IT HAD THE RIGHT AND ABILITY TO CONTROL SCOTT BELL'S INFRINGING CONDUCT**

Klein & Heuchan cannot dispute that it had the right and ability to control Scott Bell's infringing conduct. As Mark Klein testified, Klein & Heuchan had the right to

"sever" its relationship with Bell for violations of Klein & Heuchan's policies. *See* Klein Dep. Tr. at 45. Moreover, since Klein & Heuchan "holds" Scott Bell's commercial real estate license, his ability to practice commercial real estate was controlled by Klein & Heuchan. *See id*. at 22-23 ("we are the brokers of record and those associates work under our brokerage").[6] Mark Klein acknowledged that he oversaw Scott Bell while he was affiliated with Klein & Heuchan. *See id*. at 24. Since Klein & Heuchan provided Bell with the Internet service Bell used to infringe CoStar's copyrights and the facilities in which Bell engaged in his infringing conduct in the first place, it follows that it had the right and ability to control Bell's use of that Internet service and facilities. *See, e.g.*, *M.L.E. Music Sony/ATV Tunes, LLC v. Julie Ann's, Inc.,* 2008 U.S. Dist. LEXIS 44873, *9 (M.D. Fla. June 9, 2008) ("Because Defendants benefited from the performances and admitted they owned, controlled, managed, and operated [the facilities where the infringement occurred], they are vicariously liable for the infringement.").

### B. KLEIN & HEUCHAN RECEIVED A DIRECT FINANCIAL BENEFIT FROM THE INFRINGING CONDUCT

There is similarly no genuine issue of material fact that Klein & Heuchan received a direct financial benefit from Bell's infringing conduct – it was not required to take a license to CoStar's products or pay for reports created from CoStar's database. Klein & Heuchan knew very well that access to CoStar's database – and by necessity, its library of copyrighted photographs – would involvement payment of a license fee to CoStar. *See* Klein Dep. Tr. at 31; Williams Decl. at ¶ 18. According to CoStar's

---

[6] A search of the Florida Department of Business & Professional Regulation's website, www.myfloridalicense.com, shows that Christopher Scott Bell has a "Real Estate Sales Associate" license affiliated with Klein & Heuchan, Inc. Such a license, under Florida law, requires the licensee to operate under the supervision of a licensed broker. *See* § 475.01(1)(j), Fla. Stat.

standard license fee schedules, Klein & Heuchan would have been required to pay $5,381 per month for the CoStar products that Bell accessed. *See* Willliams Decl. at ¶ 18. The avoidance of a license fee payment constitutes a direct financial benefit for the purposes of vicarious infringement. *See Broad. Music, Inc. v. Mirage Images, Inc.,* 2005 U.S. Dist. LEXIS 42880, *31 (E.D. Tenn. Nov. 2, 2005); *see also In re Aimster Copyright Litig.,* 334 F.3d 643, 654 (7th Cir. 2003) (noting in a "canonical" case of vicarious liability, vicarious infringer avoids payment of royalty fees as a result of hiring direct infringer).

## CONCLUSION

For the reasons set forth above, CoStar's Motion for Summary Judgment on its contributory and vicarious infringement claims against Klein & Heuchan, Inc. should be granted.

## REQUEST FOR HEARING

CoStar requests a hearing on its Motion for Summary Judgment. CoStar believes that such an argument will assist the Court with its evaluation of the issues and may sharpen the parties' focus for eventual trial (or perhaps settlement) of this case.

Dated:  September 25, 2009

Respectfully submitted,

s/William J. Sauers
William J. Sauers (*pro hac vice*)
Sanya Sarich Kerksiek (*pro hac vice*)
Crowell & Moring LLP
1001 Pennsylvania Ave.
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-8844
wsauers@crowell.com
skerksiek@crowell.com

- and -

William C. Guerrant, Jr.
Florida Bar No. 516058
wguerrant@hwhlaw.com
Trial Counsel
William F. Sansone
Florida Bar No. 781231
wsansone@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
Suite 3700 – Bank of America Building
101 East Kennedy Boulevard
Post Office Box 2231
Tampa, Florida 33601
Telephone:  (813) 221-3900
Facsimile:  (813) 221-2900

*Counsel for Defendants-Counterclaim
Plaintiffs CoStar Realty Information, Inc.
and CoStar Group, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 25, 2009, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which sent a notice

of electronic filing to the following:

J. Paul Raymond
Jeff Gibson
Brian J. Augnst
MacFarlane Ferguson & McMullen
P. O. Box 1669
Clearwater, FL 33757
(727) 441-8966
Fax: (727) 442-8470
jpr@clw.macfar.com
jg@macfar.com
bja@macfar.com

*Counsel for Plaintiff-Counterclaim
Defendant K&H*

Randall J. Love
Randall J. Love & Associates, P.A.
5647 Gulf Drive
New Port Richey , FL 34652-4019
(727) 847-0800
Fax: (727) 842-361
rj_1958@yahoo.com

Nicholas Louis Ottaviano
Randall J. Love & Associates, P.A.
5647 Gulf Drive
New Port Richey , FL 34652-4019
(727) 847-0800
Fax: (727) 842-361
NLO@florinroebig.com

James B. Astrachan
Julie Rebecca Rubin
Astrachan Gunst & Thomas, PC
217 E. Redwood St., 21st Floor
Baltimore, MD 21202
(410) 783-3550
Fax: (410) 783-3530
jastrachan@agtlawyers.com
jrubin@agtlawyers.com

*Counsel for Counterclaim-defendant Scott
Bell*

s/William J. Sauers _____
William J. Sauers (*pro hac vice*)
Crowell & Moring LLP
1001 Pennsylvania Ave.
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile: (202) 628-8844
wsauers@crowell.com

*Counsel for Defendants-Counterclaim
Plaintiffs CoStar Realty Information, Inc.
and CoStar Group, Inc.*