## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KLEIN & HEUCHAN, INC.,

           Plaintiff,

v.

COSTAR REALTY INFORMATION, INC.,
and COSTAR GROUP, INC,

           Defendants.

Civil Action No. 8:08-cv-01227-JSM-MSS

### DECLARATION OF STEVEN J. WILLIAMS

I, Steven J. Williams, declare as follows:

1.     My name is Steven J. Williams. I am employed by CoStar Group, Inc. ("CoStar")

as the Assistant Director of the Fraud, Theft & Litigation Team. The statements in this

declaration are based upon personal knowledge and I would testify to such statements under oath

if called upon as a witness.

2.     I have been employed by CoStar for nearly 10 years, having first been hired in

January of 2000. During my time at CoStar, I have worked as a researcher and in CoStar's

customer support department. As a result, I am extremely familiar with CoStar' products,

research practices, internal recordkeeping and business practices. Since September of 2003, I

have worked in CoStar's legal department in various capacities related to the investigation of

unauthorized use of CoStar's services. As a result of my experience, I have become very

familiar with CoStar's policies, practices, and procedures for both licensing its online products,

-1-

Dockets.Justia.com

providing service to its clients, investigating theft of its products, as well as the technological tools it uses to do those things.

3.       CoStar is the leading provider of commercial real estate information in the United States and the United Kingdom, with approximately 900 researchers collecting and maintaining data on over 3,000,000 properties and over 1,000,000 active commercial listings.

4.       Of CoStar's 900 researchers, approximately 100 are "field researchers" who are located on the ground in local commercial real estate markets canvassing for new commercial real estate availabilities, construction, and the like. These field researchers are employees of CoStar managed remotely by a field research team in our headquarters in Bethesda, Maryland. As a part of their responsibilities, CoStar's field researchers take photographs of the commercial real estate buildings they canvass for inclusion with CoStar's database of commercial real estate information. CoStar's field researchers are trained in photography and have taken millions of professional-quality photographs of commercial real estate and buildings.

5.       As a part of my responsibilities in CoStar's legal department, I am responsible for registering the copyrights in the photographs taken by CoStar's researchers. CoStar makes it a part of its regular business practice to register its copyrights in the photographs taken by its researchers on a quarterly basis to ensure that those photographs have been registered within 90 days of their first publication in our database. CoStar registers its photographs collectively on a photographer by photographer basis pursuant to the Copyright Office's regulations allowing for group registrations of photographs. Pursuant to this process, CoStar has applied for registrations for more than 2.5 million photographs.

6.       Included in CoStar's registrations are registrations VA 1-360-344, VA 1-371-124 and VA 1-407-885. These registrations are for the photographs taken by Pam Miller during the

year 2003 (VA 1-360-344), by Pam Miller during the year 2004 (VA 1-371-124) and by Syd Krawczyk during the fourth quarter of 2006 (VA 1-407-885). Exhibits 1, 2 and 3 to CoStar's summary judgment motion include not only copies of those registrations, but the supporting applications and materials submitted to the Copyright Office.

7.  CoStar makes its commercial real estate information and photographs available to those in the commercial real estate industry as a set of databases that are available on CoStar's website, www.costar.com. In order to gain access to those database products, CoStar's customers enter into a license agreement with CoStar (typically on an office-wide basis) and a pay a license fee, which is usually computed on the basis of the number of commercial real estate professionals in the customer's office. CoStar's license agreement allows its customers to, among other things, access the information in the databases to which they have subscribed and make limited use of the photographs and information contained in those databases.

8.  CoStar entered into a license agreement with Coldwell Banker Commercial NRT on September 30, 2005. A copy of that license agreement drawn from CoStar's business records is attached to this declaration as Exhibit A.

9.  As a part of CoStar's normal business practices and in the ordinary course of its operations, it maintains records of contemporaneous communications it has had with its customer and prospective customers. Those records are maintained in a proprietary internal contact management system created by CoStar. Unfortunately, the records in this system are only easily viewable on CoStar's system, but I am able to make copies of those records and paste them into more easily readable and exchangeable documents such at text files, Microsoft Excel files, and Microsoft Word files.

10.     One of CoStar's records indicate that Coldwell Banker Commercial NRT requested the creation of a user account for Scott Bell at Coldwell Banker Commercial NRT's office in Clearwater, Florida sometime prior to November 13, 2006. I have attached a true and accurate copy of an internal e-mail correspondence recorded in CoStar's contact management database as Exhibit B. Exhibit B is a true and accurate copy of the text contained in the notes of that contact item. The contact item is dated November 13, 2006 by Debra Hartig in CoStar's customer support department.

11.     That same day, CoStar's business records show that Ms. Hartig created a user account for Mr. Bell and sent him an e-mail indicating that his account has been created. A true and accurate copy of the text of the e-mail that was recorded by Ms. Hartig in CoStar's contact management database is attached as Exhibit C.

12.     CoStar has no records that Scott Bell ever informed CoStar that he no longer worked for Coldwell Banker Commercial NRT. At no time has CoStar ever specifically authorized Scott Bell to use CoStar's services outside the context his employment with Coldwell Banker Commercial NRT or told Scott Bell that he could make reproductions of CoStar's copyrighted photographs.

13.     Once Scott Bell's user account was established under Coldwell Banker Commercial NRT's license agreement, that user account would have been linked to Coldwell Banker Commercial NRT in CoStar's database product. As a result, at all times while Bell had access to CoStar's products, materials he prepared and printed from CoStar's website would have included a Coldwell Banker Commercial NRT designation, and an indication that his user account was affiliated with Coldwell Banker Commercial NRT would have been featured prominently on Bell's computer screen.

14. As I stated in my prior declaration in support of CoStar's motion to transfer this case to Maryland, CoStar keeps internal records of each log-in session made to its products. These records are kept in CoStar's ordinary course of business and reflect the data gathered from CoStar's website as well as the information available from a user's computer and the Internet related to a particular log-on session.

15. Those records show that one or more persons using a user name and password assigned to Scott Bell logged on to CoStar's website on at least 132 occasions for a total of 46 hours, involving "hits" to 12,829 pages on the CoStar website. By virtue of having logged on to CoStar's website, Scott Bell accordingly would have had to indicate his acceptance to CoStar's Online Terms of Use. I am attaching a true and correct copy of a log of the log-ins under the name Scott Bell as Exhibit D to this declaration.

16. CoStar first detected that Bell was using his Coldwell Banker Commercial NRT-provided user account from IP addresses associated with Klein & Heuchan in the spring of 2008. CoStar reviewed Bell's account and identified that the IP addresses used by Bell to access that account the vast majority of the time, 71.43.67.134, was the same IP addresses used by Mark Klein of Klein & Heuchan to access CoStar's products during a period in which CoStar provided Mr. Klein with a free trial of CoStar products. A true and accurate copy of a logon record for Mark Klein as it is maintained in CoStar's database is attached as Exhibit E to this declaration. CoStar's business records also show that Steve Klein previously had access to CoStar through a trial subscription. A true and accurate copy of CoStar's record concerning the order establishing that trial subscription is attached as Exhibit F to this declaration.

17.     CoStar's business records show that on March 28, 2006, one of CoStar's sales personnel, Thomas Bible, sent Klein & Heuchan a licensing proposal. A true and accurate copy of that record is attached as Exhibit G to this declaration.

18.     Under CoStar's normal licensing terms, if Klein & Heuchan obtained a license for access to the same products that Coldwell Banker Commercial NRT licensed from CoStar and which Scott Bell accessed while working for Klein & Heuchan, Klein & Heuchan would have had to pay a license fee of $5,381 per month.

19.     Attached collectively as Exhibit H to this declaration are true and accurate copies of the ten CoStar photographs for the following properties: (1) 4211 W. Boy Scout Blvd., Tampa FL 33607; (2) 2202 N. West Shore Blvd., Tampa FL 33608; (3) 15950 Bay Vista Dr., Clearwater, FL 33760 (two photographs); (4) 600 N. Westshore Blvd., Tampa FL 33609; (5) 4301 Anchor Plaza Pkwy., Tampa FL 33634; (6) 4343 Anchor Plaza Pkwy., Tampa FL 33634; and (7) 1930 W. Cortez Rd., Bradenton FL 43207 (three photographs).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th of September at Bethesda, Maryland.

Steven J. Williams

-6-

# Exhibit A

38217 ## CoStar Property®/CoStar Tenant®/CoStar COMPS®
### Terms and Conditions

This license agreement (together with any exhibits, the "Agreement") is made as of September 20, 2005 (the "Effective Date"), by and between CoStar Realty Information, Inc. ("CoStar"), and NRT Incorporated on behalf of its businesses that operate as Coldwell Banker Commercial NRT, Inc. ("NRT" or "Licensee").

1.     Product. This Agreement between CoStar, as licensor, and Licensee, concerns a product line of an electronic database developed and maintained by CoStar consisting of: (A) a proprietary database (the "Database") of commercial real estate information, including but not limited to, the data, text, photographic and other images and information contained therein (collectively, the "Data") and the proprietary formats and structures for categorizing, sorting and organizing such Data, and (B) related software (the "Software"). The Software and Database, including any updates or modifications to the Software and/or the Database, are collectively referred to herein as the "Product." Those portions of the Product that are licensed hereunder, including any updates or modifications provided to the Product and any information resulting from the verification of any portion of the Product by Licensee, are collectively referred to herein as the "Licensed Product."

2.     License.

       2.1     (a) During the term of this Agreement, CoStar hereby grants to Licensee a nonexclusive, nontransferable license to use only those portions of the Licensed Product that are expressly identified on Exhibit A under the heading Product Name, as well as related user manuals, specifications and/or documentation, subject to and in accordance with the terms and conditions set forth on Exhibit B and in this Agreement. Licensee may use the Licensed Product only on the number of CPU units stated on Exhibit A under the heading Users and only at the sites identified on Exhibit D under the heading Office address (each, an "Authorized Site"), however usage of the Licensed Product on laptops is permitted provided that such usage complies with all other terms and conditions hereof.

       2.2     (a) Each portion of the Licensed Product may be used by no more than the number of users set forth on Exhibit A and all of such users must be Authorized Users (as defined below), and only Authorized Users of the specific portion of the Licensed Product may access such portion of the Licensed Product. All of such users (the "Authorized Users") must be individuals: (i) employed by Licensee or an Independent Contractor (as defined below) of Licensee at an Authorized Site identified on Exhibit A or at an Additional Authorized Site (as defined below); (ii) designated by Licensee as an employee or Independent Contractor requiring access to the Licensed Product; and (iii) included on CoStar's list of Authorized Users of the Licensed Product. An "Independent Contractor" is defined as an individual person working for Licensee and performing substantially the same services for Licensee as the employees of Licensee, provided, that under no circumstances shall an Independent Contractor refer to an entity performing outside services for Licensee. Licensee will ensure that access to and use of the

Licensed Product, and the user names, PIN numbers and passwords (collectively, the "passcodes") used to access the Licensed Product are available only to Authorized Users, and will not allow anyone other than an Authorized User access to the Licensed Product, or passcodes for any reason. Licensee agrees to provide CoStar with the following information with respect to each Authorized User: user name, address, phone and fax numbers, e-mail address and occupation. (b) For any portion of the Licensed Product that is to be installed at Licensee's site, Licensee agrees to take installation of such Licensed Products (i) that are currently in release within thirty (30) days of the date of signature of this Agreement by CoStar, and (ii) that are not currently in release within thirty (30) days of their delivery to the marketplace by CoStar.

2.3     During the term of this License Agreement, subject to the terms set forth herein, Licensee shall have the right to add markets and/or services within the United States at a fifteen percent (15%) discount off the then-effective list price for such additional markets and/or services.

2.4     Up to two designated employees of Licensee will be authorized to send change requests via email to CoStar's accounting department. Licensee may request changes to the maximum number of users at a given site by telling CoStar how many user IDs to transfer from an existing license site to another existing licensed site. The total number of user IDs will not increase as a result of any such requests. Licensee will provide CoStar written notice of the names and email addresses of the designated employees. The designees at CoStar are Trish Gray tgray@costar.com and Tony Gross tgross@costar.com. Both parties may change the designees as needed by providing the other party written notice.

3.     Ownership. Licensee acknowledges that CoStar and its licensors have and shall retain exclusive ownership of all proprietary rights in or to the Licensed Product, including the format and presentation thereof. Licensee shall have no right or interest in any portion of the Licensed Product except the right to use the Licensed Product as set forth herein. Licensee acknowledges that the Database has been created, compiled, prepared, selected and arranged by CoStar through the expenditure of substantial time, effort and money, and that the Software, Database and the Data constitute the valuable property and confidential copyrighted information of CoStar (collectively, the "Proprietary Information"). Licensee agrees to take all necessary precautions to maintain the confidentiality of such Proprietary Information, to comply with all copyright, trademark, trade secret, patent, contract and other laws necessary to protect all rights in the Proprietary Information, and to not remove, conceal or obliterate any copyright or other proprietary notice included in the Licensed Product. Licensee shall be liable for any violation of the provisions of this Agreement by any Authorized User and by Licensee's employees, Independent Contractors, affiliates and agents and for any unauthorized use of the Licensed Products by such persons. Licensee agrees to keep the terms of this Agreement strictly confidential.

4.     Term. The term of this Agreement shall begin on October 1, 2005 (the "Start Date"), shall continue for the term of two (2) years (the "Initial Term"), and shall expire on September

30, 2007, unless earlier terminated pursuant to the terms hereof. License Fees (before tax) owing hereunder during the second year of the Initial Term shall increase by an amount shown on Exhibit A.

5.      <u>License Fees</u>. Licensee agrees to pay the monthly License Fees and all other fees set forth on <u>Exhibit A</u>. Licensee's obligation to pay such fees in full shall be binding on the Start Date. All fees shall be billed in advance and are due net thirty (30) days after receipt of a valid invoice. All payments received after the due date will incur a late payment charge from such due date until paid at a rate equal to the lesser of eighteen percent (18%) per annum or the maximum rate permitted under applicable law. In all cases, the amount of License Fees shall be paid by Licensee to CoStar in full without any right of set-off or deduction. The License Fees do not include sales, use, excise, ad valorem, property or any other taxes or fees now or hereafter imposed, directly or indirectly, by any governmental authority with respect to the license of the products hereunder. At CoStar's option, Licensee shall pay such taxes or fees directly or pay to CoStar any such taxes or fees immediately upon invoicing by CoStar of such taxes or fees. CoStar may accept any check or payment without prejudice to its rights to recover the balance due or to pursue any other right or remedy. No endorsement or statement on any check or payment or letter accompanying any check or payment or elsewhere will be construed as an accord or satisfaction.

6.      <u>Termination.</u>

     6.1      Either party may terminate this Agreement in the event of: (1) any breach of a material term of this Agreement by the other party which is not remedied within thirty (30) days after written notice from the other party to the breaching party; or (2) the other party's making an assignment for the benefit of its creditors, or the filing by or against such party of a petition under any bankruptcy or insolvency law.

     6.2      In the event that CoStar decides to cease providing Data for a particular market or market(s) that forms a part of the Licensed Product, CoStar may terminate this Agreement with respect to the discontinued market(s) upon sixty (60) days written notice without further obligation to Licensee, in which case CoStar shall refund any fees paid by Licensee to license the Licensed Product with respect to the terminated market(s) after the effective date of such termination, and Licensee shall be released of its obligation to pay any license fees due after the date of such termination with respect to the terminated market(s). In the event that Licensee has violated any provision of Sections 2, 3, 11, 12 or <u>Exhibit B</u> of this Agreement, CoStar may immediately terminate this Agreement without further obligation to Licensee.

     6.3      CoStar may interrupt the provision of any portion of the Licensed Product to Licensee if Licensee has violated any provision of Section 2, 3, 5, 11, 12 or <u>Exhibit B</u> of this Agreement, and during such interruption, Licensee shall continue to be responsible for all License Fees. CoStar will restore the provision of the Licensed Product only if all amounts due hereunder are paid and/or if, in CoStar's reasonable opinion, CoStar has received satisfactory assurances as to the cessation of the violation.

6.4     Upon Licensee's material breach of any term of this Agreement, all License Fees and all other fees payable hereunder shall become immediately due and payable in full, and in addition to the foregoing, CoStar's remedies shall include any monetary benefits that accrued to Licensee as a result of the breach, any damages incurred by CoStar related to Licensee's breach, and any other damages and relief available at law or in equity. If CoStar retains any third party to obtain any remedy to which it is entitled under this Agreement, the prevailing party shall be entitled to recover all costs, including attorney's fees or collection agency commissions, such party reasonably incurs.

7.     Post-Termination. Within ten (10) days after the effective date of termination or nonrenewal of this Agreement, Licensee will (i) permanently delete or destroy all elements of the Licensed Product under its control, and (ii) destroy all passcodes in Licensee's and its agent's possession. Additionally, Licensee shall affirm the completion of this process by execution and delivery to CoStar of an affidavit to that effect within ten (10) days of receipt of such affidavit from CoStar.

8.     Licensed Product. Subject to Section 15, during the term of this Agreement, CoStar will provide updated Information to Licensee, which updates may be provided through the Internet or in such other manner as determined by CoStar. Licensee is responsible for providing all hardware, software and equipment necessary to obtain and use the Licensed Product, including any updates or other modifications thereto. The Licensed Product currently requires a Windows 98, NT, 2000 or XP based computer, a high-speed Internet connection or modem with a baud rate not less than 56K and Internet Explorer 6.0. Licensee is responsible for all charges necessary to access the Licensed Product. CoStar reserves the right to modify any part of the Licensed Product or the way the Licensed Product is accessed at any time, so long as such modifications do not significantly degrade the depth of Information provided to Licensee hereunder.

9.     Information. Licensee shall use reasonable efforts to keep CoStar informed about commercial and investment space available for lease or sale with respect to properties that Licensee owns, controls, represents or holds exclusives, provided, however, Licensee shall not have any obligation to disclose information which it or its clients reasonably regard as confidential. Licensee hereby grants to CoStar an irrevocable, non-exclusive, transferable, license, in connection with CoStar's and its affiliates' commercial real estate databases, to use, display, reproduce, distribute, sell, publish and sublicense any commercial real estate information with respect to commercial and investment space available for lease or sale that is available on the Licensee's web site. CoStar acknowledges that if Licensee provides CoStar with any information or images, then Licensee retains its ownership rights with respect to such information and images, even following termination of this Agreement Licensee agrees not to use any portion of the Licensed Product in a manner which would violate any laws, regulations, rules or ordinances, including without limitation, the state and local real estate practice laws.

10.    Limitation on Liability. (a) Although CoStar makes reasonable efforts to ensure the accuracy and reliability of the Licensed Product, Licensee acknowledges that CoStar and its affiliates and their respective officers, directors and employees (collectively, the "CoStar Parties") will not be held liable for any loss, cost or damage suffered or incurred by Licensee or any third party arising out of any faults, interruptions or delays in the Licensed Product or out of any inaccuracies, errors or omissions in the information contained in the Licensed Product, regardless of how such faults, interruptions, delays, inaccuracies, errors or omissions arise. THE LICENSED PRODUCT IS PROVIDED 'AS IS' WITHOUT REPRESENTATIONS, WARRANTIES OR GUARANTEES OF ANY KIND. COSTAR EXPRESSLY DISCLAIMS ANY REPRESENTATIONS, WARRANTIES OR GUARANTEES AS TO (i) MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND (ii) THE QUALITY, ACCURACY, TIMELINESS OR COMPLETENESS OF THE DATA. (b) EXCEPT FOR COSTAR'S VIOLATION OF THE WARRANTIES SET FORTH IN SECTION 20.2 BELOW, UNDER NO CIRCUMSTANCES WILL ANY OF THE COSTAR PARTIES BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION LOST PROFITS, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT. NOTWITHSTANDING ANY PROVISION CONTAINED HEREIN TO THE CONTRARY, IN NO EVENT WILL THE AGGREGATE LIABILITY OF THE COSTAR PARTIES TO LICENSEE OR TO ANY OTHER PARTY FOR DAMAGES, DIRECT OR OTHERWISE, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT EXCEED THE TOTAL AMOUNT OF LICENSE FEES ACTUALLY PAID TO COSTAR UNDER THIS AGREEMENT DURING THE TWELVE MONTH PERIOD IMMEDIATELY PRECEDING THE DATE SUCH CLAIM AROSE, REGARDLESS OF THE CAUSE OR FORM OF ACTION, WHETHER CLAIMS ARE GROUNDED IN CONTRACT OR TORT. COSTAR SHALL HAVE NO LIABILITY FOR THE UNAUTHORIZED USE OF ITS PRODUCTS. (c) No action arising out of or pertaining to this Agreement may be brought by Licensee more than two (2) years after Licensee has knowledge of the cause of such action.

11.    Assignment. The parties' obligations hereunder are binding on their successors, legal representatives and assigns. Neither party may assign or transfer (by operation of law or otherwise) this Agreement nor the license granted hereunder, in whole or in part, without the prior written consent of the other party, which shall not be unreasonably withheld; provided, however, CoStar's refusal to consent to an assignment of this Agreement by Licensee shall not be considered unreasonable if such assignment is to a Competitive Business (as defined below) or would result in the elimination of a then-existing CoStar revenue stream. Notwithstanding anything set forth above to the contrary above, (i) as long as CoStar provides written notice to Licensee, CoStar may assign this Agreement and the license hereunder to a successor in interest to CoStar's business, whether by merger, stock or asset sale, or acquisition, and (ii) in the event of Licensee's merger or acquisition with, or acquisition of assets by, any third party, Licensee shall be entitled upon written notice, without approval from CoStar, to assign its rights and obligations under this Agreement to such third party; provided, however, that (a) such assignment shall not result in the elimination of any then-existing CoStar revenue stream from Licensee or such third party; and (b) in no event shall Licensee be entitled to assign its rights and obligations hereunder to any Competitive Business (as defined below).  For purposes of this

Agreement, a "Competitive Business" is any business that sells, licenses or makes publicly available in a commercial forum any property level information with respect to commercial real estate, including, without limitation, space availability, tenant, sales, comparable sales, or sales transaction data, in competition with CoStar's or any of CoStar's affiliates' service offerings.

12.     Passcodes. Licensee shall provide CoStar with the name of a person authorized to determine and change the level of each Authorized User's password access to the Licensed Product. No Authorized User may access the Licensed Product using any passcodes other than the passcodes assigned to such Authorized User. No Authorized User may share his assigned passcodes with any other person, nor allow any other person to use or have access to his passcodes. During the term of this Agreement, Licensee will promptly notify CoStar of any Authorized User's change of employment or independent contractor status with Licensee, including but not limited to, termination of an Authorized User's employment or contractual service with Licensee, and upon such termination, Licensee shall destroy the passcodes for such Authorized User. No Authorized User who ceases to be an employee or Independent Contractor of Licensee may use any passcodes in any manner.

13.     Notices. All notices given hereunder will be in writing, delivered personally or mailed by registered or certified mail, return receipt requested, or delivered by well-recognized overnight mail. All notices will be deemed given if delivered personally, on the day of delivery, if mailed by registered or certified mail, three days after the date of mailing, and if delivered by overnight mail, one day after mailing. Licensee agrees that CoStar may include notices on invoices sent to Licensee by regular mail.

Any notice required to be provided hereunder shall be provided to the following:

If to Licensee:          Mr. Michael T. McLean
                         Senior Vice President
                         NRT, Inc.
                         339 Jefferson Road, Parsippany NJ 07054

                         Invoices will also be sent to this contact.


If to CoStar:            Mr. Gerry Perrine                Mr. Chris Tully
                         Vice President Major Accounts    Sr. V.P. Sales
                         CoStar Group, Inc.               CoStar Group, Inc.
                         2 Bethesda Metro Center          2 Bethesda Metro Center
                         Bethesda, Maryland 20814         Bethesda, MD 20814
                         Telephone: (301) 215-8300        Telephone: (301) 215-8300
                         Facsimile: (800) 494-0052        Facsimile: (301) 664-9176

With a copy (which shall not constitute notice) to:

Jonathan Coleman
General Counsel
CoStar Group, Inc.
2 Bethesda Metro Center
Bethesda, MD 20814
Telephone: (301) 215-8300
Facsimile: (301) 664-9176

14.    Severability; Injunctive Relief. If any provision of this Agreement not being of a
fundamental nature is held to be invalid; illegal or unenforceable, the validity, legality and
enforceability of the remainder of the Agreement will not be affected. Licensee acknowledges
that in the event of a breach of any of these terms by Licensee, CoStar may suffer irreparable
harm and shall be entitled to injunctive relief (without the necessity of posting a bond) as well as
all other monetary remedies available at law or in equity.

15.    Force Majeure. CoStar shall have no liability for any damages resulting from any failure
to perform any obligation hereunder or from any delay in the performance thereof due to causes
beyond CoStar's reasonable control, including, without limitation, industrial disputes of
whatever nature, acts of God, public enemy, war, acts of government, fire, other casualty, failure
of any link or connection whether by computer or otherwise, or failure of technology or
telecommunications or other method or medium of storing or transmitting the Licensed Product.

16.    User Information. Licensee acknowledges that if it creates any settings, surveys, fields or
functions in the Licensed Product or inputs, adds or exports any data into the Licensed Product
(collectively, the "User Data"), none of the CoStar Parties shall have any liability or
responsibility for any of such User Data, including but not limited to, the loss, destruction, use by
third parties, or misplacement of such User Data. Licensee acknowledges that it is Licensee's
responsibility to make back-up copies of such User Data.

17.    Entire Agreement. This Agreement represents the entire agreement between CoStar and
Licensee with respect to the subject matter hereto, and supersedes the agreements between
CoStar (and its affiliates) and Licensee (and its affiliates) identified on Exhibit C, other than with
respect to any outstanding payment obligations and terms that survive termination.

18.    Governing Law; Choice of Forum. This Agreement shall be construed under the laws of
the State of Maryland, without regard to choice of law principles. The parties irrevocably consent
to the jurisdiction of the federal and state courts located in the State of Maryland for the purpose
of any action brought in connection with this Agreement.

19.    Warranties.

19.1    CoStar and Licensee represent and warrant that they have full power and authority
to enter into this Agreement, and CoStar further represents and warrants that it has all rights

7

necessary to grant the licenses provided hereunder to Licensee without the consent of any other person or entity.

19.2    CoStar represents and warrants that the Licensed Product does not infringe any existing or subsequently issued or pending patent, copyright, trade secret, or other proprietary right of any Third Party ("Third Party" means persons, corporations and entities other than Licensee, CoStar and any of their affiliates).

19.3    CoStar represents and warrants that the Software will perform in accordance with its user manuals (which are posted on CoStar's Web Site) in all material respects.

20.    <u>Indemnity</u>. CoStar agrees to defend, indemnify and hold harmless Licensee for all costs and expenses associated with the defense and settlement of any claim, including any judgment against Licensee, that the Licensed Product infringes a patent, copyright, trademark, trade secret or other intellectual property right of any third party (a "Claim") and shall pay any judgments or settlements based thereon; <u>provided</u>, that Licensee shall give CoStar prompt written notice of the Claim, sole control of the proceedings or settlement, and reasonable cooperation, information and assistance in the defense or settlement negotiations. This indemnification is limited to those portions of the Licensed Product provided by Costar and delivered to Licensee, and does not cover third-party claims relating to that portion of the Licensed Product provided to CoStar by Licensee, or arising from modifications to the Licensed Product by Licensee or to any use of the Licensed Product outside the scope of this Agreement. In the event of a Claim, and regardless of the outcome of such Claim, CoStar may either (1) secure the Licensee's right to continue to use the Licensed Product; (2) replace or modify the Licensed Product to make it non-infringing without substantially compromising its utility or function; or (3) if neither (1) nor (2) are reasonably practicable, terminate the license to the Licensed Product granted under this License Agreement and refund to Licensee an amount equal to the license fees paid by Licensee for the infringing Licensed Product for any periods after the date of termination. THIS SECTION STATES THE SOLE REMEDY OF THE LICENSEE AND THE SOLE LIABILITY OF COSTAR FOR ANY CLAIM RELATING TO INTELLECTUAL PROPERTY RIGHTS INFRINGEMENT OF THE LICENSED PRODUCT."

21.    <u>Miscellaneous</u>. This Agreement may not be amended, modified or superseded, nor may any of its terms or conditions be waived, unless expressly agreed to in writing by both parties. The failure of either party at any time to require full performance of any provision hereof will in no manner affect the right of such party at a later time to enforce the same. Headings are for reference only. The persons executing this Agreement on behalf of CoStar and Licensee represents and warrants that he or she has been authorized to do so, and that all necessary actions required for the execution have been taken. The parties hereby acknowledge that this Agreement may be executed and delivered by facsimile and such facsimile shall constitute a legal and binding agreement on the parties. Notwithstanding anything to the contrary set forth herein, the provisions of Sections 3, 6.4, 7, 10 through 12, 14 through 19 and 22 hereof, as well as Sections 1.2 and 2.2 of Exhibit B, will survive non-renewal or termination of this Agreement.

22.    Licensor and Licensee agree that any addendum to the License Agreement will be signed on behalf of Licensee only by Michael T McLean, Senior Vice President, NRT, Incorporated or one other company executive as designated in written notice by Licensee.

This Agreement is duly authorized, executed and delivered as of the date first written above.

NRT INCORPORATED

By: _~Michael T McLean~_

Name: _Michael T McLean_

Title: _Senior Vice President_

COSTAR REALTY INFORMATION, INC.

By: _Chris Tully_

Name: _Chris Tully_

Title: _SVP Sales_

| CoStar market area | St. | Product Name | Sales Unit Description | Dataset | Total # of licensed sites | Maximum # of users | Fees in year 1 | Increase Oct. 2006 | Fees in year 2 |
|---|---|---|---|---|---|---|---|---|---|
| Los Angeles | CA | CompsWeb | LA CENTRAL | All Property Types | 36 | 92 | $ 11,050 | - | $ 11,050 |
| | | CompsWeb | LA EAST | All Property Types | | | | | |
| | | CompsWeb | LA NORTH | All Property Types | | | | | |
| | | CompsWeb | LA SOUTH | All Property Types | | | | | |
| | | CompsWeb | LA WEST | All Property Types | | | | | |
| | | PropertyWeb | Los Angeles | All Data | | | | | |
| San Diego | CA | PropertyWeb | San Diego | All Data | 7 | 14 | $ 1,753 | - | $ 1,753 |
| | | CompsWeb | SAN DIEGO | All Property Types | | | | | |
| Orange County | CA | CompsWeb | ORANGE | All Property Types | 6 | 10 | $ 1,506 | 301 (2%) | $ 1,807 |
| | | PropertyWeb | Orange County | All Data | | | | | |
| | | PropertyWeb | Los Angeles | All Data | | | | | |
| | | PropertyWeb | San Diego | All Data | | | | | |
| | | PropertyWeb | San Bernardino/Riverside (Inland Empire) | All Data | | | | | |
| | | CompsWeb | RIVERSIDE | Apartment/Residential Land | | | | | |
| | | CompsWeb | SAN BERNAD | Apartment/Residential Land | | | | | |
| Inland Empire | CA | CompsWeb | RIVERSIDE | All Property Types | 1 | 3 | $ 580 | | $ 580 |
| San Francisco | CA | CompsWeb | SAN MATEO | All Property Types | 12 | 43 | $ 4,113 | 823 | $ 4,936 |
| | | CompsWeb | SAN FRAN | All Property Types | | | | | |
| | | CompsWeb | MARIN SON | All Property Types | | | | | |
| | | PropertyWeb | San Francisco | All Data | | | | | |
| East Bay | CA | CompsWeb | CNTRA CSTA | All Property Types | 7 | 16 | $ 479 | 96 | $ 575 |
| South Bay | CA | CompsWeb | SNTA CLARA | All Property Types | 13 | 36 | $ 5,915 | 1,183 | $ 7,098 |
| | | CompsWeb | SAN MATEO | All Property Types | | | | | |
| | | CompsWeb | OAKLAND | All Property Types | | | | | |
| | | CompsWeb | CNTRA CSTA | All Property Types | | | | | |
| | | CompsWeb | FRESNO | All Property Types | | | | | |
| | | CompsWeb | STCK MDESTO | All Property Types | | | | | |
| | | PropertyWeb | San Jose (South Bay) | All Data | | | | | |
| | | PropertyWeb | Oakland (East Bay) | All Data | | | | | |
| | | PropertyWeb | San Francisco | All Property Types | | | | | |
| Sacramento | CA | PropertyWeb | Sacramento | All Data | 12 | 28 | $ 2,359 | 472 | $ 2,830 |
| | CA | CompsWeb | SACRAMENTO | All Property Types | | | | | |
| Westchester/S. CT | CT | PropertyWeb | Westchester/Southern CT | All Data | 2 | 7 | $ 359 | 72 | $ 431 |
| DC | DC | PropertyWeb | Washington DC Metro | All Data | 3 | 32 | $ 2,352 | 235 | $ 2,587 |
| ORLANDO | FL | CompsWeb | ORLANDO | All Property Types | | | | | |
| | FL | CompsWeb | TAMPA | All Property Types | | | | | |
| | FL | CompsWeb | W PALM BCH | All Property Types | | | | | |
| | FL | CompsWeb | FT LDRDALE | All Property Types | | | | | |

Handwritten annotations (right margin): 120,10 (Los Angeles); 125.21 (San Diego); 152.60 (Orange County); 9 3% (near Westchester/S. CT)

| Market | State | Product | City | Property Type | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| S. FL | FL | CompsWeb | MIAMI | All Property Types | | | | | |
| | FL | PropertyWeb | Orlando | All Data | 1 | 22 | $ 4,274 | $ - | $ 4,274 |
| Tampa | FL | CompsWeb | MIAMI | All Property Types | | | | | |
| | FL | CompsWeb | TAMPA | All Property Types | | | | | |
| | FL | CompsWeb | ORLANDO | All Property Types | | | | | |
| | FL | CompsWeb | FT LDRDALE | All Property Types | | | | | |
| | FL | CompsWeb | W PALM BCH | All Property Types | | | | | |
| | FL | PropertyWeb | South Florida | All Data | 12 | 47 | $ 7,665 | $ - | $ 7,665 |
| ✓ Atlanta | GA | CompsWeb | ATLANTA | All Property Types | | | | | |
| | GA | PropertyWeb | Atlanta | All Data | 7 | 39 | $ 5,884 | $ - | $ 5,884 |
| ✓ Chicago | IL | CompsWeb | CHI COLLAR | All Property Types | | | | | |
| | IL | CompsWeb | CHI COOK | All Property Types | | | | | |
| | IL | CompsWeb | CHI DUPAGE | All Property Types | | | | | |
| | IL | CompsWeb | CHI LAKE | All Property Types | | | | | |
| | IL | Exchange | 500 - Illinois | All Data | 1 | 23 | $ 1,423 | 285 | $ 1,708 |
| | IL | PropertyWeb | Chicago | All Data | 22 | 54 | $ 6,584 | 658 | $ 7,242 |
| ✓ Boston | MA | CompsWeb | BOSTON | All Property Types | | | | | |
| | MA | PropertyWeb | Boston | All Data | 4 | 16 | $ 2,520 | $ - | $ 2,520 |
| Baltimore | MD | CompsWeb | BALTIMORE | All Property Types | | | | | |
| | MD | PropertyWeb | Baltimore | All Data | 10 | 35 | $ 6,016 | 301 | $ 6,316 |
| Northern New Jersey | NJ | CompsWeb | NEWARK NNJ | All Property Types | | | | | |
| | NJ | CompsWeb | TRNTON CNJ | All Property Types | | | | | |
| | NJ | PropertyWeb | Northern New Jersey | All Data | 31 | 53 | $ 4,246 | 849 | $ 5,095 |
| Columbus | OH | CoStar Suite | Columbus | All Data | 1 | 16 | $ 2,815 | - | $ 2,815 |
| Pittsburgh | PA | PropertyWeb | Pittsburgh | All Data | 13 | 21 | $ 1,622 | - | $ 1,622 |
| DC | VA | PropertyWeb | Washington DC Metro | All Data | 8 | 49 | $ 2,444 | 122 | $ 2,566 |
| | | | | Totals | 209 | 656 | $ 75,959 | 5,397 | $ 81,356 |

Handwritten annotations:
- Near Chicago Exchange line: "15-34  60-96", "$131.92", "10%" (above the 658 column)
- Near Boston total: "157.50"
- Near Columbus row: "DO NOT CARE YET"

# EXHIBIT A SCHEDULE OF SERVICES

| Loc. Id | Street | City | St | Users | CoStar Tenant market data | Fees in year 1 | Increase Oct. 2006 | Fees in year 2 |
|---|---|---|---|---|---|---|---|---|
| 32370 | 11900 W Olympic Blvd, Suite 100 | Los Angeles | CA | 4 | Los Angeles | $ 765 | $ - | $ 765 |
| 233597 | 301 N Canon Dr, Suite E | Beverly Hills | CA | 1 | Los Angeles | $ 107 | $ - | $ 107 |
| 286672 | 68 Malaga Cove Plz | Palos Verdes Estates | CA | 1 | Los Angeles | $ - | $ - | $ - |
| 297931 | 600 Deep Valley Dr | Rolling Hills Estate | CA | 2 | Los Angeles | $ 560 | $ - | $ 560 |
| 472074 | 1291 E. Main St, Suite 101 | El Cajon | CA | 3 | San Diego | $ 233 | $ - | $ 233 |
| 194553 | 1699 Van Ness Ave | San Francisco | CA | 3 | San Francisco | $ 514 | $ - | $ 514 |
| 351770 | 7763 Glades Rd, Suite A | Boca Raton | FL | 10 | West Palm Beach | $ 603 | $ - | $ 603 |
| 351770 | 7763 Glades Rd, Suite A | Boca Raton | FL | 10 | Ft lauderdale (Broward) | $ 603 | $ - | $ 603 |
| 191030 | 1 Glenlake Pky NE, Suite 800 | Atlanta | GA | 5 | Atlanta | $ 756 | $ - | $ 756 |
| 2158 | 2700 S River Rd, Suite 400 | Des Plaines | IL 6 | 7 | Chicago | $ 889 | $ - | $ 889 |
| 54783 | 1840 N Clark St | Chicago | IL 6 | 5 | Chicago | $ 159 | $ - | $ 159 |
| 296148 | 2855 N Lincoln Ave | Chicago | IL 6 | 3 | Chicago | $ 260 | $ - | $ 260 |
| 62119 | 40 Kenoza Ave | Haverhill | MA | 2 | Boston | $ 179 | $ - | $ 179 |
| 270766 | 1375 Beacon St | Brookline | MA | 3 | Boston | $ 284 | $ - | $ 284 |
| 294434 | 1601 Trapelo Rd, Suite 24 | Waltham | MA | 3 | Boston | $ 1,046 | $ - | $ 1,046 |
| 839 | 31 Light St, Suite 200 | Baltimore | MD | 22 | Baltimore | $ 1,785 | $ - | $ 1,785 |
| 267540 | 3468 Brodhead Rd | Monaca | PA | 1 | Pittsburgh | $ - | $ - | $ - |
| 2246279 | 4960 Route 8 Rt | Allison Park | PA | 1 | Pittsburgh | $ 23 | $ - | $ 23 |
| 267800 | 6305 University Blvd | Moon Township | PA | 2 | Pittsburgh | $ 47 | $ - | $ 47 |
| 654593 | 1539 Washington Blvd | Pittsburgh | PA | 3 | Pittsburgh | $ - | $ - | $ - |
| 230063 | 421 Cochran Rd, Suite 201 | Pittsburgh | PA | 17 | Pittsburgh | $ - | $ - | $ - |
| 287199 | 1699 Washington Rd | Pittsburgh | PA | 1 | Pittsburgh | $ - | $ - | $ - |
| 273117 | 5857 Ellsworth Ave | Pittsburgh | PA | 3 | Pittsburgh | $ 70 | $ - | $ 70 |
| 2432432 | 10 Old Clairton Rd | Pittsburgh | PA | 2 | Pittsburgh | $ 23 | $ - | $ 23 |
| 254492 | 9576 Perry Hwy, Suite 300 | Pittsburgh | PA | 2 | Pittsburgh | $ 47 | $ - | $ 47 |
| 263278 | 3244 Washington Rd, Suite 100 | McMurray | PA | 2 | Pittsburgh | $ 23 | $ - | $ 23 |
| 275945 | 3865 William Penn Hwy | Murrysville | PA | 2 | Pittsburgh | $ - | $ - | $ - |
| 2432444 | 186 New Castle Rd | Butler | PA | 1 | Pittsburgh | $ - | $ - | $ - |
| 254100 | 20510 Route 19 | Cranberry Township | PA | 3 | Pittsburgh | $ 70 | $ - | $ 70 |
| | | Subtotal for CoStar Tenant | | | | $ 9,044 | $ - | $ 9,044 |
| | | Grand total per month | | | | $ 85,591 | $ 5,442 | $ 90,988 |

## EXHIBIT B
### License Restrictions

1.  <u>CoStar Property, CoStar Tenant and CoStar Exchange</u>. The following sets forth the use restrictions for the CoStar Property, CoStar Tenant and CoStar Exchange portions of the Licensed Product:

    1.1    <u>Permitted Use</u>. (a) Subject to the prohibitions set forth at 1.2 below, during the term of this Agreement, Licensee may: (1) use the Licensed Product for Licensee's internal research purposes; (2) reproduce insubstantial portions of the Data included in the Licensed Product to provide information regarding particular properties in the ordinary course of its business to its clients and prospective clients or to market such properties; and (3) use the Licensed Product for purposes of generating periodic market research reports created by Licensee in the ordinary course of its business for in-house use or for clients' or prospective clients' use, provided that such reports (i) do not contain building-specific or tenant-specific Data, (ii) do not reproduce Data in a format, arrangement or layout that is similar to that in which it appears in the Licensed Product and (iii) are not commercially or generally distributed.

    1.2    <u>Prohibited Uses</u>. (a) Except as set forth in Section 1.1 above, Licensee shall not: (1) distribute, disclose, copy, reproduce, display, publish, transmit, assign, sublicense, transfer, provide access to, use or sell, directly or indirectly (including in electronic form), any portion of the Licensed Product; or (2) modify or create derivative works of the Licensed Product. (b) Notwithstanding any other provision herein, Licensee shall not: (1) upload, post or otherwise transmit any portion of the Licensed Product on, or provide access to any portion of the Licensed Product through, the Internet, any bulletin board system, any other electronic network, any data library, any listing service or any other data sharing arrangement not restricted exclusively to Licensee and the Authorized Users, except that (i) Licensee may e-mail a report containing Data that complies with this Section 1 to a limited number of its clients and prospective clients and (ii) if Licensee is a subscriber in good standing (meaning paid in full and not in violation of any of the terms and conditions) of the Licensed Product and CoStar Connect™, Licensee may post insubstantial portions of the Data from CoStar Web Property to the client extranet component provided by CoStar in Licensee's designated CoStar Connect web site for accessing by clients or prospective clients of Licensee, as long as Licensee complies with this Section 1; (2) use any portion of the Licensed Product to create, directly or indirectly, any database or other product competitive with any portion of the Licensed Product; (3) provide, disclose or transmit any portion of the Licensed Product to any Competitive Business; (4) store, copy or export any portion of the Licensed Product into any database or other software, other than an insubstantial portion of the Licensed Product into word processing, spreadsheet and presentation programs in compliance with the provisions of this Section 1 or other software programs with the express written consent of CoStar; (5) modify, merge, decompile, disassemble or reverse engineer any portion of the Licensed Product; (6) use, reproduce, publish or compile any Data for the purpose of selling or licensing such information or making such information publicly available; or (7) use or distribute Data that has been verified or confirmed by Licensee for the purpose of developing or contributing to the development of any database, product or service that may compete with the Licensed Product.

2.  <u>CoStar COMPS</u>. The following sets forth the use restrictions for the CoStar COMPS portion of the Licensed Product:

2.1     Permitted Use. (a) Subject to the prohibitions set forth in Section 2.2 below, during the term of this Agreement, Licensee may use the Licensed Product in the course of Licensee's business solely: (i) for the purposes of supporting Licensee's opinion of a property valuation, marketing properties, analyzing market trends, establishing market averages, developing contact information, assembling market presentations and reports for Licensee's clients and prospective clients, and performing market and feasibility analyses; (ii) for internal use for strategic and business analyses; and (iii) to generate prospecting mailings lists and to populate Licensee's prospecting databases for cold calling if a limited amount of such Licensed Product is used therefor. (b) In connection with such uses, Licensee may incorporate the Licensed Product into any of the following **print** media: (i) working papers, word processing programs or spreadsheets underlying a report prepared by an Authorized User; (ii) final reports prepared by Licensee; (iii) appraisals; (iv) listing proposals; (v) presentations to Licensee's prospective clients for asset valuation and review purposes; and (vi) marketing packages, portfolios and reports. (c) In connection with such uses, Licensee may reproduce a reasonably limited subset of the Licensed Product to support the valuation of a specific property, provided that such reproduction: (i) is contained in actual final reports and proposals that are submitted to Licensee's prospective clients and to working papers therefore; (ii) may not inhibit CoStar's ability to license the Licensed Product to anyone else; (iii) is necessary for the report; and (iv) does not exceed ten (10).

2.2     Prohibited Uses. (a) Except as set forth in Section 2.1 above, Licensee shall not: (1) distribute, disclose, copy, reproduce, display, publish, transmit, assign, sublicense, transfer, provide access to, use or sell, directly or indirectly (including in electronic form), any portion of the Licensed Product; or (2) modify or create derivative works of the Licensed Product. (b) Notwithstanding any other provision herein, Licensee shall not: (1) upload, post or otherwise transmit any portion of the Licensed Product on, or provide access to any portion of the Licensed Product through, the Internet, any bulletin board system, any other electronic network, any data library, any listing service or any other data sharing arrangement not restricted exclusively to Licensee and the Authorized Users, except that Licensee may e-mail a report containing the Data that complies with this Section 2 to a limited number of its clients and prospective clients; (2) use any portion of the Licensed Product to create, directly or indirectly, any database or other product directly or indirectly competitive with any portion of the Licensed Product; (3) provide, disclose or transmit any portion of the Licensed Product to any Competitive Business; (4) store, copy, export or transfer any portion of the Licensed Product into any database, automated valuation program, statistical analysis program or other software, other than a portion of the Licensed Product that is reasonably necessary to support the permitted uses set forth in Section 2.1 above, which may be transferred into word processing, spreadsheet and presentation programs in compliance with the provisions of this Section 2 or other software programs with the express written consent of CoStar; (5) modify, merge, decompile, disassemble or reverse engineer any portion of the Licensed Product; (6) use, reproduce, publish or compile any Data for the purpose of selling or licensing such information or making such information publicly available; (7) store, collect or export any portion of the Licensed Product to any database or software for the purpose of future retrieval or use not related to the original permitted uses set forth above; or (8) use or distribute Data that has been verified or confirmed by Licensee for the purpose of developing or contributing to the development of any database, product or service that may compete with the Licensed Product.

## EXHIBIT C

### Superceded Agreements

| Loc. Id | Street | City | St | Users | Product | Market Data | Fees | Contract signed date |
|---------|--------|------|-----|-------|---------|-------------|------|----------------------|
| 227252 | 428-A Beecher Rd | Columbus | OH | 16 | CoStar Suite | Columbus | $2,815 | 6/30/2004 |
| 282097 | 306 2nd Street | Laurel | MD | 1 | PropertyWeb | Baltimore | $ 285 | 8/17/2005 |
| 292431 | 431 S Palm Canyon Drive | Palm Springs | CA | 3 | CompsWeb | Riverside | $ 580 | 3/6/2001 |

Exhibit B

Removed access:

Bob,
I emailed you about Scott Bell, we have several Scott Bell's in our system and need to know if he was previously with Carter in Orlando, can you confirm with him if he was previously with Carter in Orlando? I just deleted Mahmood as a user, has he left the company?


-----Original Message-----
From: Bob Giest
Sent: Monday, November 13, 2006 10:19 AM
To: Fulfillment Installs
 Ben Buckley (B)
Subject: RE: Debra Set up loc ID 4289848 per e-mail: Coldwell Banker Commercial NRT Contract # 38217

Debra and Ben,

Thanks for working to get this client set-up with their changes. I did a review of the changes in Enterprise and here is what I believe still needs to take place based on the client's request:

1. Set up access for John Skicewicz and Mike Notaro at the Palm Harbor location ID: 4526044
2. Delete Mahmood Eldee (Contact ID:2232452) and  ADD Scott Bell (Contact ID: 3986860)at the Clearwater location ID: 351761
3. Delete Brian Tunnell (Contact ID: 2266553) at the Bonita Springs location ID:588597

Please confirm when completed.

Thanks,
-bob

-----Original Message-----
From: Fulfillment Installs
Sent: Wednesday, November 08, 2006 1:35 PM
To: Bob Giest
Subject: RE: Debra Set up loc ID 4289848 per e-mail: Coldwell Banker Commercial NRT Contract # 38217

If you tell me where Michael Notaro and John Skicewicz are ACTUALLY supposed to be located I will make sure they get there, and get access.

-----Original Message-----
From: Bob Giest
Sent: Wednesday, November 08, 2006 1:32 PM
To: Fulfillment Installs
Subject: RE: Debra Set up loc ID 4289848 per e-mail: Coldwell Banker Commercial NRT Contract # 38217

Debra,

I'll call you in a little bit so we can get it set up correctly for the client. Not sure of how our system works best but it looks to me the contacts and users we moved from one of the Boca locations that closed to the Palm Harbor don't have access. At a minimum they need to be moved back to the new location and set up with their line items as they had previously.

Thanks,
-bob

-----Original Message-----
From: Fulfillment Installs
Sent: Wednesday, November 08, 2006 1:25 PM
To: Bob Giest
 Fulfillment Installs
Cc: Ben Buckley (B)
Subject: RE: Debra Set up loc ID 4289848 per e-mail: Coldwell Banker Commercial NRT Contract # 38217

Bob,
The new office at 3837 NW Boca Raton, should just be the same location ID as the 2295 NW Corporate Blvd location, it should have just changed the address, the other location 7763 should have all the contacts moved to the 3837 location (previously 2295 NW Corporate Blvd) and then should be made Moved/Merge or Out of Business with a note in the Internal notes field that states all contacts and actvities should be left at 3837 location in enterprise after a change of address addendum was submitted.  New locations do not need to be created in enterprise if another location is ceasing to exist.  Then the two Clearwater users should have been moved to the proper location.  Please call me for further explaination if needed.  My direct number is 800-473-1632.

Thanks
Debra

-----Original Message-----
From: Bob Giest
Sent: Wednesday, November 08, 2006 1:01 PM
To: Fulfillment Installs
Cc: Ben Buckley (B)
Subject: RE: Debra Set up loc ID 4289848 per e-mail: Coldwell Banker Commercial NRT Contract # 38217
Importance: High

Debra,

I just looked at the Palm Harbor location (ID#353143) which looks like it was moved from Boca Raton with all the associated contacts, which isn't reality, the contacts should be at the new CB Commercial NRT

location at 3837 NW Boca Raton Blvd, su 200 and the appropriate "users" should be set-up accordingly. That new office combined the one at 2295 NW Corporate Blvd, su 240, Boca Raton and the one at 7763 Glades Road, Boca Raton. These sites did have 16 and 12 licensed users, respectively. So the new location should have 28 licenses.

The one I set up in Palm Harbor is (ID# 4289848) which has the two users now set-up from their Clearwater location w