# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

KLEIN & HEUCHAN, INC.

      Plaintiff

v.

COSTAR REALTY INFORMATION, INC.,
and COSTAR GROUP, INC.

      Defendants / Counter-Plaintiffs

Civil No.: 8:08-cv-01227-JSM-EAJ

v.

SCOTT BELL and KLEIN & HEUCHAN,
INC.

      Counter-Defendants

_____/

## RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff / Counter-Defendant KLEIN & HEUCHAN, INC. (hereinafter "K&H"), by and through its undersigned counsel, hereby files this Response in Opposition to Defendants / Counter-Plaintiffs COSTAR REALTY INFORMATION, INC., and COSTAR GROUP, INC.'s (hereinafter collectively the singular "COSTAR") Motion for Summary Judgment [D.E. 69]. For the reasons detailed herein, COSTAR is not entitled to summary judgment on its claim of contributory and vicarious copyright infringement against K&H. Therefore, K&H respectfully requests this Court deny the Motion.

## I.    INTRODUCTION AND FACTUAL BACKGROUND

This case is hardly the case presenting a "straightforward set of facts that are undisputed between the parties" as argued by COSTAR in the second paragraph of its

Motion. In fact, there are not many material facts on which the parties agree. COSTAR seeks to have this Court hold K&H liable under theories of contributory and vicarious copyright infringement because of co-defendant Scott Bell's alleged unauthorized access of COSTAR's web-based databases.[1] However, a review of the entire record reveals that Mr. Bell had absolutely no idea that he was not authorized to access COSTAR's database. Moreover, and even more removed, K&H had no idea (and absolutely no way of knowing) that Mr. Bell was infringing on anyone's copyright. COSTAR's attempted infringement claims flow from agreements between COSTAR and Mr. Bell's prior employer – Coldwell Banker Commercial NRT (hereinafter "COLDWELL") – agreements to which K&H was not a party and about which it had no knowledge.

In contrast to the size and nationwide scope of COSTAR, K&H is a closely held Florida corporation based in Clearwater, Pinellas County, Florida. *See Affidavit of Mark S. Klein* ("Aff. M. Klein") at ¶¶3 & 6, attached hereto as "Exhibit A." K&H provides brokerage services, property management services and development services to clients within the Tampa Bay area.[2] *See id.* at ¶5. K&H's sole shareholder is Mark S. Klein, a real estate broker licensed in the State of Florida and a Certified Commercial Investment Member. *See id.* at ¶2-4. In addition to Mr. Klein, approximately 18 other Independent Service Professionals work out of two (2) offices maintained by K&H in Clearwater, Pinellas County, Florida. *See id.* at ¶¶6-7.

Mr. Bell obtained his real estate license in 2005 and soon thereafter began working for COLDWELL. *See* Depo. C. Scott Bell, August 20, 2009 ("Depo. Bell") at

---

[1] Interestingly, COSTAR seeks summary judgment against K&H solely upon alleged copyright infringement of ten (10) photographs. COSTAR supplies this Court with absolutely no link between any alleged access of these photographs by Mr. Bell (authorized or unauthorized) and K&H.

[2] The Tampa Bay Area encompasses the following counties in Southwest Central Florida: Pinellas, Hillsborough, Polk, Pasco, Hernando and Manatee.

pp. 121-122. At some point during his tenure at COLDWELL, Mr. Bell was provided a subscription to COSTAR's web-based databases. *See id.* at 122-127. At this time Mr. Bell understood that COLDWELL was "giving him a subscription." *See id.* Mr. Bell was not told that the subscription would expire; was not told that the subscription could only be used on COLDWELL property; and was not told that the subscription could only be used while logged on from a COLDWELL terminal. *See id.* Mr. Bell was not told anything about the length of the subscription. *See id.* Despite COSTAR's assertions, Mr. Bell does not recall receiving an e-mail, letter or telephone call in any way detailing any kind of parameters concerning his subscription to COSTAR. *See id.* Most importantly, Mr. Bell was never told that if he ceased being affiliated with COLDWELL his access was not authorized. *See id.* at 127-28.

Mr. Bell became unhappy with his employment with COLDWELL and contacted K&H in December of 2006. *See* Depo, Mark S. Klein, August 27, 2009 ("Depo. Klein") at p.22. Mr. Bell began working with K&H soon thereafter as an independent sales professional. *See id.* at p.22. Mr. Bell did not earn a salary or receive a draw from K&H but earned a commission from each transaction that he closed. *See* Aff. M. Klein ¶¶15-16. K&H did not control how Mr. Bell performed his duties or his daily activities. *See* Depo. Bell 138-42; Aff. M. Klein ¶¶9-21. Other than periodic sales meetings, Mr. Bell was not required to be in the office at any given day or time. K&H provided Mr. Bell a work space comprising of a desk in a cubical area. *See* Depo. Bell 138-42; Aff. M. Klein ¶¶9-21. Additionally, as with all the associates of K&H, Mr. Bell had access to a copier machine. *See* Depo. Bell 138-42; Aff. M. Klein ¶¶9-21. Mr. Bell was not provided a computer or a printer. *See* Depo. Bell 138-42; Aff. M. Klein ¶¶9-21. He utilized his own

3

laptop computer and his own printer. *See* Depo. Bell 138-42; Aff. M. Klein ¶¶9-21. Mr. Bell was also provided internet access while at the office. *See* Depo. Bell 138-42; Aff. M. Klein ¶¶9-21. This access did not require logging into any K&H server. *See* Depo. Bell 138-42; Aff. M. Klein ¶¶9-21. Mr. Bell simply had to plug an internet cable into his computer, and the internet was then available. *See* Depo. Bell 138-42; Aff. M. Klein ¶¶9-21.

For many years both Mr. Mark Klein and Mr. Steven Klein have been approached by salespersons from COSTAR asking them to try and purchase subscriptions to COSTAR's databases. *See* Aff. M. Klein ¶¶22-24; Affidivit Steve Klein ("S. Klein) ¶¶4-6, attached hereto as "Exhibit B." Neither Mr. Mark Klein nor Mr. Steve Klein have ever believed that the information provided by COSTAR was helpful or useful in their business and have never sought to obtain a subscription. *See* Aff. M. Klein ¶¶22-24; Aff. S. Klein ¶¶4-6. Mr. Mark Klein was offered a trial subscription to COSTAR. *See* Aff. M. Klein ¶¶22-24. At that time he attempted to log-on but found it too cumbersome. *See id.* Other than that one attempt at logging on, he has never utilized the COSTAR systems. *See id.*

Neither Mr. Mark Klein or Mr. Steven Klein ever asked Mr. Bell to provide them with information from the COSTAR databases. *See* Aff. M. Klein ¶¶25-26; Aff. S. Klein ¶¶7-8. Moreover, neither principles recall ever receiving any COSTAR-related materials from Mr. Bell. *See* Aff. M. Klein ¶¶25-26; Aff. S. Klein ¶¶7-8

In April of 2008 Mr. Klein received letters from Curtis Ricketts from COSTAR. These letters accused K&H of unauthorized access to COSTAR's databases. *See* Aff. M. Klein ¶¶27-32. Upon receipt of the letter, Mr. Klein immediately contacted the number

provided and spoke with a Steve Williams. *See id.* He asked if Scott Bell was working with K&H. *See id.* Mr. Klein told him that he was. *See id.* He stated that Mr. Bell was accessing COSTAR illegally. *See id.* Mr. Williams was extremely threatening, and Mr. Klein felt as though he was being extorted. *See id.* Mr. Williams told Mr. Klein that he owed COSTAR $69,000.00 but that he could make a deal if K&H would purchase a two-member license for $10,000.00. *See id.*

The following day another individual called Mr. Klein. Mr. Klein does not know if it was Mr. Rickets or someone else. *See id.* Mr. Klein was then told that Mr. Williams was unauthorized to make the offer the day before. *See id.* Mr. Klein told this individual: "I don't care. You're not going to use extortion and hold me hostage to buy a license from COSTAR." *See id.*

Mr. Klein then spoke with Mr. Bell and Mr. Steven Klein. *See id.* Mr. Bell told both of the Kleins that he was given a subscription to COSTAR while at his prior employer, Coldwell Banker Commercial NRT, and that he still had access to COSTAR. *See id.* He told the Kleins that he believed he was still authorized to access the system since they had not turned his access off. *See id.*

In May of 2008 Mr. Klein received a facsimile from COSTAR. *See id.* The facsimile included a fax cover page and a draft *Complaint* purportedly ready to be filed in the United States District Court for the District of Maryland. *See id.* The message on the facsimile cover stated:

> As our discussions concerning Klein & Heuchan's unauthorized use of CoStar's services have been unable to resolve our dispute, I am forwarding to you a draft of a complaint that CoStar intends to file against Klein & Heuchan unless we can come to a resolution by the close of business on Tuesday June 3rd. Unfortunately, once our

legal department has authorized the filing of this complaint, we can no longer offer a resolution on the terms we have discussed as a result of the legal costs CoStar will have incurred.

We remain open to discussing this dispute with you.

*See id.*

Soon thereafter the litigation in the Middle District of Florida and the District of Maryland ensued.

## II. COSTAR FAILED TO ADEQUATELY DEMONSTRATE THAT IT IS THE OWNER OF ANY VALID COPYRIGHT THAT WAS INFRINGED.

COSTAR seeks summary judgment on its claims of contributory and vicarious liability against K&H. While COSTAR does not seek summary judgment against co-defendant Scott Bell on its claims of direct copyright infringement, in order to succeed in its claims against K&H, COSTAR must show that the undisputed facts demonstrate the direct copyright infringement by Mr. Bell. *See Greenberg v. National Geographic Soc.*, 244 F.3d 1267, 1271 (11th Cir. 2001); *(abrogated on other grounds by New York Times Co., Inc. v. Tasini,* 533 U.S. 483 (2001), *as recognized by Greenberg v. Nat'l Geographic Soc.,* No. 05-16964, 488 F.3d 1331, 2007 WL 1693056 (11th Cir. June 13, 2007). A review of the actual record before this Court evidences COSTAR's utter failure to establish this initial legal hurdle in order to prevail in its separate claims against K&H.

In order to establish a copyright infringement COSTAR must prove both: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Oravec v. Sunny Isles Luxury Ventures, L.C.,* 527 F.3d 1218, 1223 (11th Cir. 2008) *(quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)).

COSTAR alleges it is the owner of valid copyrights of the ten photographs attached as "Exhibit H" to the *Declaration of Steven J. Williams*[3] [*See* D.E. 69-4, pp3-13]. However, COSTAR has simply put forward insufficient record evidence to establish the non-existence of any disputed fact of either of the two necessary prongs to establish a direct copyright infringement by Mr. Bell. Accordingly, COSTAR's Motion for Summary Judgment against K&H must necessarily fail.

A. *There is Insufficient Record Evidence to Establish that COSTAR is the Owner of a Valid Copyright in the Subject Ten Photographs.*

As the basis of liability, COSTAR alleges it is the owner of valid copyrights of the ten photographs attached as "Exhibit H" to the *Declaration of Steven J. Williams*. COSTAR alleges (and does not present any record evidence) that any additional copyrights are owned and were infringed. In addition to filing the ten (10) photographs, in order to support its claims COSTAR also filed three (3) Certificates of Registration from the United States Copyright Office. *See* Exhibits 1, 2, & 3 of the Motion for Summary Judgment; D.E. 69-8, 69-9, & 69-10. However, prior to the filing of its Motion for Summary Judgment, COSTAR failed to provide to counsel for K&H any of the alleged ten (10) photographs; nor did COSTAR provide any of the Certificates of Registration. Because COSTAR had the duty to provide these documents during the discovery process and failed to do so, it may not rely upon these documents to support its claims.[4] Accordingly, COSTAR's Motion for Summary Judgment should be summarily denied.

---

[3] For purposes of the summary judgment, COSTAR does not attempt to establish ownership of any additional copyrights. *See* pp12-13 of COSTAR's Motion for Summary Judgment [D.E. 69]

[4] Contemporaneously filed with this Motion is K&H's *Motion to Strike* wherein K&H seeks for this Court to strike: (1) *Declaration of Robert Lardizabal* [D.E. 69-5]; (2) Exhibits 1, 2 and 3 of COSTAR's

Moreover, even if the Court accepts the untimely provided photographs along with the Certificates of Registration as *prima facie* evidence of ownership of a valid copyright, this presumption is rebuttable. *See* H.R. Rep No. 94-1476, at 156 (1976)(reprinted in 17 U.S.C. § 410)("endowing a copyright claimant who has obtained a certificate with a rebuttable presumption of the validity of the copyright does not deprive the defendant of an infringement suit of any rights, it merely orders the burdens of proof"). COSTAR has provided absolutely no evidence that the photographs are "original works of authorship" as required by 17 U.S.C. § 102(a). While photographs can be copyrightable, "[e]lements of originality in photography may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Rogers v. Koons*, 960 F.2d 301, 307 (2nd Cir. 1992).[5]

The subject 10 photographs are simply pedestrian photographs of buildings. There is absolutely no originality in or with the photographs. Mark Klein, President of K&H, has personally taken thousands of photographs of commercial properties for sale. *See* Aff. M. Klein ¶¶33-45. Mr. Klein has testified that the commercial property pictures, such as those submitted by COSTAR, are not taken with an eye of originality or

---

Motion for Summary Judgment [D.E. 69-8, 69-9, 69-10]; and (3) "Exhibit 10" of *Declaration of Steven J. Williams* [D.E. 69-4 pp.3-13].

[5]      K&H's pled this very issue in response to COSTAR's Counterclaim:
         Defendant/Counter-Plaintiff has alleged copyright protection over photographs that are so mechanical and routine as to require no creativity whatsoever. Copyright protection of a photograph extends only to original aspects of the work such as posing of subject matter, lighting, angle, selection of film and camera, evoking a desired expression. Defendant/Counter-Plaintiffs photographs of real estate are pedestrian and lacking in any creativity. Additionally, there are so few ways of photographing such subject matter that the level of creativity involved is not sufficient to be afforded copyright protection.
K&H's Fifth Affirmative Defense [D.E. 25]. COSTAR has failed to show the absence of any material fact regarding their alleged ownership of a valid copyright on the ten subject photographs.

creativity but simply capture an accurate depiction of the property. *Id.* Moreover, Mr. Klein stated that there are very few ways that a commercial property can be photographed. *Id.* When photographing a commercial property the photographer is not concerned with posing the building or evoking a desired expression. *Id.* Originality is not the goal but simply to provide a generic tool to assist in the marketing of the property. *Id.*

COSTAR has simply assumed that the photos are copyrighted. Because K&H has presented a question of fact as to whether the photographs are original, and COSTAR has failed to present any evidence to the contrary, COSTAR's Motion for Summary Judgment must fail.

> B. *There is Insufficient Record Evidence to Establish that any Valid COSTAR Copyright was Infringed.*

Even if the Court should find that COSTAR has presented sufficient record evidence to sufficiently establish the validity of a copyright on any of the subject photographs, there is no applicable summary judgment record evidence to establish that Scott Bell infringed any of the ten photographs. The sole evidence to support COSTAR's claims that Mr. Bell accessed records associated with the subject photographs comes from the contemporaneously provided *Declaration of Robert Lardizabal*. *See* [D.E. 69-5]. As more fully detailed in K&H's contemporaneously filed *Motion to Strike*, COSTAR may not rely upon the testimony of an individual whose identity was not previously provided during the discovery process. COSTAR seeks to sandbag K&H with this newly provided evidence after the discovery period has closed. Because this Court should not entertain Mr. Lardizabla's Declaration, COSTAR fails to establish a

fundamental element necessary to prevail against any of its claims against K&H. Accordingly, COSTAR's Motion for Summary Judgment must be denied.

### III. COSTAR FAILED TO SHOW UNDISPUTED FACTS THAT K&H ENGAGED IN EITHER CONTRIBUTORY OR VICARIOUS COPYRIGHT INFRINGMENT.

A. *COSTAR Failed to Establish Undisputed Contributory Infringement.*

COSTAR argues that the "undisputed facts demonstrate that [K&H] engaged in contributory copyright infringement because it materially contributed to the infringement by providing Scott Bell with the facilities and means for the infringement with knowledge that Bell was engaged in infringing activity." *See* COSTAR's Motion for Summary Judgment at p.18. Despite the blanket assertions made by COSTAR, there is absolutely no record evidence that K&H was aware that Mr. Bell had engaged in unauthorized access to any COSTAR database. Even more removed is any record evidence that K&H was aware that Mr. Bell had accessed the ten (10) photographs that are the foundation of COSTAR's Motion. Moreover, without this knowledge, K&H cannot be said to have materially contributed to Mr. Bell's conduct by providing him a desk, internet access and a copier. COSTAR's claim for contributory copyright infringement against K&H must fail.

"Contributory copyright infringement refers to the intentional inducement, causation or material contribution to another's infringing conduct." *Buc Int'l Corp. v. International Yacht Council Ltd.*, 489 F.3d 1129, 1138 (11th Cir. 2007). The Eleventh Circuit has endorsed the test for contributory infringement articulated by the Second Circuit. *See Casella v. Morris*, 820 F.2d 362 (11th Cir. 1987). The test is whether "one who, with knowledge of the infringing activity, induces, causes or materially contributes

to the infringing conduct of another." *Id.* at 365 (*quoting Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1071).

### 1. K&H did not Know and had No Reason to Know of any Direct Copyright Infringement by Scott Bell.

While the test articulated by *Casella* to determine whether a defendant has "knowledge" is objective ("Know, or have reason to know"), the record is far from undisputed that K&H had any knowledge of any wrongdoing. *See Casella*, 820 F.2d at 365. COSTAR alleges that K&H "knew and had reason to know of the direct infringement of Scott Bell." *See* COSTAR's Motion for Summary Judgment at p.18. COSTAR relies on one statement made by Mr. Bell that K&H was aware of his access to COSTAR. COSTAR then attempts to buttress this statement by vague spreadsheets allegedly provided to Mark Klein and Steve Klein. Finally, COSTAR argues that because K&H was aware that COSTAR provided subscription based services, they couldn't possibly have not known that Mr. Bell was not entitled to obtain access to COSTAR. Nowhere does COSTAR link these alleged fountains of wrongdoing knowledge with the ten (10) subject photographs.

COSTAR's entire premise is based on the flawed assumption that Mr. Bell and K&H representatives knew that Mr. Bell's access to COSTAR was unauthorized. However, there is absolutely no record evidence to suggest that K&H was aware that Mr. Bell was not authorized to access COSTAR. In fact, Mr. Bell himself was unaware he was allegedly not authorized to access COSTAR. *See* Depo. Bell pp. 126-135. Mr. Bell testified that he believed COLDWELL had provided to him a subscription to COSTAR. *See* Depo. Bell at 124-27. He believed that it operated much like a magazine

11

subscription. Mr. Bell was not told that the subscription would expire; was not told that the subscription could only be used on COLDWELL property; and was not told that the subscription could only be used while logged on from a COLDWELL terminal. *See id.* Mr. Bell was not told anything about the length of the subscription. *See id.* Despite COSTAR's assertions, Mr. Bell does not recall receiving an e-mail, letter or telephone call in any way detailing any kind of parameters concerning his subscription to COSTAR. *See id.* Mr. Bell was never told that if he ceased being affiliated with COLDWELL his access was not authorized. *See id.* at 127-28. Moreover, Mr. Bell did not know that he was not authorized to utilize the system until he spoke with Mr. Klein after he received correspondence from COSTAR regarding Mr. Bell's access. *See* Depo. Bell 133-34; Aff. M. Klein at ¶¶27-32. Only then did he realize that COSTAR believed him to be unauthorized, and he immediately ceased all access to COSTAR. *See* Depo. Bell 133-35.

There is no record evidence that Mr. Bell was aware that he was not authorized to access the COSTAR databases. Nonetheless, COSTAR alleges that K&H was aware that Mr. Bell was not authorized and that he was accessing the databases for their benefit. Nothing could be further from the truth. *See* Aff. M. Klein at ¶¶25-26; Aff. S. Klein at ¶¶7-8.

Most pointedly, COSTAR's Motion for Summary Judgment is based upon the alleged valid copyrights held by COSTAR regarding ten (10) discrete photographs. COSTAR has not put forth any record evidence that anyone at K&H was aware that Mr. Bell accessed any of those ten (10) photographs. COSTAR cannot be permitted to attach liability for contributory copyright infringement based on vague allegations of knowledge of access to COSTAR's computer database. At a bare minimum there is a material

dispute as to what K&H knew regarding Mr. Bell's authorized or unauthorized access to the COSTAR databases in general, and specifically to the ten (10) subject photographs. Accordingly, summary judgment is not appropriate in favor of COSTAR on its contributory infringement claim.

### 2. K&H did not Materially Contribute to any Direct Copyright Infringement by Scott Bell.

COSTAR alleges that K&H materially contributed to Mr. Bell's alleged direct copyright infringement by providing him "with the means and facilities to engage in that conduct." *See* COSTAR's Motion for Summary Judgment at p.21. The "means and facilities" provided, accordingly to COSTAR, are: (1) internet access; (2) an e-mail account; and (3) a printer and copier. *See id.* However, COSTAR's own authorities do not support the conclusion they suggest. None of COSTAR's authorities provide any guidance as to the level of "means and facilities" that must be provided in order for liability to attach. Moreover, what is undisputed is that even if the "means and facilities" are provided, the proposed defendant must have actual knowledge of the direct copyright infringement. Such is not the case here.

First, COSTAR cites *Fonovisa, Inc. v. Cherry Auction, Inc.* for the proposition that a party "materially contributes" to infringement by providing the "site and facilities" for the infringing activity. *See* 76 F.3d 259. *Fonovisa* involved a swap meet or flea market that allegedly permitted copyrighted and trademarked materials to be sold to the public. At the Motion to Dismiss stage, the *Fonovisa* court found that the owner of copyrights and trademarks for musical recordings had properly pled a claim for contributory copyright infringement by alleging that the defendant had provided the site

and facilities for *known* infringing activity. The case did not analyze at all the level of "site and facilities" that must be provided.

COSTAR next cites *Perfect 10, Inc. v. Amazon.com, Inc.* for the proposition that "providing Internet facilities to access websites and engaging in infringing activity would be considered a material contribution." *See* COSTAR's Motion for Summary Judgment at p.22. COSTAR's citation is misleading.

*Perfect 10* involved suit by copyright owners against Amazon.com (an internet retailer) and Google, Inc. (an internet search engine). Despite COSTAR's citation, what the court actually held with regard to contributory copyright infringement was that a "computer system operator can be held contributorily liable if it 'has *actual* knowledge that *specific* infringing material is available using its system,' and can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works." *Perfect 10*, 508 F.3d at 1172 (*emphasis in original*) (*quoting A&M Records, Inc. v. Napster, Inc.* 239 F.3d 1004 (9th Cir. 2001) and *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 907 F. Supp. 1361 (N.D. Cal. 1995)). The material contribution is not as simple, as COSTAR argues, as providing internet access. In fact, the provider of the internet access must have *actual knowledge* that *specific infringing material* is available and takes no steps to prevent access.

The record is devoid, and in fact COSTAR has not even argued, that K&H had actual knowledge of any specific infringing material being accessed by Mr. Bell. Furthermore, COSTAR has presented no record evidence that K&H could have but did not take any simple measures to prevent any unauthorized copyright infringement.

Finally, COSTAR has failed to present any evidence to link any of the alleged means or facilities provided to Mr. Bell to the ten subject photographs.

K&H submits that providing a desk, internet access and a copier is insufficient to find that K&H materially contributed to Mr. Bell's alleged copyright infringement. This is especially true when there is no record evidence that K&H was aware of any specific copyright infringement. Accordingly, summary judgment is not appropriate in favor of COSTAR on its contributory infringement claim

>    B. *COSTAR Failed to Establish Undisputed Vicarious Copyright Infringement.*

COSTAR finally alleges that K&H vicariously infringed upon COSTAR's copyrights by "having the right and ability to control Bell's infringing conduct" and by receiving a direct financial benefit (i.e. avoiding to pay access to COSTAR). *See* COSTAR's Motion for Summary Judgment at p.23. COSTAR's claims have no merit.

COSTAR argues that because K&H had the right to sever its relationship with Mr. Bell if he violated K&H's policies and because Mr. Klein stated he "oversaw" Mr. Bell, that they had the ability to control Mr. Bell. COSTAR's argument borders on the absurd. While COSTAR attempted to establish an employment relationship, the facts simply do not bear out COSTAR's claims. In support of its position, COSTAR cites to *M.L.E Music Sony/ATV Tunes, LLC v. Julie Ann's, Inc.*, 2008 WL 2358979 (M.D. Fla. June 9, 2008). *Julie Ann's* involved suit by ASCAP, a performing rights licensing organization that sued a karaoke bar in Tampa, Florida for permitting public karaoke performances of copyrighted musical compositions. *See id.* at *1. Judge Kovachevich ruled that because the bar benefited financially from the performances and "admitted they

owned, controlled, managed and operated" the bar, they were vicariously liable. *Id.* at *3. The facts of this case could not be further from the facts presented in *Julie Ann's*.

K&H did not control Mr. Bell's work with the company as he was an independent contractor. Upon his employment with K&H Mr. Bell signed an Independent Contractor Agreement between Broker and Salesman. *See* Aff. M. Klein at ¶¶9-10. Paragraph 10 of the agreement provided in full:

> It is intended that the salesman shall be an independent contractor and not an employee for federal tax purposes or any other purposes, and shall, at all times during the term of this agreement, perform his duties and responsibilities without any supervision or control by the broker.

*See id.* at "Exh. 1." Not only was there an agreement in place, but Mr. Bell operated as an Independent Contractor in practice. K&H did not control how Mr. Bell performed his duties. *See id.* at ¶¶9-21; Depo. Bell at p140. Other than periodic sales meetings, Mr. Bell was not required to be in the office at any given day or time. *See* Aff. M. Klein at ¶¶9-21; Dep. Bell at p140-41. K&H did not control Mr. Bell's daily activities. *See* Aff. M. Klein at ¶¶9-21; Dep. Bell at p140-41. Mr. Bell was not paid a salary but was paid a commission on any sales transactions he procured that closed. *See* Aff. M. Klein at ¶¶9-21. There is simply no basis whatsoever for COSTAR to prevail on their claim that K&H is vicariously liable because K&H controlled Mr. Bell's activities.[6]

---

[6]    COSTAR's argument that K&H received a direct financial benefit is equally absurd. Mr. Bell himself testified that he knew of no possible way that K&H benefited financially from his access to COSTAR. *See* Depo. Bell 152-53. COSTAR cannot be permitted to articulate a direct financial benefit because it was not required to purchase a license. Mr. M. Klein and Mr. S. Klein have both provided sworn testimony that COSTAR has attempted for years to convince them to purchase licenses to the COSTAR databases. However, both principles of K&H have stated that they do not want and have never found value with the system. *See* Aff. M. Klein at ¶¶23-25; Aff. S. Klein at ¶¶4-6.

## IV. CONCLUSION

COSTAR has failed at every level to establish that it is entitled to Summary Judgment. First, COSTAR has failed to even establish that it is the owner of a valid copyright that is the subject of this action. Even if the Court finds that COSTAR met its burden of showing ownership of a valid copyright, there is insufficient record evidence to establish a direct infringement of said copyright by Scott Bell. Moreover, COSTAR has failed to show that the undisputed facts show that K&H engaged in either contributory or vicarious copyright infringement. Accordingly, K&H respectfully requests this Court deny COSTAR's pending Motion for Summary Judgment and grant any further relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 16th day of October, 2009.

_/s/ Jeffrey W. Gibson_____
J. PAUL RAYMOND, ESQ.
Florida Bar No. 0169268
jpr@macfar.com
JEFFREY W. GIBSON, ESQ.
Florida Bar No.: 0568074
jg@macfar.com
Macfarlane Ferguson & McMullen
P.O. Box 1669
Clearwater, FL 33757
(727) 441-8966 – Phone
(727) 442-8470 – Facsimile
Attorneys for Defendant
Klein & Heuchan, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 16, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which send a notice of electronic filing to the following:

William J. Sauers, Esq.
Shari Ross Lahlou, Esq.
Sanja Sarich Kerksiek, Esq.
Crowell & Moring, LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004

William Cooper Guerrant, Jr.
Hill Ward Henderson
101 E. Kennedy Blvd, Suite 3700
P.O. Box 2231
Tampa, FL 33601

*Counsel for Defendants-Counter-Plaintiffs CoStar Realty Information, Inc. and CoStar Group, Inc.*

Nicholas Louis Ottaviano, Esq.
Florin Roebig, PA
777 Alderman Rd.
Palm Harbor, FL 34683

Randall J. Love, Esq.
Randall J. Love & Associates, P.A.
5647 Gulf Dr.
New Port Richey, FL 34652-4019

*Counsel for Counter-Defendant Scott Bell*

    /s/ Jeffrey W. Gibson
JEFFREY W. GIBSON, ESQ.
Florida Bar No.: 0568074

KLEIN & HEUCHAN, INC.

     Plaintiff,

vs.                         Civil No.: 8:08-cv-01227-JSM-MSS

COSTAR REALTY INFORMATION, INC.,
and COSTAR GROUP, INC.,

     Defendants.

_____/

## AFFIDAVIT OF MARK S. KLEIN

STATE OF FLORIDA
COUNTY OF PINELLAS

     BEFORE ME, the undersigned authority personally appears MARK S. KLEIN, who upon being sworn deposes and says:

     1.     This affidavit is made upon my personal knowledge and is done in opposition to Defendant/Counter-Plaintiff's Motion for Summary Judgment.

     2.     I am a real estate broker licensed in the State of Florida. I am also a Certified Commercial Investment Member (CCIM).

     3.     I am one of the founding members of Klein & Heuchan, Inc., (hereinafter "K&H") and am currently its sole shareholder.

     4.     I am the President and CEO of K&H and have been since 1983. I have been a broker in the commercial real estate business in Clearwater, Florida since 1974.

     5.     K&H is a real estate company providing brokerage services, property management services and development services to clients in the Tampa Bay area.

     6.     K&H maintains two offices in Clearwater, Pinellas County, Florida.



7.   In addition to myself, K&H has approximately 18 other Independent Service Professions that work out of K&H's two offices.

8.   Mr. Scott Bell began working as an independent Contractor Sales Associate with K&H in December of 2006.

9.   Upon his employment with K&H Mr. Bell signed an Independent Contractor Agreement between Broker and Salesman. A copy of the Agreement is attached as "Exhibit 1."

10.   Paragraph 10 of the agreement provided in full:

It is intended that the salesman shall be an independent contractor and not an employee for federal tax purposes or any other purposes, and shall, at all times during the term of this agreement, perform his duties and responsibilities without any supervision or control by the broker.

11.   Mr. Bell operated as an Independent Contractor.

12.   K&H did not control how Mr. Bell performed his duties.

13.   Other than periodic sales meetings, Mr. Bell was not required to be in the office at any given day or time.

14.   K&H did not control Mr. Bell's daily activities.

15.   Mr. Bell was paid a commission on any sales transactions he procured that closed.

16.   Mr. Bell was not paid a salary.

17.   K&H provided Mr. Bell a work space comprising a desk in a cubical area.

18.   Additionally, all of the associates of K&H had access to a copier machine.

19.   Mr. Bell was not provided a computer. Mr. Bell utilized his own laptop computer and his own printer.

20.     Mr. Bell was provided internet access.  This access did not require logging into any server of K&H.  Mr. Bell simply had to plug an internet cable into his computer and the internet was then available.

21.     Mr. Steven Klein and myself provided feedback and sales management oversight over Mr. Bell.

22.     For many years I have been approached by salespersons from COSTAR asking us to try and purchase subscriptions to COSTAR's databases.

23.     I have never believed that the information provided by COSTAR was helpful or useful in my business and have never sought to obtain a subscription or use the system.

24.     I recall that at some point in time because of my CCIM distinction, I was offered a trial subscription to COSTAR.  I attempted to log-on but found it too cumbersome. Additionally, I was previously provided a three (3) month trial period from COSTAR salesman Tom Bible.  I never logged in or even attempted to utilize the site at that time.  Other than the one attempt to utilize the trial subscription given because of my CCIM distinction, I have never utilized the COSTAR systems.

25.     I never asked Mr. Bell to provide me with information from the COSTAR databases.

26.     Moreover, I do not recall ever receiving any COSTAR-related materials from Mr. Bell.

27.     In April of 2008 I received letters from Curtis Ricketts from COSTAR.  A copy of the letters are attached as "Exhibit 2."  These letters accused K&H of unauthorized access to COSTAR's databases.

28.   Upon receipt of the letter I immediately contacted the number provided and spoke with a Steve Williams. He asked if Scott Bell was working with K&H. I told him that he was. He stated that Mr. Bell was accessing COSTAR illegally. Mr. Williams was extremely threatening and I felt as though I was being extorted. Mr. Williams told me that I owed COSTAR $69,000.00 but that he could make a deal if K&H would purchase a two-member license for $10,000.00.

29.   The following day another individual called me. I do not know if it was Mr. Rickets or someone else. I was then told that Mr. Williams was unauthorized to make the offer the day before. I told this individual: "I don't care. You're not going to use extortion and hold me hostage to buy a license from COSTAR."

30.   I then spoke with Mr. Bell and Mr. Steven Klein.

31.   Mr. Bell told us that he was given a subscription to COSTAR when he was at his prior employer, Coldwell Banker Commercial NRT, and that he still had access to COSTAR. He told us that he believed he was still authorized to access the system since they had not turned his access off.

32.   In May of 2008 I received a facsimile from COSTAR. The facsimile included a fax cover page and a draft *Complaint* purportedly ready to be filed in the United States District Court for the District of Maryland. A copy of the facsimile is attached as "Exhibit 3." The message on the facsimile cover stated:

> As our discussions concerning Klein & Heuchan's unauthorized use of CoStar's services have been unable to resolve our dispute, I am forwarding to you a draft of a complaint that CoStar intends to file against Klein & Heuchan unless we can come to a resolution by the close of business on Tuesday June 3rd. Unfortunately, once our legal department has authorized the filing of this complaint, we can no longer offer a resolution on the terms we have discussed as a result of the legal costs CoStar will have incurred.

We remain open to discussing this dispute with you.

33. I have reviewed Defendant/Counter-Plaintiff's Counterclaim and Motion for Summary Judgment and supporting documentation.

34. I have reviewed the affirmative defenses asserted by KLEIN & HEUCHAN.

35. I have also reviewed carefully the ten (10) photographs attached as "Exhibit H" to the *Declaration of Steven J. Williams* filed in support of COSTAR's Motion for Summary Judgment.

36. I have over thirty (30) years of experience in the sales and marketing of commercial properties which would include photographing of commercial property and as such have reviewed thousands of photographs of commercial property.

37. Over the course of my career, I have personally taken thousands of photographs of commercial property for sale.

38. Photographs of commercial property are not taken with an eye toward originality or creativity and the sole purpose and concern is to capture a picture of reasonable quality that accurately depicts the real property sufficient enough to supplement a written description of the property.

39. My experience has shown me that there are very few ways to photograph commercial property and those ways are universally adopted by real estate firms when photographing commercial property it is done in a substantially similar way.

40. There is no requirement for formal training or other skills, professional, artistic or otherwise, when it comes to photographing commercial property.

41. KLEIN & HEUCHAN does not use special equipment or cameras when photographing commercial property.

42. I have no formal training or exemplary skills with respect to photographing commercial photographs.

43. When photographing commercial property I am not concerned with posing the subject buildings or evoking a desired expression. I merely photograph for the purpose of capturing a reasonable image of the commercial property suitable to convey to potential buyers the general appearance of the property.

44. The pictures are never taken with any expression of originality.

45. Pictures of commercial property are merely a generic tool used to assist with the marketing of commercial property and have a very limited time of usefulness.

Further Affiant Sayeth Not.

_____
MARK S. KLEIN

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me the <u>16th</u> day of October, 2009, by _Mark Klein_, who is <u>personally known</u> to me or who has produced _____ as identification and who did take an oath.


CAROL DUNCAN
Commission DD 741102
Expires January 10, 2012
Bonded Thru Troy Fain Insurance 800-385-7019

_____
Notary Public
Print name:
My commission expires:

# INDEPENDENT CONTRACTOR AGREEMENT

## Between Broker and Salesman

THIS AGREEMENT by and between _Klein & Heuchan, Inc. Realtors_, hereafter referred to as "broker," and _C. Scott Bell_____, hereafter referred to as "salesman," for and in consideration of their mutual promises and for their mutual benefits, WITNESSETH:

THAT, WHEREAS, the broker is duly registered as a real estate broker, and is duly qualified to, and does, procure the listing of real estate for sale, lease or rental, and prospective purchasers, lessees, and renters therefor, and has and enjoys the good will of, and a reputation for dealing with, the public, and also has and maintains an office, properly equipped and staffed, suitable to serving the public as a real estate broker, and

WHEREAS, the salesman is a duly registered real estate salesman and properly qualified to deal with the public as such, and

WHEREAS, it is deemed to be to the mutual advantage of the broker and salesman to form the association hereinafter agreed to, THEREFORE

1. The broker agrees to make available to the salesman all current listings of the office, except such as the broker may find expedient to place exclusively in the temporary possession of some other salesman, and agrees to assist the salesman in his work by advice, instruction, and full cooperation in every way possible.

2. The broker agrees that the salesman may share with other salesmen such facilities as the office may be able to furnish, in connection with the subject matter of this contract.

3. The salesman agrees to sell or rent real estate listed with the broker and to solicit additional listings for the broker.

4. The salesman agrees to conduct his business in a reputable manner and in conformance with all laws, rules, regulations and codes of ethics that are binding upon or applicable to real estate brokers and salesmen.

5. The salesman agrees to maintain at his own cost automobile public liability and property damage insurance in the minimum amount of $ _100,000; 300,000_

6. The fees usually and customarily charged by the broker shall be charged for any service performed hereunder, unless broker shall advise the salesman of any special contract relating to any particular transaction which he undertakes to handle. When the salesman shall perform any service hereunder, whereby a fee is earned, said fee shall, when collected, be divided between the broker and salesman, in which division the salesman shall receive _See schedule_ cent, and the broker shall receive the balance. In the event that two or more salesmen participate in such a service, or claim to have done so, the amount of the fee over that accruing to the broker shall be divided between the participating salesmen according to agreement between them, or by arbitration. In no case shall the broker be liable to the salesman for any fee unless the same shall have been collected from the party for whom the service was performed.

7. The broker shall not be liable to the salesman for any expenses incurred by him, or for any of his acts, nor shall the salesman be liable to the broker for office help or expense, and the salesman shall have no authority to bind the broker by any promise or representation, unless specifically authorized in a particular transaction; but expense for attorney's fees, costs, revenue stamps, abstracts and the like which must, by reason of some necessity, be paid from the fee, or is incurred in the collection of, or the attempt to collect, the fee, shall be paid by the parties in the same proportion as provided for herein in the division of the fees. Suits for fees shall, agreeable to the law, be maintained only in the name of the broker, and the salesman shall be construed to be a sub-agent only with the respect to the clients and customers for whom services shall be performed, and shall otherwise be deemed to be an independent contractor and not a servant, employee, joint adventurer or partner of the broker.

8. This agreement shall be for succeeding one-year terms beginning with the date of execution; provided, however, either party may terminate this agreement upon ____30___ days' written notice given to the other, in which case the rights of the parties to any fee which accrued prior to termination shall not be divested.

9. The salesman shall not, after the termination of this contract, use to his own advantage, or to the advantage of any other person or corporation, any information gained from the files or business of the broker, relating to property for sale, lease or rental.

10. It is intended that the salesman shall be an independent contractor and not an employee for federal tax purposes or any other purposes, and shall, at all times during the term of this agreement, perform his duties and responsibilities without any supervision or control by the broker.

IN WITNESS WHEREOF the parties hereto have signed or caused to be signed, these presents, this __13th__ day of _December_____, 19 _2006_

Witnesses:

_____          _____
                                              Broker

_____          _____
                                              Salesman

K&H0033

EXHIBIT
1
tabbies



ORIGIN ID: GAIA (301) 215-8500
LEGAL DEPT.
COSTAR GROUP, INC.
2 BETHESDA METRO CENTER
10TH FLOOR
BETHESDA, MD 20814 6319
UNITED STATES US

TO MARK KLEIN
KLEIN & HEUCHAN, INC.
1744 BELCHER RD SUITE 200

CLEARWATER, FL 33765

Dept: LEGAL

Ship Date: 16APR08
ActWgt: 2 LB
System: 07439804/CAFE2355
Account: S 116761696

(727) 441-1951

FedEx
Express

Delivery Address
Barcode

BILL SENDER

THU
Deliver By:
17APR08

TPA     A2

XH CLWA

STANDARD OVERNIGHT           Form
                              0201

TRK# 9375 0942 9209   -FL-US

33765

K&H0039

EXHIBIT
2



**GROUP**
*Real Estate Information*

April 16, 2008

CoStar Group, Inc.

2 Bethesda Metro Center
10th Floor
Bethesda, MD 20814-5388

301.215.8300 *tel*
800.204.5960 *toll free*
301.718.2444 *fax*
800.613.1301 *toll free fax*

www.costar.com

NASDAQ: CSGP

<u>Via Federal Express</u>

Mark Klein
Klein & Heuchan, Inc.
1744 Belcher Rd, Suite 200
Clearwater, FL 33765

    Re:    <u>Your use of CoStar database services</u>

Dear Mr. Klein:

      I am writing to you on behalf of CoStar Realty Information, Inc. ("CoStar").

      CoStar's services and proprietary databases are protected under the intellectual property laws of the United States and are made available on a subscription basis by way of a secure access-restricted website, pursuant to a written agreement between CoStar and its licensed subscribers. As you are well aware, Klein & Heuchan, Inc., which is located at 1744 Belcher Rd, Suite 200 Clearwater, FL 33765, is <u>not</u> a licensed subscriber to any of CoStar's subscription-only commercial real estate information services. Despite this fact, we now have indisputable electronic evidence that Klein & Heuchan, Inc. has been accessing and using CoStar's services without authorization from CoStar and in violation of CoStar's rights.

      Specifically, CoStar's investigation of this matter (including a review of IP addresses and other information that we track and maintain) indicates that from January 17, 2007 to the present, your employee or employees have repeatedly accessed and used the proprietary, subscription-only CoStar PropertyWeb and CompsWeb services for your Company's commercial benefit without CoStar's authorization—*encompassing 133 logins, over 45 hours online, and over 12,796 page hits.* In order to do this, your employees or others working at your company improperly and unlawfully logged in to CoStar's service using the pass code information assigned for use by Coldwell Banker Commercial NRT employees only. In the process of logging in, your employees and/or others agreed to and violated the online terms of use posted at www.costar.com, and then used, exploited and/or copied CoStar's valuable proprietary information, photographs, and software created by CoStar's team of research professionals and product developers.

      Such unauthorized use constitutes a willful violation of CoStar's intellectual property and contract rights. Specifically, Klein & Heuchan, Inc.'s unauthorized access and use of CoStar's service may give rise to various claims and causes of action under Federal and state law, including without limitation copyright infringement--with statutory

*Steve William*
*240- 497- 5991*

*718*
*10,905*

K&H0040



CoStar Group, Inc.

2 Bethesda Metro Center

10th Floor

Bethesda, MD 20814-5388

301.215.8300   *tel*

800.204.5960   *toll free*

301.718.2444   *fax*

800.613.1301   *toll free fax*

www.costar.com

NASDAQ: CSGP

damages of up to $150,000 per work infringed, breach of contract, fraud and civil and criminal violation of the Computer Fraud and Abuse Act.

For your information, CoStar takes the protection of its intellectual property very seriously. Over the years, CoStar has aggressively investigated and cooperated in the prosecution of individuals and companies that have accessed its proprietary services without authorization or otherwise infringed its copyrights.

CoStar Group just obtained a $1 Million judgment against an Illinois firm for illegally using CoStar's commercial real estate information in a copyright case filed in the United States District Court of Maryland. In addition to the $1 Million judgment, the company was forced to cease all business operations, and individuals (principals as well as employees) were held liable for their actions relating to copyright violations.

In another recent case, <u>CoStar received a judgment of $100,000 for the sharing of a single password</u> in connection with a federal court lawsuit filed against a former client and a third party that had been sharing CoStar login information. Using fraud detection technology, CoStar was easily able to track and prove in a court of law that a pass code assigned to a CoStar subscriber was illegally and repeatedly used from the offices and home of a non-CoStar subscriber to access CoStar's information services.

CoStar also recently launched a reward program for anyone who reports suspected piracy of $10,000 or 25% of any monetary payment resulting from prosecution, which ever is greater-in cases that ultimately lead to prosecution of violators. As you can see, CoStar will not tolerate theft of its services and proprietary databases and will pursue those who violate its rights to the full extent of the law.

In sum, CoStar is entitled to be paid for the work that it performs and the data it provides. Klein & Heuchan, Inc. is not entitled to a free ride on the backs of CoStar and it's other paying clients. Although CoStar is fully prepared to exercise its legal rights against your company for its violations of CoStar's rights, CoStar is willing to resolve this matter now amicably if you cure your past violations by paying for past unauthorized use and entering a license to cover future use of CoStar services and data.

Accordingly, attached for your review and signature is a proposed license agreement, consisting of a Subscription Form, User List, and 2-page Terms & Conditions document. Also enclosed is an invoice for services previously rendered.

K&H0041

Please be aware that this offer already reflects a significant compromise on CoStar's part (given the significant amount of usage and copyright infringements). We expect to receive the invoiced amount and signed agreements back from you within two business days after receipt of this letter. If not, please be advised that CoStar intends to



CoStar Group, Inc.

2 Bethesda Metro Center

10th Floor

Bethesda, MD 20814-5388

301.215.8300    *tel*

800.204.5960    *toll free*

301.718.2444    *fax*

800.613.1301    *toll free fax*

www.costar.com

NASDAQ: CSGP

pursue litigation against Klein & Heuchan, Inc. and CoStar will seek the maximum amount of damages available under the law, the reimbursement of all its attorneys' fees, as well as the possible forwarding of the case to the FBI and the US Department of Justice for possible criminal investigation and prosecution.

I can be reached by telephone, at 888-414-2778, and by facsimile, at (301) 664-9176. In the meantime, please be advised that this letter shall also serve as a Hold Notice, requiring that you not destroy or remove any and all electronic or print records or documents possibly relating to these claims, and notifying you that any attempt to do so constitutes spoliation of evidence and is unlawful. This letter shall not be construed as any limitation or waiver of any of CoStar's rights, claims, or remedies, each of which such rights, claims and remedies are expressly reserved.

Sincerely,

Curtis Ricketts
Director-Fraud, Theft & Litigation Team

Enclosures 3

K&H0042



CoStar Group, Inc.

2 Bethesda Metro Center
10th Floor
Bethesda, MD 20814-5388

301.215.8300  tel
800.204.5960  toll free
301.718.2444  fax
800.613.1301  toll free fax

www.costar.com
NASDAQ: CSGP

April 16, 2008

Mark Klein
Klein & Heuchan, Inc.
1744 Belcher Rd, Suite 200
Clearwater, FL 33765

     **Re:**    **Invoice For Past Use**

Dear Mr. Klein:

     By counter-signing below, you agree to pay to CoStar the sum of $69,887.00, which, upon complete payment, represents a paid-in-full past license for Klein & Heuchan, Inc. accessing and using the CoStar PropertyWeb and CompsWeb database services from January 17, 2007 through April 10, 2008; provided, that, this paid-in-full past license: (a) solely covers access and use by Klein & Heuchan, Inc. that would have complied with each of the terms and conditions of the standard CoStar license agreement had Klein & Heuchan, Inc. been a licensed subscriber at the time of the usage; and (b) does not cover or release Klein & Heuchan, Inc., or anyone else from (i) any reselling or making available to the public of any portion of any CoStar database service, (ii) use of any portion of any CoStar database service to create or maintain directly or indirectly any database or other product directly or indirectly competitive with any portion of any CoStar database service, or (iii) any provision, disclosure or transmission of any portion of any CoStar database service to a direct or indirect competitor of CoStar, or any access or use of any CoStar database service by any direct or indirect competitor of CoStar.

     Please direct checks or money orders, made payable to CoStar Realty Information, Inc., to my attention at CoStar Realty Information, Inc., 2 Bethesda Metro Center, 10th Floor, Bethesda, MD 20814.

             Sincerely,

             Curtis Ricketts
             Director-Fraud, Theft & Litigation Team

K&H0043



CoStar Group, Inc.

2 Bethesda Metro Center
10th Floor
Bethesda, MD 20814-5388

301.215.8300 *tel*
800.204.5960 *toll free*
301.718.2444 *fax*
800.613.1301 *toll free fax*

www.costar.com

NASDAQ: CSGP

I Agree to This:

_____

Mark Klein

Date:

_____

# CoStar® License Agreement Subscription Form



**GROUP**
Real Estate Information

| | |
|---|---|
| AE: Steve Williams | |
| Routing Code: | |
| Business Code: Brokerage | |

| | | | |
|---|---|---|---|
| Licensee: Klein & Heuchan, Inc. | Location ID: 1486128 | | |
| Address: 1744 Belcher Rd, Suite 200 | City: Clearwater | St: FL | Zip: 33765 |
| Fax: 727) 449-1724 | Telephone: 727) 441-1951 | Ext: | |
| Bill-To Contact: MARK KLEIN | | | |
| Email for Bill-to-Contact: markklein@kleinandheuchan.com | | | |

| | | |
|---|---|---|
| Total No. Sites: 1 | ☐ Monthly | ☐ Check |
| | ☐ Quarterly | |
| Total No. Authorized Users (All Sites): 1 | ☐ Yearly | ☐ Automatic Withdrawal |

| | | |
|---|---|---|
| Two Year Initial Term | From (MM/YY): (COMPS subscribers) | Total Number of Key Tokens: |

| Site # | Market | Product Description | Monthly License Fees (Before Tax) |
|---|---|---|---|
| 1 | Tampa | CoStar Property Professional | $4,111.00 |
| | Tampa | CoStar COMPS Professional - Comm/Ind/Apt/Res Land | |
| | | | |
| | | | |
| | | | |

| | |
|---|---|
| **Total Monthly License Fees:** | **$4,111.00** |
| **One Time Implementation Fee:** | |
| **One Time Key Token Fee:** | |

**Notes:** $4,111.00 is for both CoStar Property Professional and CoStar COMPS Professional for Tampa Market for 17 users at Klein & Heuchan, Inc.

This Subscription Form, including the Terms and Conditions, the Terms of Use, any addenda and any exhibits attached hereto (collectively, the "Agreement"), between the above-named Licensee and CoStar Realty Information, Inc. ("CoStar"), establishes the terms and conditions under which CoStar will license the products set forth in this Agreement. Attached to this Agreement are the Terms and Conditions that are an integral part of the Agreement being formed hereby. Terms used on this Subscription Form and not otherwise defined shall have the meanings set forth on the Terms and Conditions. In addition, this Agreement incorporates the Terms of Use (the "Terms of Use") available online at www.costar.com. By using the Licensed Product, Licensee agrees to comply with the Terms of Use and to regularly review such terms for updates and changes. To the extent a conflict exists, the Subscription Form and the Terms and Conditions shall govern over the Terms of Use.

In the event that Licensee does not execute this Agreement by the following date ____, the terms of this Agreement shall become null and void, provided, that if Licensee executes this Agreement after such date and CoStar countersigns this Agreement, then this Agreement shall be valid and binding on the parties. The person executing this Agreement on behalf of Licensee represents and warrants that he or she has been authorized to do so and that all necessary actions required for the execution have been taken. CoStar hereby provides notice that only an authorized officer of CoStar can execute this Agreement. The parties hereby acknowledge that this Agreement may be executed and delivered by facsimile and such facsimile shall constitute a legal and binding agreement on the parties.

**CoStar Realty Information, Inc.**

By: _____

Name: _____

Title: _____

Date: _____

Address: 2 Bethesda Metro Center

Address: Bethesda, MD 20814

**Licensee**                    K&H0045

Signature: _____

Print Name: _____

Title: _____ Date: _____

Address: _____

Address: _____

Fax #: _____

Last Revised: May 31, 2006

# CoStar® License Agreement



**GROUP**
Real Estate Information

| | | | |
|---|---|---|---|
| Site #: | 1 | Total Number of Authorized Users at Site: 17 | Loc ID: 129631 |

| | |
|---|---|
| Company Name: | Klein & Heuchan, Inc. |
| Primary Contact & User #1: | Mark Klein |
| Street Address: | 1744 Belcher Rd, Suite 200 |
| City: | Clearwater |

State: FL    Zip: 33765

| Phone #: | (727) 441-1951 | Fax #: 727) 449-1724 | Key Token Needed? ☐ Yes    ☐ Existing |
|---|---|---|---|
| E-Mail Address: | markklein@kleinandheuchan.com | | |

---

**User #2**
☐ Existing  ☒ Add  ☐ Delete

| Contact: | Aaron Fisch | Title: |
|---|---|---|
| Phone: | (727) 441-1951    Ext: | Fax |
| E-mail: | aaronfisch@kleinandheuchan.com | |

Key Token Needed? ☐ Yes    ☐ Existing

**User #3**
☐ Existing  ☒ Add  ☐ Delete

| Contact: | Bud Lytle | Title: |
|---|---|---|
| Phone: | (727) 441-1951    Ext: | Fax: |
| E-mail: | budlytle@kleinandheuchan.com | |

Key Token Needed? ☐ Yes    ☐ Existing

**User #4**
☐ Existing  ☒ Add  ☐ Delete

| Contact: | Joseph Santolucito | Title: |
|---|---|---|
| Phone: | (727) 441-1951    Ext: | Fax: |
| E-mail: | josephsantolucito@kleinandheuchan.c | |

Key Token Needed? ☐ Yes    ☐ Existing

**User #5**
☐ Existing  ☒ Add  ☐ Delete

| Contact: | Larry Gilbert | Title: |
|---|---|---|
| Phone: | (727) 441-1951    Ext: | Fax: |
| E-mail: | larrygilbert@kleinandheuchan.com | |

Key Token Needed? ☐ Yes    ☐ Existing

**User #6**
☐ Existing  ☒ Add  ☐ Delete

| Contact: | Marty Slavney | Title: |
|---|---|---|
| Phone: | (727) 441-1951    Ext: | Fax: |
| E-mail: | martyslavney@kleinandheuchan.com | |

Key Token Needed? ☐ Yes    ☐ Existing

**User #7**
☐ Existing  ☒ Add  ☐ Delete

| Contact: | Pat Booth | Title: |
|---|---|---|
| Phone: | (727) 441-1951    Ext: | Fax: |
| E-mail: | patbooth@kleinandheuchan.com | |

Key Token Needed? ☐ Yes    ☐ Existing

**User #8**
☐ Existing  ☒ Add  ☐ Delete

| Contact: | Stan Newmark | Title: |
|---|---|---|
| Phone: | (727) 441-1951    Ext: | Fax: |
| E-mail: | stannewmark@kleinandheuchan.com | |

Key Token Needed? ☐ Yes    ☐ Existing

**User #9**
☐ Existing  ☒ Add  ☐ Delete

| Contact: | Steven Klein | Title: |
|---|---|---|
| Phone: | (727) 441-1951    Ext: | Fax: |
| E-mail: | stevenklein@kleinandheuchan.com | |

Key Token Needed? ☐ Yes    ☐ Existing

K&H0046

# CoStar® License Agreement



**GROUP**
**Real Estate Information**

| | | | |
|---|---|---|---|
| Site #: | 1 | Total Number of Authorized Users at Site:  17 | Loc ID: 129631 |

| | |
|---|---|
| Company Name: | Klein & Heuchan, Inc. |
| Primary Contact & User #1: | |
| Street Address: | |

| | | |
|---|---|---|
| City: | State: | Zip: |
| Phone #: | Fax #: | Key Token Needed? ☐ Yes   ☐ Existing |
| E-Mail Address: | | |

| User # 10 | ☐ Existing  ☒ Add  ☐ Delete | Contact:  Linda Gardiner | Title: |
|---|---|---|---|
| | | Phone:  (727) 441-1951    Ext: | Fax |
| | | E-mail:  lindagardiner@kleinandheuchan.com | |
| | | Key Token Needed? ☐ Yes    ☐ Existing | |

| User # 11 | ☐ Existing  ☒ Add  ☐ Delete | Contact:  Thomas Duncan | Title: |
|---|---|---|---|
| | | Phone:  (727) 441-1951    Ext: | Fax: |
| | | E-mail:  tduncan@kleinandheuchan.com | |
| | | Key Token Needed? ☐ Yes    ☐ Existing | |

| User # 12 | ☐ Existing  ☒ Add  ☐ Delete | Contact:  Laura Martins | Title: |
|---|---|---|---|
| | | Phone:  (727) 441-1951    Ext: | Fax: |
| | | E-mail:  pincome@tampabay.rr.com | |
| | | Key Token Needed? ☐ Yes    ☐ Existing | |

| User # 13 | ☐ Existing  ☒ Add  ☐ Delete | Contact:  Chris Howell | Title: |
|---|---|---|---|
| | | Phone:  (727) 441-1951    Ext: | Fax: |
| | | E-mail:  chrishowell@ccim.net | |
| | | Key Token Needed? ☐ Yes    ☐ Existing | |

| User # 14 | ☐ Existing  ☒ Add  ☐ Delete | Contact:  Sherri Strazz | Title: |
|---|---|---|---|
| | | Phone:  (727) 441-1951    Ext: | Fax: |
| | | E-mail:  strazz@kleinandheuchan.com | |
| | | Key Token Needed? ☐ Yes    ☐ Existing | |

| User # 15 | ☐ Existing  ☒ Add  ☐ Delete | Contact:  Arthur Zitis | Title: |
|---|---|---|---|
| | | Phone:  (727) 441-1951    Ext: | Fax: |
| | | E-mail:  arthurzitis@kleinandheuchan.com | |
| | | Key Token Needed? ☐ Yes    ☐ Existing | |

| User # 16 | ☐ Existing  ☒ Add  ☐ Delete | Contact:  Scott Bell | Title: |
|---|---|---|---|
| | | Phone:  (727) 441-1951    Ext: | Fax: |
| | | E-mail:  scottbell@kleinandheuchan.com | |
| | | Key Token Needed? ☐ Yes    ☐ Existing | |

| User # 17 | ☐ Existing  ☒ Add  ☐ Delete | Contact:  Judy Healey | Title: |
|---|---|---|---|
| | | Phone:  (727) 441-1951    Ext: | Fax: |
| | | E-mail:  jhealey@kleinandheuchan.com | |
| | | Key Token Needed? ☐ Yes    ☐ Existing | |

K&H0047

# CoStar® License Agreement
Additional Schedule of Services


**GROUP**
Real Estate Information

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | K&H 0048 |
| | | | |
| | | | |
| | | | |
| | | Sub-Total Monthly Fee (To be Transferred to Page 1): | $0.00 |

# CoStar® Terms and Conditions

ense. (a) This Agreement between CoStar and Licensee concerns one or more electronic databases developed and maintained by CoStar each consisting of (1) a proprietary ase (the "Database") of commercial real estate information, including but not limited to, the information, text, photographic and other images and data contained therein ctively, the "Information") and the proprietary organization and structures for categorizing, sorting and displaying such Information, and (2) related software (the "Software"). Those ns of the Software and Database that are licensed hereunder, including any updates or modifications provided thereto, and any information derived from the use of the Database, ding as a result of the verification of any portion of the Information by Licensee, are collectively referred to herein as the "Licensed Product." (b) During the term of this Agreement, e hereby grants to Licensee a nonexclusive, nontransferable license to use only those portions of the Licensed Product that are expressly identified on the Schedule of Services e Subscription Form, subject to and in accordance with the terms and conditions of this Agreement. (c) The Licensed Product may be used by no more than the number of users rth on the Subscription Form, and except as set forth below, only at the site(s) specifically identified herein. All of such users (the "Authorized Users") must be individuals (1) oyed by Licensee or an Independent Contractor of Licensee at a site identified on the Subscription Form and (2) included on CoStar's list of Authorized Sites & Users for the sed Product. Licensee understands that each brokerage, research, appraiser, sales or other similar personnel at each licensed site must be an Authorized User and agrees to y CoStar if the number of such individuals at a site exceeds the number of Authorized Users set forth in this Agreement. An "Independent Contractor" is defined as an individual on working solely for Licensee and not for another company with real estate information needs and performing substantially the same services for Licensee as an employee of nsee. (d) Licensee will ensure that access to and use of the Licensed Product, and the user names, passwords and any Key Tokens (collectively, the "Passcodes") used to access icensed Product are available only to Authorized Users, and will not allow anyone other than an Authorized User access to the Licensed Product or Passcodes for any reason.

se. (a) Subject to the prohibitions set forth below, during the term of this Agreement, Licensee may use the Licensed Product for the following purposes in the ordinary course of its ness: (1) Licensee's internal research purposes; (2) providing information regarding particular properties and market trends to its clients and prospective clients; (3) to market erties; (4) supporting its valuation, appraisal or counseling regarding a specific property; and (5) creating periodic general market research reports for in-house use or for clients' or spective clients' use, provided that such reports do not contain building-specific or tenant-specific Information and are not commercially or generally distributed. Subject to the visions set forth below, Licensee may print Information or copy Information into word processing, spreadsheet and presentation programs (or other software programs with the ress written consent of CoStar), so long as the level of Information being printed or copied is reasonably tailored for Licensee's purposes, insubstantial and used in compliance with Section. (b) Except as set forth in Section 2(a), Licensee shall not distribute, disclose, copy, reproduce, display, publish, transmit, assign, sublicense, transfer, provide access to, , or sell, directly or indirectly (including in electronic form), any portion of the Licensed Product, or modify or create derivative works of the Licensed Product. (c) Notwithstanding any er provision herein, Licensee shall not: (1) upload, post or otherwise transmit any portion of the Licensed Product on, or provide access to any portion of the Licensed Product ough, the Internet, any bulletin board system, any electronic network, any listing service or any other data sharing arrangement not restricted exclusively to Licensee and the horized Users, except that (i) Licensee may e-mail a report containing Information that complies with this Section 2 to a limited number of its clients and prospective clients, (ii) ensee may display solely on its own web site photographs from the Licensed Product, and (iii) if Licensee is a subscriber in good standing to t under no circumstances shall such photographs be posted on any website that may compete with the Licensed Product, and (iii) if Licensee is a subscriber in good standing to Star Property Professional® and CoStar Connect®, Licensee may post insubstantial portions of the Information from CoStar Property to the client extranet component on Licensee's signated CoStar Connect web site for accessing by clients or prospective clients of Licensee in compliance with this Section 2; (2) use any portion of the Licensed Product to create, ectly or indirectly, any database or record; (3) access or use the Licensed Product if you are a direct or indirect competitor of CoStar or provide any portion of the Licensed Product any direct or indirect competitor of CoStar; (4) store, copy or export any portion of the Licensed Product into any database or other software program, except as set forth in Section ); (5) modify, merge, disassemble or reverse engineer any portion of the Licensed Product; (6) use, reproduce, publish or compile any Information for the purpose of selling or nsing such information or making such information publicly available; (7) use or distribute Information that has been verified or confirmed by Licensee for the purpose of developing ensing such information or making such information publicly available; (7) use or distribute Information that has been verified or confirmed by Licensee for the purpose of developing contributing to the development of any database, product or service; or (8) use any portion of the Licensed Product in a manner that would violate any U.S., international, state or cal law, regulation, rule or ordinance, including real estate practice, spam and privacy laws.

Ownership. Licensee acknowledges that CoStar and its licensors have and shall retain exclusive ownership of all proprietary rights to the Licensed Product, including all U.S. and ternational intellectual property and other rights such as patents, trademarks, copyrights and trade secrets. This is a license agreement and not an agreement for sale. Licensee shall ave no right or interest in any portion of the Licensed Product except the right to use the Licensed Product as set forth herein. Licensee acknowledges that the Software, Database, formation and Licensed Product constitute the valuable property and confidential copyrighted information of CoStar and its licensors (collectively, the "Proprietary Information"). censee agrees to (a) comply with all copyright, trademark, trade secret, patent, contract and other laws necessary to protect all rights in the Proprietary Information, (b) not challenge oStar's and its licensor's ownership of (or the validity or enforceability of their rights in and to) the Proprietary Information, and (c) not remove, conceal, obliterate or circumvent any opyright or other notice or license, use or copying technological measure included in the Licensed Product. Licensee shall be liable for any violation of the provisions of this Agreement any Authorized User and by Licensee's employees, Independent Contractors, affiliates and agents and for any unauthorized use of the Licensed Product by such persons. Without oStar's consent, Licensee may not use or reproduce any trademark, service mark or trade name of CoStar.

. Term. The term of this Agreement shall begin on the date of signature by CoStar, shall continue for the initial term specified on the Subscription Form (the "Initial Term"), and shall expire at e end of such Initial Term on the last day of the calendar month in which the Start Date occurred, unless earlier terminated pursuant to the terms hereof. This Agreement shall continue hereafter for successive periods of one (1) year (each such successive period being a "Renewal Term") commencing on the last day of the Initial Term or any Renewal Term, unless sixty 60) days prior to the last day of the Initial Term or any Renewal Term, either party has provided the other written notice of an intent not to renew. The "Start Date" shall be the date of dissemination by CoStar of a Passcode for such Licensed Product to Licensee; provided, that for existing customers with Passcodes, the "Start Date" shall be the date of signature of this Agreement by CoStar.

5. License Fees. Licensee agrees to pay the License Fees and all other fees set forth in this Agreement, which are priced in U.S. dollars and shall be paid in U.S. dollars. Licensee's obligation to pay such fees shall begin on the Start Date. In addition to anything set forth herein, CoStar may: (a) on each anniversary of the last day of the calendar month in which the Start Date occurred, increase the License Fees by a percentage equal to the percentage increase in the Consumer Price Index for All Urban Consumers, Seasonally Adjusted, US City Average, All Items for the previous twelve months; and (b) at any time for any Renewal Term increase the License Fees or charge other fees for any portion of the Licensed Product or service provided by CoStar, provided, that if Licensee does not agree to the increase or charge, then Licensee may give CoStar written notice of termination within sixty (60) days of CoStar's notice of such increase or charge, in which case Licensee shall continue to pay the License Fees in place before the proposed increase or charge until the last day of the calendar month in which Licensee's notice of termination is delivered, and this Agreement shall terminate with respect to such portion of the Licensed Product on such date. All fees shall be billed in advance in accordance with the billing cycle identified herein and are due net fifteen days. All payments received after the due date will incur a late payment charge from such due date until paid at a rate equal to the lesser of 1.5% per month or the maximum rate permitted under applicable law. In all cases, the amount of License Fees shall be paid by Licensee to CoStar in full without any right of set-off or deduction. CoStar may accept any payment without prejudice to its rights to recover the balance due or to pursue any other right or remedy. No endorsement or statement on any check, payment, letter accompanying any payment, or elsewhere will be construed as an accord or satisfaction. The License Fees do not include sales, use, excise or any other taxes or fees now or hereafter imposed by any governmental authority with respect to the Licensed Products. At CoStar's option, Licensee shall pay such taxes or fees directly or pay to CoStar any such taxes or fees immediately upon invoicing by CoStar.

6. Termination. (a) Either party may terminate any portion of this Agreement in the event of: (1) any breach of a material term of this Agreement by the other party which is not remedied within thirty (30) days after written notice to the breaching party; or (2) the other party's making an assignment for the benefit of its creditors, or the filing by or against such party of a petition under any bankruptcy or insolvency law, which is not discharged within 30 days of such filing. (b) CoStar may terminate any portion of this Agreement immediately without further obligation to Licensee: (1) upon CoStar's reasonable suspicion of any violation by Licensee of any provision of Section 1, 2, 3, 5, 12 or 13 hereunder, or any material provision of any other agreement between the parties; or (2) upon five (5) days written notice at any time in CoStar's sole discretion in which case CoStar shall refund any fees paid by Licensee to license the terminated portion of the Licensed Product after the effective date of such termination, and Licensee shall be released of its obligation to pay the associated License Fees due after the date of such termination. (c) CoStar may interrupt the provision of any portion of the Licensed Product to Licensee upon CoStar's reasonable suspicion of any violation by Licensee of any provision of Section 1, 2, 3, 5, 12 or 13 hereunder, or any material provision of any other agreement between the parties, and Licensee shall continue to be responsible for all License Fees, provided that Licensee shall not be responsible for license fees for an interrupted period if there was not an actual violation. CoStar will restore the provision of the Licensed Product only if all amounts due hereunder are paid and if, in CoStar's reasonable opinion, CoStar has received satisfactory assurances as to the cessation of the violation. (d) Upon Licensee's breach of any term of this Agreement, all License Fees and all other fees payable hereunder shall become immediately due and payable in full, and in addition to the foregoing, CoStar's remedies shall include any damages and relief available at law or in equity. If CoStar retains any third party to obtain any remedy to which it is entitled under this Agreement, CoStar shall be entitled to recover all costs, including attorney's fees and collection agency commissions, CoStar incurs.

ost-Termination. At termination or nonrenewal of this Agreement, Licensee may no longer use any portion of the Licensed Product in any manner. Within ten (10) days after the effective of termination or nonrenewal, Licensee will permanently delete or destroy all elements of the Licensed Product under its control and upon Licensee's sole request from CoStar, affirm the completion of process by execution and delivery to CoStar of an affidavit to that effect reasonably satisfactory to CoStar. In addition, CoStar may at its sole expense audit Licensee's compliance with provision and the terms of the Agreement, provided, that such audit will occur under Licensee's reasonable supervision and Licensee shall cooperate in the conduct of the audit.

icensed Product. Subject to Section 15, during the term of this Agreement, CoStar will provide updated Information to Licensee, which updates may be provided through the Internet or in other manner as determined by CoStar. Licensee is responsible for providing all hardware, software and equipment necessary to obtain and use the Licensed Product, including any ates or other modifications thereto. The Licensed Product currently requires a Windows 98, NT, 2000 or XP based computer, a high-speed internet connection or modem with a baud rate less than 56K and Internet Explorer 6.0. Licensee is responsible for all charges necessary to access the Licensed Product. CoStar reserves the right to modify any part of the Licensed duct or the way the Licensed Product is accessed at any time, so long as such modifications do not significantly degrade the depth of Information provided to Licensee hereunder.

nformation. Licensee shall use reasonable efforts to keep CoStar informed about commercial and investment space available for lease and/or sale and transaction information with pect to properties that Licensee owns, controls, represents or holds exclusives. Licensee hereby grants to CoStar an irrevocable, non-exclusive license with respect to CoStar's and affiliates' databases to use, modify, reproduce and sublicense with respect to commercial real estate information available on Licensee's web site. CoStar acknowledges that if ensee provides CoStar with any information or images, then Licensee retains its ownership rights with respect to such information and images, even following termination of this reement.

LIMITATION ON LIABILITY. (a) LICENSEE ACKNOWLEDGES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, COSTAR AND ITS AFFILIATES AND THEIR RESPECTIVE FICERS, DIRECTORS, EMPLOYEES AND THIRD PARTY SUPPLIERS (COLLECTIVELY, THE "COSTAR PARTIES") WILL NOT BE HELD LIABLE FOR ANY LOSS, COST OR AMAGE SUFFERED OR INCURRED BY LICENSEE OR ANY THIRD PARTY ARISING OUT OF OR RELATED TO ANY FAULTS, INTERRUPTIONS OR DELAYS IN THE LICENSED RODUCT, OUT OF ANY INACCURACIES, ERRORS OR OMISSIONS IN THE INFORMATION CONTAINED IN THE LICENSED PRODUCT, REGARDLESS OF HOW SUCH FAULTS, TERRUPTIONS, DELAYS, INACCURACIES, ERRORS OR OMISSIONS ARISE, OR FOR ANY UNAUTHORIZED USE OF THE LICENSED PRODUCT. (b) THE COSTAR PARTIES' GGREGATE, CUMULATIVE LIABILITY RELATING TO THIS AGREEMENT AND USE OF THE LICENSED PRODUCT SHALL BE LIMITED TO LICENSEE'S ACTUAL, RECOVERABLE RECT DAMAGES, IF ANY, WHICH IN NO EVENT SHALL EXCEED THE TOTAL AMOUNT OF LICENSE FEES ACTUALLY PAID TO COSTAR UNDER THIS AGREEMENT DURING HE TWELVE MONTH PERIOD IMMEDIATELY PRECEDING THE DATE SUCH CLAIM AROSE. RECOVERY OF THIS AMOUNT SHALL BE LICENSEE'S SOLE AND EXCLUSIVE EMEDY. (c) UNDER NO CIRCUMSTANCES WILL ANY OF THE COSTAR PARTIES BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR ONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION LOST PROFITS, ARISING OUT OF, BASED ON, RESULTING FROM OR IN CONNECTION WITH THIS AGREEMENT R ANY USE OF THE LICENSED PRODUCT, EVEN IF COSTAR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE EXCLUSION OF DAMAGES IN THIS SECTION GREEMENT MAY BE BROUGHT BY LICENSEE MORE THAN ONE (1) YEAR AFTER THE CAUSE OF ACTION HAS ARISEN. (e) THE PROVISIONS OF THIS SECTION APPLY (c) IS INDEPENDENT OF LICENSEE'S EXCLUSIVE REMEDY AND SURVIVES IN THE EVENT SUCH REMEDY FAILS. (d) NO ACTION ARISING OUT OF OR PERTAINING TO THIS ITHOUT REGARD TO THE CAUSE OR FORM OF ACTION, WHETHER THE DAMAGES ARE GROUNDED IN CONTRACT, TORT OR ANY OTHER CAUSE OF ACTION.

NO WARRANTIES. ALTHOUGH COSTAR MAKES EFFORTS TO PROVIDE AN ACCURATE PRODUCT, THE LICENSED PRODUCT AND ALL PARTS THEREOF ARE PROVIDED AS IS', 'WITH ALL FAULTS', AND 'AS AVAILABLE'. THE COSTAR PARTIES MAKE NO WARRANTIES. THE COSTAR PARTIES DISCLAIM ANY AND ALL REPRESENTATIONS, VARRANTIES OR GUARANTEES OF ANY KIND, WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION (1) MERCHANTABILITY, FITNESS FOR RDINARY PURPOSES AND FITNESS FOR A PARTICULAR PURPOSE, WORKMANLIKE EFFORT, QUIET ENJOYMENT AND NO ENCUMBRANCES OR LIENS, (2) THE QUALITY, CCURACY, TIMELINESS OR COMPLETENESS OF THE LICENSED PRODUCT, (3) THOSE ARISING THROUGH COURSE OF DEALING, COURSE OF PERFORMANCE OR SAGE OF TRADE, (4) THE LICENSED PRODUCT CONFORMING TO ANY FUNCTION, DEMONSTRATION OR PROMISE BY ANY COSTAR PARTY, AND (5) THAT ACCESS TO OR USE OF THE LICENSED PRODUCT WILL BE UNINTERRUPTED, ERROR-FREE OR COMPLETELY SECURE.

12. Assignment. The parties' obligations hereunder are binding on their successors, legal representatives and assigns. Licensee may not assign or transfer (by operation of law or otherwise) this Agreement nor the license granted hereunder, in whole or in part, without the prior written consent of CoStar.

13. Passcodes; Key Tokens. (a) Licensee will designate a person authorized to determine and change the level of each Authorized User's access to the Licensed Product and designated to ensure that Licensee complies with this Agreement. No Authorized User may access the Licensed Product using any Passcode other than the Passcodes assigned to such Authorized User. No Authorized User may share his assigned Passcodes with any other person nor allow any other person to have access to his Passcodes. During the term of this Agreement, Licensee will promptly notify CoStar of any Authorized User's change of employment or contractor status with Licensee, including termination of an Authorized User's employment or contractual service with Licensee, and upon such termination Licensee shall destroy the Passcodes for such Authorized User. No Authorized User who ceases to be an employee or Independent Contractor of Licensee may use any Passcodes in any manner. (b) Each Authorized User's access to the Licensed Product may be limited to a designated computer; provided, that an Authorized User may email CoStar Customer Support at support@costar.com to receive an electronic apparatus (a "Key Token") designed to enable such Authorized User to access the Licensed Product from multiple computers for $149 per Key Token (before tax). All Key Tokens licensed by Licensee shall constitute part of the Licensed Product. If a Key Token has been lost, stolen or damaged, upon Licensee's email request to CoStar Customer Service for a replacement Key Token, CoStar shall deliver Licensee a replacement Key Token and Licensee shall pay CoStar $149 (before tax) for each such replacement Key Token; provided, that CoStar will replace a Key Token if it malfunctions through normal usage (due to no fault of the Licensee) free of charge during the Initial Term.

14. Notices. All notices given hereunder will be in writing, delivered personally or mailed by registered or certified mail, return receipt requested, or delivered by a well-recognized overnight U.S. or international carrier. If such notice is being delivered to Licensee, such notice shall be delivered to Licensee's address specified on the Subscription Form or to such other address as Licensee may specify, and if being delivered to CoStar, delivered to the address set forth on the Subscription Form, Attention: Director of Sales Administration, or to such other address as CoStar may specify. All notices will be deemed given if delivered personally, on the day of delivery, if mailed by registered or certified mail, three days after the date of mailing, if delivered by overnight U.S. mail, one day after mailing, and if delivered by overnight international mail, four days after mailing. Licensee agrees that CoStar may include notices on invoices sent to Licensee by regular mail.

15. Force Majeure. None of the CoStar Parties shall have any liability for any damages resulting from any failure to perform any obligation hereunder or from any delay in the performance thereof due to causes beyond CoStar's control, including industrial disputes, acts of God or government, public enemy, war, fire, other casualty, failure of any link or connection whether by computer or otherwise, or failure of technology or telecommunications or other method or medium of storing or transmitting the Licensed Product.

16. User Information. Licensee acknowledges that if it creates any settings, surveys, fields or functions in the Licensed Product or inputs, adds or exports any data into or from the Licensed Product (collectively, the "User Data"), none of the CoStar Parties shall have any liability or responsibility for any of such User Data, including the loss, destruction or use by third parties of such User Data. Documents posted by Licensee to the client extranet component of Licensee's designated CoStar Connect web site shall constitute Licensee Content (as defined in the CoStar Connect agreement) and User Data. Licensee acknowledges that it is Licensee's responsibility to make back-up copies of such User Data. For each licensed site, Licensee is allotted an aggregate amount of 100 megabytes of storage space in any CoStar Property Professional Licensed Product per Authorized User located at that site.

17. Choice of Law; Jurisdiction; International Arbitration. This Agreement shall be construed under the laws of the State of Maryland and the U.S. without regard to choice of law principles. The federal and state courts located in the State of Maryland shall be the exclusive jurisdiction for any action brought against CoStar in connection with this Agreement or use of the Licensed Product. Licensee irrevocably consents to the jurisdiction of the federal and state courts located in the State of Maryland, or in any State where Licensee's Authorized Users are located, for any action brought against Licensee in connection with this Agreement or use of the Licensed Product. All disputes arising outside of the U.S. shall be settled by arbitration held in London, England in accordance with the Rules of Arbitration and Conciliation of the International Chamber of Commerce. All arbitrators shall be fluent in English and all documents submitted in connection with the arbitration shall be in English. Judgment upon an arbitration award may be entered in any court having jurisdiction, or application may be made to such court for a judicial acceptance of the award and an order of enforcement.

18. Miscellaneous. This Agreement contains the entire understanding of the parties with respect to the Licensed Product and supersedes any prior oral or written statements and documents with respect to such subject matter; provided, that this Agreement does not supersede any other written license agreement between the parties unless expressly provided herein. Licensee agrees to keep the terms of this Agreement strictly confidential. This Agreement may not be amended, modified or superseded, nor may any of its terms or conditions be waived, unless expressly agreed to in writing by all parties. If any provision of this Agreement not being of a fundamental nature is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remainder of the Agreement will not be affected. If a provision is held to be invalid, illegal or otherwise unenforceable, it shall be deemed to be replaced with an enforceable provision that retains the intent and benefits of the original provision. Licensee acknowledges that in the event of a breach of any of these terms by Licensee, CoStar may suffer irreparable harm and shall be entitled to injunctive relief (without the necessity of posting a bond) as well as all other monetary remedies available at law or in equity. The failure of any party at any time to require full performance of any provision hereof will in no manner affect the right of such party at a later time to enforce the same. Headings are for reference only. The provisions of Sections 2(b), 2(c), 3, 5, 6(d), 7, and 10 through 18 hereof will survive nonrenewal or termination of this Agreement.



# Fax Cover Sheet

| | |
|---|---|
| *Date* | 5/28/08 |
| *Pages* | 11 (including cover) |

*To*

# Mark Klein

| | |
|---|---|
| *Company* | Klein & Heuchan |
| *Phone Number* | 727-441-1951 |
| *Fax Number* | 727-449-1724 |
| *From* | Curtis Ricketts |
| | cricketts@costar.com |
| *Company* | CoSTAR Group, Inc. |
| *Address* | Headquarters |
| | 2 Bethesda Metro Center, 10TH Floor |
| | Bethesda, MD 20814 |
| *Phone* | (301) 280-4705 |
| *Web site address* | http://www.costar.com |

As our discussions concerning Klein & Heuchan's unauthorized use of CoStar's services have been unable to resolve our dispute, I am forwarding to you a draft of a complaint that CoStar intends to file against Klein & Heuchan unless we can come to a resolution by the close of business on Tuesday June 3rd. Unfortunately, once our legal department has authorized the filing of this complaint, we can no longer offer a resolution on the terms we have discussed as a result of the legal costs CoStar will have incurred.

We remain open to discussing this dispute with you.

K&H0051



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

COSTAR REALTY INFORMATION, INC.,
2 Bethesda Metro Center, 10th Floor
Bethesda, Maryland 20814,

and

COSTAR GROUP, INC.,
2 Bethesda Metro Center, 10th Floor
Bethesda, Maryland 20814,

        Plaintiffs,

v.

KLEIN & HEUCHAN, INC.
1744 Belcher Rd, Suite 200
Clearwater, FL 33765

        Defendant.

Civil Action No. _____

## COMPLAINT

Plaintiffs COSTAR REALTY INFORMATION, INC., a Delaware Corporation, and COSTAR GROUP, INC., a Delaware Corporation (collectively "CoStar" or "Plaintiffs"), for their Complaint against Defendant KLEIN & HEUCHAN, INC. ("K&H"), alleges as follows:

## PARTIES

1.    CoStar Realty Information, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 2 Bethesda Metro Center, 10th Floor, Bethesda, Maryland, 20814-5388.

2.     CoStar Group, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 2 Bethesda Metro Center, 10th Floor, Bethesda, Maryland, 20814-5388.

3.     Defendant K&H is, upon information and belief, a Florida corporation, organized and existing under the laws of the Florida, with its principal place of business located at 1744 Belcher Rd, Suite 200, Clearwater, FL 33765.

## JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331 as an action that arises under the laws of the United States. The Court further has exclusive federal jurisdiction pursuant to 28 U.S.C. § 1338(a) as a case arising under the Copyright Act. This Court has subject matter jurisdiction over CoStar's claims for unauthorized access to computers and related claims pursuant to 18 U.S.C. § 1030.

5.     This Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332. The controversy is between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of Maryland pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

6.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

K&H0053

7.     Personal jurisdiction over K&H is proper in this District because: (a) by agreeing to the Terms of Use for the www.costar.com website, K&H has consented to the jurisdiction of this Court; (b) by their use of CoStar's proprietary database they have committed tortious and other actionable acts alleged herein with foreseeable consequences in this District, and have caused actual tortious injury in this District; and (c) they have purposefully directed their unlawful behavior at this District by repeated electronic activity and interaction with CoStar's computer servers in Bethesda, MD when logging into the subscription service at the www.costar.com website for business purposes.

## BACKGROUND

8.     CoStar is a leading national commercial real estate information services provider.  At enormous effort and expense, CoStar has created state-of-the-art software technology and research methods to develop one of the most comprehensive commercial real estate information databases available.  CoStar currently employs the services of approximately 1000 trained research professionals, including a field research force with over 120 research photographers and a fleet of over 100 specially equipped field research vehicles, that canvass the country, building information and analysis and photographs that are integrated into an enormous database that is updated daily.

9.     CoStar's photographs and the other information in CoStar's databases are not part of a repository of information generally available for free.  CoStar licenses its information services to businesses, including primarily commercial real estate brokers, asset managers, mortgage lenders, investors, owners, property managers, security analysis, REIT professionals and appraisers/mortgage underwriters.  CoStar's information licenses, among other things, enable its licensees to find for themselves or their customers available space for tenants, to match buyers to properties for sale, find tenants, research brokers, locate market-related information, and to value commercial real estate sales

K&H0054

transactions. CoStar's licensees can search CoStar's database by selecting from the more than 150 fields of information and analysis included in the file for each property to find those properties that suit their needs.  CoStar's licensees can search through CoStar's information in thousands of different ways to analyze various real estate markets, and thus access to CoStar's database greatly reduces the need for CoStar's licensees to spend money on conducting research to locate much of the very same information already collected, organized, developed and analyzed by CoStar.

10.  With the exception of a very limited amount of its information services CoStar makes available for no charge on the Internet at http://www.CoStar.com, access to CoStar's information services is offered only to authorized users.  Interested members of the general public can become authorized users either (a) by entering into an online agreement for *ad hoc* access and use, or (b) by entering into a written license agreement and subscribing to one or more of CoStar's information services.

11.  Access to CoStar's subscription information services and their associated databases is limited to those authorized users who gain authorization solely pursuant to written license agreements, which limit their access and use of CoStar's databases to specific numbers of licensed users and licensed sites.  Licensed users are limited to employees of the licensee, or independent contractors working out of the licensed site and exclusively for the licensee.

12.  Once a party executes a license agreement with CoStar, each of its authorized users is provided with a user identification and password and is given authorized use for Internet-based access to CoStar's subscription information services within the terms of the user's specific license.  An authorized user must input a valid user identification and password at the

K&H0055

13.   "Subscriber Login Area" to gain authorized access to CoStar's restricted access information services for which they are licensed. The Subscriber Login Area contains prominent notices advising the user on each occasion of their use. "By logging in you are agreeing to CoStar's terms of use." and "Access restricted to licensed users. Sharing of passwords is prohibited." The authorized user must scroll through and "accept" the applicable online Terms of Use the first time they use the product as well as at periodic intervals thereafter. Furthermore, a warning appears at the bottom of the homepage that reads: "By using this site, you agree to our Terms of Use." Here too, by clicking on the underlined phrase, the user can view the terms of use.

14.   The Terms of Use provide:

> By accessing or using this Site (or any part thereof), you agree to be legally bound by the terms and conditions that follow (the "Terms of Use") as we may modify them from time to time. These Terms of Use apply to your use of this Site, including the CoStar services and products offered via the Site. **They constitute a legal contract between you and CoStar, and by accessing or using any part of the Site you represent and warrant that you have the right, power and authority to agree to and be bound by these Terms of Use.** If you do not agree to the Terms of Use, or if you do not have the right, power, and authority to agree to and be bound by these Terms of Use, you may not use the Site. (emphasis added).

15.   In addition, the Terms of Use specifically note that "[p]ortions of the [website] are available only to individuals or entities who purchase a subscription ('Subscribers') and who, as specified in these Terms of Use and/or in the associated written license agreement between the Subscriber and CoStar that authorizes use of the information or product(s) (the 'License Agreement'), are Authorized Users (as defined below) under such a subscription."

16.   Under the header "Prohibited Uses," the Terms of Use provide that "you shall not ... [a]ccess any portion of the [databases] unless you are an Authorized User for such [databases] using the

5                                K&H0056

Passcodes assigned to you by CoStar to access the components and services of the [databases] that your subscription authorizes you to access, subject to the terms contained therein and in these Terms of Use."

17.    The Terms of Use also state that "[u]pon your breach of any term of these Terms of Use or the License Agreement, CoStar's remedies shall include any monetary benefits that accrued to you as a result of the breach, any damages incurred by CoStar related to your breach and any other damages and relief available at law or in equity." The terms of use further provide that "CoStar shall be entitled to recover all costs, including attorney's fees."

18.    Finally, the Terms of Use provide that the user "irrevocably consent[s] to the exclusive jurisdiction of the federal and state courts located in the State of Maryland for any action to enforce these Terms of Use."

## EVENTS GIVING RISE TO THE LAWSUIT

19.    One of CoStar's customers ("CUSTOMER") signed a License Agreement with CoStar for access to the CoStar Property Professional®, CoStar Comps® and CoStar Tenant® commercial real estate information databases and related software.

20.    Under Sections 1, 2 and 12 of CUSTOMER's License Agreement with CoStar, CUSTOMER agreed, among other things:  (a) not to provide third parties with access to or use of the CoStar database service, (b) not to sub-license or resell CoStar's information services to others, (c) not to share the CUSTOMER-specific IDs and passwords assigned by CoStar, and (d) not to store, copy or export any portion of the licensed CoStar database service into any database or other software program, except as explicitly permitted by the CoStar-Resource License Agreement or by express written consent of CoStar.

K&H0057

6

21.    K&H obtained access to CUSTOMER's user names and passwords and then used CUSTOMER's user name and password improperly to access and use CoStar's commercial real estate information subscription services for their own commercial purposes without a valid license or any other authorization from CoStar.

22.    By gaining unauthorized access to CoStar's products, K&H was able to make unauthorized copies and displays of CoStar's copyrighted databases and copyrighted photographs on K&H's computers.

**COUNT I**
**BREACH OF CONTRACT**

23.    CoStar re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 22 of the Complaint.

24.    By accessing CoStar's Internet website, K&H agreed to be bound by the terms of use agreement of CoStar's website. CoStar's website terms of use agreement is a valid contract.

25.    K&H breached the terms of use agreement by, *inter alia*, accessing and using the CoStar databases without authorization from CoStar on 132 occasions for a total of 46 hours, involving "hits" to 12,829 pages on the CoStar Website.

26.    CoStar has been injured by K&H's breach as described above. Among other things, K&H's breach of contract has caused CoStar to lose the license fee revenue associated with granting licenses to CoStar products. Some of CoStar's injury as a result of K&H's breach resulted in damages to CoStar in an amount to be proven at trial. CoStar will not have an adequate remedy at law for its entire injury, however, as some of its injury is irreparable. Accordingly, CoStar is entitled to damages and injunctive relief.

K&H0058

than $750 and up to $150,000 per work, as well as the attorney's fees and costs of prosecuting this action.

34.    As a result of K&H's infringement, CoStar has suffered an injury for which there is no adequate remedy at law and that requires injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE,** CoStar asks that this Court:

(1)    Enter a judgment against K&H that it has breached its contract with CoStar;

(2)    Grant a preliminary and permanent injunction (a) restraining and enjoining K&H and any of its principals, officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with them, from making any unauthorized access to or use of any CoStar database service; and (b) ordering K&H and any of its principals, officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with them, to permanently delete and destroy all portions of any CoStar database service within their possession, and within ten (10) days provide CoStar with a signed affidavit certifying completion of such deletion/destruction;

(3)    Enter judgment against Defendants and in favor of CoStar for compensatory damages;

(4)    For an award of statutory damages of up to $11,450,000 as a result of Defendants' willful infringement of CoStar's copyrights.

(5)    For an award of the costs of this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and other applicable laws.

(6)    Enter judgment against Defendants and in favor of CoStar for prejudgment interest, costs and attorneys' fees; and

K&H0059

(7)    Grant CoStar such other and further relief as is just.

Respectfully submitted,

_____

Attorneys for CoSTAR REALTY
INFORMATION, INC., a Delaware Corporation,
and CoSTAR GROUP, INC., a Delaware
Corporation

K&H0060

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KLEIN & HEUCHAN, INC.

     Plaintiff,

vs.                         Civil No.: 8:08-cv-01227-JSM-MSS

COSTAR REALTY INFORMATION, INC.,
and COSTAR GROUP, INC.,

     Defendants.

_____/

## AFFIDAVIT OF STEVEN KLEIN

STATE OF FLORIDA
COUNTY OF PINELLAS

     BEFORE ME, the undersigned authority personally appears STEVEN KLEIN, who upon being sworn deposes and says:

     1.     This affidavit is made upon my personal knowledge and is done in opposition to Defendant/Counter-Plaintiff's Motion for Summary Judgment.

     2.     I am a real estate broker licensed in the State of Florida

     3.     I am employee of Klein& Heuchan, Inc. and also serve Executive Vice-President.

     4.     For many years I have been approached by salespersons from COSTAR asking us to try and purchase subscriptions to COSTAR's databases.

     5.     I have never believed that the information provided by COSTAR was helpful or useful in my business and have never sought to obtain a subscription or use the system.

     6.     I don't recall every using any of the COSTAR databases or accessing any of the materials offered by COSTAR.



7.     I never asked Mr. Bell to provide me with information from the COSTAR databases.

8.     Moreover, I do not recall ever receiving any COSTAR-related materials from Mr. Bell.

Further Affiant Sayeth Not.

_____
STEVEN KLEIN

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me the _____ day of October, 2009, by _____, who is personally known to me or who has produced _____ as identification and who did take an oath.

_____
Notary Public
Print name:
My commission expires:

7.   I never asked Mr. Bell to provide me with information from the COSTAR databases.

8.   Moreover, I do not recall ever receiving any COSTAR-related materials from Mr. Bell.

Further Affiant Sayeth Not.

_____
STEVEN KLEIN

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me the _16_ day of October, 2009, by _Steven Klein_ who is personally known to me or who has produced _____ as identification and who did take an oath.

CAROL DUNCAN
Commission DD 741102
Expires January 10, 2012
Bonded Thru Troy Fain Insurance 800-385-7019

_____
Notary Public
Print name:
My commission expires: