UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| KLEIN & HEUCHAN, INC.,<br>　　　　Plaintiff and Counter-Defendant, | ) ) ) )   Civ. Act. No. 8:08-cv-01227-JSM-MSS |

KLEIN & HEUCHAN, INC.,
　　　　Plaintiff and Counter-Defendant,　　)　　Civ. Act. No. 8:08-cv-01227-JSM-MSS

v.

COSTAR REALTY INFORMATION,
INC. and COSTAR GROUP, INC.,
　　　　Defendants and Counter-Plaintiffs

v.

SCOTT BELL, Third-Party Defendant

**PRETRIAL STATEMENT**

The following is a Proposed Pretrial Statement filed jointly by all parties: Klein &

Heuchan ("K & H"), CoStar Realty Information, Inc. and CoStar Group, Inc. (collectively

"CoStar") and Scott Bell ("Bell") to be considered at the Final Pretrial Conference on February

2, 2010.

1.　　**Names, addresses and telephone numbers of trial counsel:**

　　　**CoStar Realty Information, Inc. and CoStar Group, Inc.**
　　　**Defendant and Counterclaimants:**

　　　Matthew J. Oppenheim *(pro hac vice)*
　　　Scott A. Zebrak *(pro hac vice to be filed)*
　　　The Oppenheim Group, LLP
　　　7304 River Falls Drive
　　　Potomac, MD  20854
　　　301-299-4986

866-766-1678 (fax)

-and –

William C. Guerrant, Jr.
William Sansone
Hill,Ward & Henderson, P.A.
Suite 3700 – Bank of America Building
101 East Kennedy Boulevard
Post Office Box 2231
Tampa, Florida  33601


**Klein & Heuchan**
**Plaintiff and Counter-Defendant:**

Jeffrey Gibson
Joshua Magidson
Macfarlane Ferguson & McMullen
P.O. Box 1669
Clearwater, FL  33757
727-441-8966
727-442-8470 (fax)

**Scott Bell**

Randall J. Love
Randall J. Love & Associates, P.A.
5647 Gulf Drive
New Port Richey, FL 34652-4019
727-847-0800

**2.**     **Whether the case is to be tried with or without a jury:**

The case is to be tried without a jury.

**3.**     **Pretrial Statement:**

*CoStar's pretrial statement is attached as Exhibit A.*

*K & H's pretrial statement is attached as Exhibit B.*

**4.**     **Stipulated Facts:**

*Stipulated facts are attached as Exhibit C.*

2

5.      **Contested Issues of Fact:**

*CoStar's contested issues of fact are attached as Exhibit D.*

*K & H's contested issues of fact are attached as Exhibit E.*

6.      **Jurisdiction:**

Jurisdiction is not disputed.

7.      **Issues of Law:**

*Law of the Case:*

> a.      The photographs at issue were properly registered by CoStar with the Copyright Office, were published within 90 days of the date the registrations were submitted and meet the creativity and originality threshold required to hold a valid copyright. <u>See</u> Docket Entry 94, Pages 5 -6.

> b.      K & H had the right and ability to supervise Bell's work. <u>See</u> Docket Entry 94, Pages 7 -8.

*Uncontested points of law are attached as Exhibit F.*

*CoStar's contested issues of law are attached as Exhibit G.*

*K & H's contested issues of law are attached as Exhibit H.*

8.      **The names and address of witnesses who shall testify at the trial, and the purpose of the testimony of each witness.**

*CoStar's Witness List*

> a.  Stephen Alliegro

>> i.  CoStar Group
>> 2 Bethesda Metro Center
>> 10th Floor
>> Bethesda, MD 20814-5388

>> ii.  Background on CoStar, development and licensing of its online services, the use and value of the online services by the commercial real estate industry, and the harm from unauthorized infringement of CoStar's rights.

> b.  Steven J. Williams

>> i.  CoStar Group

2 Bethesda Metro Center
10th Floor
Bethesda, MD 20814-5388

ii.   CoStar's ownership and registration of copyrighted works, Bell's and K & H's use of CoStar's online services and their infringing activities, and the harm to CoStar from copyright infringement.

c.   Robert Lardizabal

i.   CoStar Group
2 Bethesda Metro Center
10th Floor
Bethesda, MD 20814-5388

ii.   The nature, scope and extent of Bell's and K & H's unauthorized copying.

d.   Scott Bell

i.   c/o Randall Love, Esq.
Randall J. Love and Associates
5647 Gulf Drive
New Port Richey, Florida  34652

ii.   Knowledge and benefit of infringing activity, and relationship to and interactions with K & H.

e.   Mark Klein

i.   c/o Jeffrey Gibson
Macfarlane, Ferguson & McMullen, P.A.
Intervest Bank Building
625 Court Street, Suite 200
Clearwater, FL  33756

ii.   Business of K & H, and employment and activities of Bell at K & H.

f.   Steve Klein

i.   c/o Jeffrey Gibson
Macfarlane, Ferguson & McMullen, P.A

4

Intervest Bank Building

625 Court Street, Suite 200

Clearwater, FL  33756

ii.   Business of K & H, and employment and activities of Bell at K & H.

*K & H's Witness List.*

a.   Scott Bell

i.   c/o Randall Love, Esq.

Randall J. Love and Associates

5647 Gulf Drive

New Port Richey, Florida  34652

ii.   Knowledge of relationship with Klein & Heuchan.

b.   Mark Klein

i.   c/o Jeffrey Gibson

Macfarlane, Ferguson & McMullen, P.A.

Intervest Bank Building

625 Court Street, Suite 200

Clearwater, FL  33756

ii.   Business of K & H, and association of Bell with K & H.

c.   Steve Klein

i.   c/o Jeffrey Gibson

Macfarlane, Ferguson & McMullen, P.A.

Intervest Bank Building

625 Court Street, Suite 200

Clearwater, FL  33756

ii.   Business of K & H, and association of Bell with K & H.

d.   Chris Howell

i.   c/o Jeffrey Gibson

Macfarlane, Ferguson & McMullen, P.A.

Intervest Bank Building
625 Court Street, Suite 200
Clearwater, FL  33756

    ii.  Association of Bell with K & H.

e.  M. Jaye Love, CCIM

    i.  Al Love and Associates
1160 W. Lake Hamilton Drive
Winter Haven, Florida 33881

    ii.  Knowledge of Bell's relationship with Coldwell Banker and Bell's access
to Costar database.

f.  John A. Skicewicz, CCIM

    i.  Coldwell Banker Commercial NRT
3474 Tampa Road
Palm Harbor, Florida 34684

    ii.  Knowledge of Bell's relationship with Coldwell Banker and Bell's access
to Costar database.

g.  Curtis Ricketts

    i.  CoStar Group
2 Bethesda Metro Center
10th Floor
Bethesda, MD 20814-5388

    ii.  CoStar's attempts to sell K&H a subscription to Costar database and
subsequent claims of copyright infringement.

**9.**     **A list of proposed exhibits, indicating which exhibits may be admitted without objection and a brief statement of the ground for any objection to others.**

*A joint exhibit list is attached as Exhibit I hereto.*

**10.**    **Damages Sought By CoStar**

*CoStar's statement of damages is attached as Exhibit J hereto.*

**11.**    **Pretrial Motions**

CoStar intends to file an unopposed Motion to Realign the Parties for Trial.

K & H intends to file a Motion in Limine regarding the admissibility of untimely produced material.

The parties reserve the right to file additional Motions in Limine by the previously set deadline of February 8, 2010.

**12.**     **Length of Trial:**

The parties believe that the trial shall not to exceed four (4) trial days.


Dated: January 28, 2010

Respectfully submitted,


**CoStar Realty Information, Inc. and CoStar Group, Inc. Defendant and Counterclaimants:**


s/William C. Guerrant, Jr.
William C. Guerrant, Jr.
Florida Bar No. 516058
wguerrant@hwhlaw.com
Trial Counsel
William F. Sansone
Florida Bar No. 781231
wsansone@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
Suite 3700 – Bank of America Building
101 East Kennedy Boulevard
Post Office Box 2231
Tampa, Florida 33601
Telephone: (813) 221-3900
Facsimile: (813) 221-2900

7

Attorneys for Defendants

- and -

/s/ Matthew J. Oppenheim
Matthew J. Oppenheim
The Oppenheim Group, LLP
7304 River Falls Drive
Potomac, MD  20854
301-299-4986
866-766-1678 (fax)
matt@oppenheimgroup.net
Attorneys for CoStar Realty
Information, Inc., and CoStar Group,
Inc.

**Klein & Heuchan**
**Plaintiff and Counter-Defendant:**

/s/ Jeffrey Gibson
Jeffrey Gibson
Joshua Magidson
Macfarlane Ferguson & McMullen
P.O. Box 1669
Clearwater, FL  33757
727-441-8966
727-442-8470 (fax)

**Scott Bell**

/s/ Randall Love
Randall J. Love
Randall J. Love & Associates, P.A.
5647 Gulf Drive
New Port Richey, FL 34652-4019
727-847-0800

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on January 28, 2009, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system.

<u>s/ Matthew J. Oppenheim</u>   _____
Attorney

## EXHIBIT A – COSTAR'S PRETRIAL STATEMENT OF THE CASE

CoStar is the leading provider of commercial real estate information in the United States. CoStar created, maintains, and, in exchange for a license fee, provides subscribers with access to a variety of online services with information and photographs depicting and describing office, industrial and retail properties and markets around the United States. The CoStar subscription-only services also contain researched analytic market reports for particular geographic regions and specific sectors of the real estate market. Access to the subscription-only CoStar products is a valuable competitive advantage within the commercial real estate community.

CoStar licenses its subscription-only products to a given business pursuant to the terms of a written license agreement. Among other provisions, the license agreement provides that a certain number of designated individuals who work for the company may be "authorized users" of one or more of the CoStar subscription-only products. Each of these authorized users receives an email from CoStar with a User Identification and password, for access and use of the CoStar subscription product while working for the licensed CoStar customer and subject to the licensing terms.

Defendant Scott Bell ("Bell") is a commercial real estate broker who previously worked for Coldwell Banker Commercial NRT ("Coldwell"), a brokerage firm located in Florida. While working at Coldwell, Bell became an authorized user of CoStar's subscriber-only online services, subject to the applicable licensing terms. Near the end of 2006, Bell left Coldwell and went to work for Defendant Klein & Heuchan (K & H). While working for K & H, Bell used CoStar's subscriber-only online services without authorization and in violation of the Terms of Use agreement posted at www.costar.com. In his capacity as a sales agent (broker) at K&H, Bell used this illicit access to obtain specific property photographs and building information, market reports, and other data and valuable material. Between 2006 and 2008, Bell accessed CoStar's online services regularly, resulting in over 13,000 page hits. K & H was well aware that Bell was using CoStar's online services and that the online services required a license. Indeed, K & H had repeatedly declined to license CoStar's online services, despite efforts by CoStar to have K & H do so.

CoStar regularly registers the copyrights both to the photographs and online databases that it creates. In particular, CoStar owns the exclusive rights under United States copyright to each of the forty-four (44) photographs and the four (4) market reports infringed.

CoStar has asserted claims against Bell for direct copyright infringement by virtue of his reproduction and distribution of the works described on the List of CoStar Photographs Allegedly Infringed and List of CoStar Reports Allegedly Infringed. The Court has already

determined in its November 25, 2009 Order that Bell engaged in direct infringement of CoStar's copyrighted photographs.  Bell similarly infringed other CoStar copyrights by downloading and distributing a variety of CoStar's market reports and other property information.  Plaintiff has also asserted claims against Bell for breach of contract for his violation of the CoStar's Terms of Use agreement, which prohibits anyone who is not an authorized user from accessing the CoStar online services.  By repeatedly accessing and using CoStar's online services when he was not authorized to do so, Bell breached CoStar's Terms of Use agreement.

CoStar has also asserted claims against K & H for secondary copyright infringement.  K & H is vicariously liable for Bell's infringement.  As the Court has already held in its November 25, 2009 Order, K & H had the right and ability to control Bell.  K & H benefited financially from Bell's infringement in a number of ways.  K&H benefitted by virtue of Bell's reviewing, obtaining, and copying the works to further his role as a real estate broker for K & H.  The sole and exclusive reason he used the CoStar online services was for the benefit of K & H.  K & H benefitted by virtue of the photographs and market reports, that Bell had and provided to others at K & H.  K & H could have stopped the infringement at any time, but rather chose to take advantage of the activities that were occurring in its offices, on its network, on its behalf, and with its support, in order to avoid paying the license fees required for a subscription.  Avoiding the license fee was, of course, another financial benefit.

K & H is also a contributory infringer.  K & H knew Bell was using CoStar's online services, which contain valuable copyrighted works, knew that those services required a subscription, and knew that the company had repeatedly refused to obtain such a subscription.  Yet, the corporate officers of K & H not only failed to instruct Bell to stop using the services, but actually asked Bell to obtain additional material from the online services.  While those officers may baldly deny that they knew that Bell was infringing, they cannot escape the fact that, for a variety of reasons, they should have known that his use of CoStar's services was improper and unauthorized.  This knowledge, together with the fact that they asked Bell to obtain material from CoStar's online services and provided Bell with the site and facilities to engage in the infringement, makes K & H contributorily liable for Bell's infringement.

CoStar elects to collect statutory damages.  Under 17 U.S.C. §504(c), the Court may award damages between $750 and $30,000 per work infringed, and may award up to $150,000 per work infringed if the infringement is found to be willful.  Had K & H licensed CoStar's online services for the period that Bell infringed, the license fee would have been $69,887.  In order to compensate CoStar for the infringement of its works and deter K & H and other would be infringers from engaging in similar infringing behavior, CoStar asks that damages in this matter should be, at least, a multiple of the lost license fees.  Other evidence to be presented at trial may also underscore the need for a significant statutory damages along these lines or higher.

## <u>EXHIBIT B – K & H'S PRETRIAL STATEMENT OF THE CASE</u>

K&H is a closely held, family run business based in Clearwater, Florida.  K&H is managed by Mark and Steve Klein.  K&H provides brokerage services, property management services and development services to clients within the Tampa Bay area.  K&H operates its business through a sales force of roughly twenty independent contractors.  These independent contractors are provided a work area that allows for internet access.  Each salesperson utilizes their own computer.  These salespeople work independently from the supervision and control of K&H with two exceptions.  The first is a requirement of Florida law which relates to the acceptance and approval of listing agreements.  The second involves encouragement to attend sales meeting designed to help the salespeople earn more money.  K&H never had the right or ability to supervise any of its sales force, including Scott Bell.

In contrast to the small size and regional scope of K&H, Costar is a huge company with a nationwide presence.  Costar maintains a database which contains information regarding real estate. Several other companies offer comparable online databases, some of which are offered at no charge.

K&H was approached numerous times by Costar with respect to obtaining a license to access the Costar database.  K&H, through Mark Klein, accepted a free trial subscription to the Costar database, but attempts to login and utilize the system proved frustrating and the free subscription was not utilized and soon forgotten.  Even if the system had not been frustrating, Mark Klein was aware of similar databases that could be accessed for free without the need for a subscription.  With those factors in mind, K&H did not see any benefit to the Costar database.

Scott Bell is a licensed real estate salesperson.  Before arriving at K&H, Scott Bell was associated with the real estate firm of Coldwell Banker.  At some point, Scott Bell was provided authorized access to the Costar database.  Scott Bell, while associated with K&H accessed the Costar database.  Scott Bell was unaware that his access to the Costar database was unauthorized.  Likewise, K&H did not and could not have known Bell's access was unauthorized.

The dispute between Costar and K&H begins sometime after November, 2006.  It is around this time that Scott Bell left Coldwell Banker and became associated with K&H.  At some point, Costar became aware that Scott Bell continued to access the Costar database after he was no longer associated with Coldwell Banker.  Afterward, Costar contacted K&H and informed Mark Klein that Scott Bell was not authorized to access the Costar database.  At that same time, Costar stated they would ignore any possible copyright violations if K&H agreed to enter into an agreement for access to the Costar database.  K&H, unconvinced the database had any commercial value, refused to enter into any agreement with Costar.  K&H further denied any copyright infringement.  Afterward, Costar delivered via facsimile to

Mark Klein a draft complaint and threatened a lawsuit if K&H did not give in to the demands of Costar.

In response, K & H filed a single count Complaint seeking a declaratory action stemming from Costar's claims that K&H, through Bell, an independent contractor, obtained access to the Costar database by obtaining authorized users' user names and passwords accessed the Costar database for its own commercial purpose without a valid license or any other authorization from Costar.

In response to K&H's Complaint, Costar filed a four count complaint against K&H and Bell. Only one count for contributory and vicarious copyright infringement is raised against K&H. The remaining counts for direct copyright infringement, fraud and related activity in connection with computers and breach of contract have all been alleged against Bell.

In response to K&H's Counterclaim, K&H states that Bell was an independent contractor for K&H and was not subject to supervision and control of K&H. K&H further denies any knowledge of the alleged direct infringement by Bell. Furthermore, K&H denies receiving any financial benefit from the Costar database or any of the material allegedly misappropriated by Bell.

Lastly, K&H contends that Costar was in the best position to monitor and protect its database from unauthorized access and failed to do so. Rather, Costar by its own inaction, and that of its licensee, contributed to any loss suffered.

K&H denies any involvement in contributory or vicarious copyright infringement of the Costar database.

## EXHIBIT C – STIPULATED FACTS

1. CoStar is the exclusive owner of the photographs described on the List of CoStar Photographs Allegedly Infringed set forth in Exhibit 1.  Each of those photographs was properly registered by CoStar within five years of the date of first publication of the work.

2. CoStar is the exclusive owner of the market reports described on the List of CoStar Market Reports Allegedly Infringed set forth in Exhibit 2.  CoStar's market reports are part of the literary works that CoStar properly registered within five years of the date of first publication of the works.

3. Between January 2007 and April 16, 2008, Bell downloaded to his computer each of the photographs described on the List of CoStar Photographs Allegedly Infringed and each of the market reports described on the List of CoStar Market Reports Allegedly Infringed.

4. Costar entered into a license agreement with Coldwell Banker Commercial NRT ("Coldwell") on September 30, 2005.

5. Coldwell requested the creation of a user account for Scott Bell.

6. CoStar registered the photographs and literary works described on both the List of CoStar Photographs Allegedly Infringed and List of CoStar Market Reports Allegedly Infringed prior to the dates on which Bell is alleged to have infringed them and/or within three months of the date of first publication of the work.

7. Bell worked as a real estate broker who worked for Coldwell from September 2005 to November 2006.  During his time at Coldwell as one of their brokers, Bell was authorized to download photographs and information from the CoStar online services, pursuant to the

terms of a written license agreement between CoStar and Coldwell.  Bell was not authorized to access or use the CoStar online services following his departure from Coldwell.

8.  CoStar had been attempting to enter into a license with K & H for its online services.  K & H had turned down CoStar's efforts to license its online services.

9.  Bell joined K & H in December 2006.  Bell continued to access the CoStar products using the username and password associated with his Coldwell subscription while he was working for K & H.

10. K & H was aware that Bell was accessing the CoStar online services.

11. Between January 2007 and April 16, 2008, Bell used his Coldwell password to access CoStar's online services.

12. While at K & H, Bell was required to attend two mandatory sales meetings each week.  Both Mark Klein, the Chief Executive Officer and sole owner of K & H, and Steven Klein, the Executive Vice President of K & H, oversaw Bell's work, including giving constructive feedback on his work performance.  All property listings obtained by Bell had to be accepted by either Mark Klein or Steven Klein.  The listing agreements for Bell's properties had to be signed by Mark Klein or Steven Klein.  Mark Klein and Steven Klein also discussed marketing strategies with Bell.

13. Bell was not paid a salary by K & H, but was paid a commission on any sales transactions he procured that closed.

14. While at K & H, Bell was compensated based on a commission schedule as described in the Office Policy and Commission Schedule between K & H and Bell.

15. K & H has never been a licensed subscriber to any of the CoStar commercial real estate information products, nor has K & H ever paid CoStar any license fees for the access and use of the CoStar products.

### EXHIBIT D - COSTAR'S CONTESTED ISSUES OF FACT

1. Whether K & H knew or should have known that Bell's downloading and distribution of CoStar works was unauthorized?

2. Whether individuals at K & H asked Bell to retrieve information from CoStar's online services?

3. Whether K & H provided Bell with the sites and facilities to infringe?

4. Whether K & H financially benefited from Bell's downloading and distribution of CoStar's works?

**EXHIBIT E – K & H'S CONTESTED ISSUES OF FACT**

1. Whether CoStar took reasonable steps to disable Bell's access to the CoStar online services?

2. Whether K & H intentionally induced, encouraged or materially contributed to the alleged direct infringement?

3. Whether CoStar failed to properly monitor its license holders and take reasonable and appropriate action to prevent any alleged infringement?

4. Whether any damages sought by CoStar are attributable to and were caused by a third-party?

5. Whether Bell was aware that his right to access the CoStar database was terminated?

6. Whether K & H was aware that Bell's access to the CoStar database was unauthorized?

7. Whether CoStar, Bell or a third-party was responsible for disabling Bell's password upon expiration of the license agreement?

8. Whether K & H had actual knowledge that specific infringing material was being accessed by Bell?

9. Whether there is any substantial link or connection between access of CoStar photographs by Bell and K & H?

10. Whether K & H profited directly from the alleged infringement by Bell?

11. Section 3 of the CoStar Property/CoStar Tenant/CoStar COMPS, Terms and Conditions agreement between CoStar and Coldwell Banker Commercial, NRT provides that:

   Licensee (Coldwell Banker) agrees to take all necessary precautions to maintain the confidentiality of such Proprietary Information, to comply with all copyright, trademark, trade secret, patent, contract and other laws necessary to protect all rights in the Proprietary Information, and to not remove, conceal or obliterate any copyright or other proprietary notice included in the Licensed Product. Licensee shall be liable for any violation of the provisions of the Agreement by an Authorized User and by Licensee's employees, Independent Contractors, affiliates and agents and for any unauthorized use of the Licensed Products by such persons. Licensee.

12. Section 12 of the CoStar Property/CoStar Tenant/CoStar COMPS, Terms and Conditions agreement between CoStar and Coldwell Banker Commercial, NRT provides that:

   During the term of this Agreement, Licensee (Coldwell Banker) will promptly notify CoStar of any Authorized User's change of employment or independent contractor status with Licensee, including but not limited to, termination of an Authorized User's employment or contractual service with Licensee, and upon such termination, Licensee shall destroy the passcodes for such Authorized User. No Authorized User who ceases to be an employee or Independent Contractor of Licensee may use any passcodes in any manner.Bell was an independent contractor performing services for K&H.

13. Bell operated as an independent contractor. K&H did not control how Bell performed his duties. Bell was not required to be in the office at any given day or time. K&H did not control Bell's daily activities.

**EXHIBIT F – UNCONTESTED POINTS OF LAW**

1.      Under the Copyright Act, photographs receive copyright protection and any or almost any photograph will have the necessary originality to support a copyright merely by virtue of the photographers' personal influence, choice of subject matter, angle of photograph, lighting, determination of the precise time when the photograph is to be taken, and other variants.

2.      A single group registration may be filed to register all the works that a particular photographer creates and that are published within the same calendar year.

3.      Under the Copyright Act, a compilation is a work formed by the collection and assembling of preexisting materials or of data.  The Copyright Act protects original works of authorship that possess some minimal degree of creativity.  As to originality, a work need only possess a modicum of originality to be protected by copyright.  While the facts themselves are not copyrightable, a compilation receives copyright protection as a result of original selection, coordination, or arrangement.

4.      Where registration was filed within five years after first publication of the work, the copyright registration certificate constitutes prima facie evidence of the copyright ownership, validity, and originality of each work to which plaintiffs claim exclusive rights.  Once the plaintiff presents its copyright registration in a work, the burden then shifts to the defendants to counter plaintiff's evidence.

5.      Except as noted below, whether or not the defendants intended to infringe is irrelevant to liability.  Rather, an infringer's intent or willfulness is an issue for damages.

6.      To make out a *prima facie* case of copyright infringement**,** a plaintiff must show that (1) it owns a valid copyright, and (2) defendants violated one of the exclusive rights of the copyright owner.

7.      The copying of a copyrighted work in the memory of a computer constitutes a "reproduction" under the Copyright Act.

8.      Public distribution of a copyrighted work is an exclusive right reserved to the copyright owner, and usurpation of that right constitutes infringement.

9.      A defendant has the right and ability to control the infringing activity when the defendant has the power to police the conduct or make inquiry to prevent or limit the infringement.  This does not depend on the existence of an employer-employee relationship and can occur in the context of an independent contractor.  Moreover, the right and ability to supervise need not be absolute or perfect, and vicarious liability can attach even if the defendant lacks knowledge of the infringing activity.

10.     A contributory infringer is one who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another.

11.     A contributory infringer is one, who with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.

12.     Inducement and material contribution are distinct theories of contributory liability through which defendants can be found liable.  Inducement requires that the defendant has undertaken purposeful acts aimed at assisting or encouraging others to infringe copyright.  In contrast, material contribution applies when a defendant provides the "sites and facilities" where the infringement occurs.

13.     A prevailing plaintiff who elects to collect statutory damages is entitled to a sum of not less than $750 or more than $30,000 for each individual work that was infringed.  If a defendant's actions were willful, then the cap increases to $150,000 per work infringed.

14.     Willful infringement is that committed with knowledge of or "reckless disregard" for the plaintiffs' copyrights.  Reckless disregard can be inferred from continuous infringement, a past pattern of infringement, continuing infringement despite warnings, or other circumstances.

15.     Some of the factors to be considered in determining the amount of statutory damages include (i) the need to deter copyright infringement, (ii) the infringer's state of mind, (iii) the expenses saved or profits reaped by the infringer, and (iv)the revenue lost by plaintiff.  Importantly, the aim of the Court is not just to compensate plaintiff for its injury but also to put defendants on notice that it costs more to violate the copyright laws than it does to obey them.  Accordingly, it is common for a statutory damages award to be set at some multiple of what it would have cost to obtain a proper license, often at two to three times such amount.

16.     All who participate in an infringement are jointly and severally liable the damages that result therefrom.

17.     The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages.  Moreover, contract language that is unambiguous on its face must be given its plain meaning.

18.     Upon breach of contract, the non-breaching party is entitled to the compensatory damages that are the natural and proximate consequence of the breach, measured by the sum that would place the injured party in the same position as if the contract had been performed.

**EXHIBIT G – COSTAR'S CONTESTED ISSUES OF LAW**

1. Reproduction under the Copyright Act includes (i) downloading web pages containing copyrighted works to a computer's cache or random access memory while accessing a website, (ii) downloading a copyrighted work from a web page to a computer's hard drive or permanent memory, or (iii) making a copy of a copyrighted work as an attachment to an email.

2. A defendant is deemed to have a financial interest in the infringing activity by virtue of receiving or expecting to receive anything of value, including costs savings or avoidance of a license fee, and regardless of whether the defendant actually profited from the infringement.

3. Vicarious liability arises when someone, regardless of their knowledge or intent, has the right and ability to supervise the infringing activity and a financial interest in the activity. Knowledge of the infringement is not necessary to a finding of vicarious infringement. A defendant may be vicariously liable for infringement even if ignorant of the infringement.

4. Knowledge for purposes of contributory infringement is objective, namely, know or have reason to know of the infringing activity. Actual knowledge or knowledge of specific infringements is not required. Rather, knowledge of the infringing activity may be actual or constructive, and knowledge may be imputed where there are "clear indicators" that an activity is infringing or where the lack of actual knowledge was not objectively reasonable. Willful blindness equates to knowledge in copyright law, as it does in the generally.

5. The CoStar Terms of Use constitute a valid and enforceable agreement between CoStar and the party that logs into the subscription only areas of the CoStar website.

**EXHIBIT H – K & H's CONTESTED ISSUES OF LAW**

1.  What legally satisfies the "means and facilities" requirement of the element for contributory infringement?

2.  What legally satisfies the "direct financial benefit" element necessary to establish vicarious copyright infringement?

3.  Liability for vicarious liability arises when someone, profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.

4.  Liability for vicarious infringement arises when someone profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Klein & Heuchan, Inc.
      Plaintiff and Counter-Defendant,

                                         Case No: 8:08-cv-01227-JSM

v.

CoStar Realty Information, Inc. and CoStar
      Group, Inc.,
      Defendants and Counter-Plaintiffs.

| EXHIBIT I – JOINT TRIAL EXHIBIT LIST | | | | |
|---|---|---|---|---|
| **Exhibit No.** | **Date Identified** | **Date Admitted** | **Witness** | **Description** |
| | | | | Summary of CoStar Photographs Allegedly Infringed |
| | | | | Summary of CoStar Database Registrations Allegedly Infringed |
| | | | | CoStar's internal contact management database of activity/contacts with Bell of Coldwell - CSGP 24-53 |
| | | | | License Agreement between CoStar and Coldwell dated 2/1/08, w/ Exhibits A-D - CSGP 66-107 |
| | | | | License Agreement between CoStar and Coldwell dated 9/30/05 w/ addenda extending the term - CSGP 108-126 |

| | | | | |
|---|---|---|---|---|
| **EXHIBIT LIST -- CONTINUATION SHEET** | | | | |
| **Exhibit No.** | **Date Identified** | **Date Admitted** | **Witness** | **Description** |
| | | | | Summary of logins to CoStar subscription-only services with Bell's ID/password - CSGP 164-166 |
| | | | | CoStar subscription-only services with Scott Bell's ID/password - CSGP 167-178 |
| | | | | Spreadsheet from CoStar's internal contact management database of activity/contacts with Coldwell - CSGP 179-352 |
| | | | | Printouts of pages from K&H's website - CSGP 353-360 |
| | | | | Screen capture from CoStar server showing that UserID 313614 (Bell) accepted the Terms of Use  - CSGP 365 |
| | | | | CoStar Office Report Year-End 2007 Tampa/St Petersburg Office Market - CSGP 367-400 |
| | | | | CoStar Office Report First Quarter 2007 Tampa/St Petersburg Office Market - CSGP 401-434 |
| | | | | CoStar Industrial Report Year-End 2007 Tampa St Petersburg Industrial Market -  CSGP 435-465 |
| | | | | Email from Bell to Mark Klein, on 6/5/08, forwarding advertisement from CoStar - CSGP 466-467 |

| | | | | EXHIBIT LIST -- CONTINUATION SHEET |
| --- | --- | --- | --- | --- |
| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
| | | | | Spreadsheet with building information - CSGP 475-506 |
| | | | | Spreadsheet with building information - CSGP 507-526 |
| | | | | Spreadsheet with building information - CSGP 587-605 |
| | | | | Email from Bell to Steve Klein dated 4/6/07, attaching Excel spreadsheet of building information (SJ Ex 10) - CSGP 639-660 |
| | | | | CoStar Comps database re 8619 NY Avenue in Hudson, FL on 1/17/07 (SJ Ex 4) - CSGP 728-729 |
| | | | | Email from Bell to Tracy McMurray of Ashberrywater.com dated 1/31/07 with attached documents (SJ Ex 5) - CSGP 730-737 |
| | | | | Email from Bell to Mark Klein dated 8/16/07 attaching building information (SJ Ex 6) - CSGP 738-749 |
| | | | | Email from Bell to Steve Klein, dated 4/4/07, providing the CoStar Office Report Year-End 2006 Tampa/St Petersburg Office Market (SJ Ex 7) - CSGP 750-785 |
| | | | | Email from Bell to Gus dated 6/14/07 sending attachment (SJ Ex 8) - CSGP 786-788 |

| EXHIBIT LIST -- CONTINUATION SHEET | | | | |
|---|---|---|---|---|
| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
| | | | | Email from Bell to CS Duncan, dated 5/23/07, with link to document in CoStar Property service (SJ Ex 9) - CSGP 789-90 |
| | | | | List of Properties on CoStar Service that Bell accessed between January 2007 and May 2008 - Lardizable SJ Dec. Ex. B |
| | | | | CoStar Contact Identification for Bell – Lardizabal SJ Dec. Ex. B |
| | | | | Examples of CoStar Screen Captures for Properties Bell Downloaded – Lardizabal SJ Dec. Ex. C |
| | | | | CoStar communication with Coldwell re Bell from Contact Mgmt Database – Williams SJ Dec. Ex. B. |
| | | | | CoStar email to Bell with access information from Contact Mgmt Database – Williams SJ Dec. Ex. C |
| | | | | List of Log-Ins to CoStar Service by Bell username and password – Williams SJ Dec. Ex. D |
| | | | | CoStar record regarding Mark Klein IP address – Williams SJ Dec Ex. F |
| | | | | CoStar record regarding Steve Klein IP address – Williams SJ Dec. Ex. F |

| EXHIBIT LIST -- CONTINUATION SHEET | | | | |
|---|---|---|---|---|
| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
|  |  |  |  | CoStar record regarding K & H licensing proposal – Williams SJ Dec. Ex G |
|  |  |  |  | Ten (10) examples of CoStar copyrighted photographs – Williams Ex. H |
|  |  |  |  | CoStar online Terms of Use, printed on 5/19/08, last revised 5/24/06 - CSGP 915-926* |
|  |  |  |  | Forty-one (41) CoStar Copyrighted Photographs Downloaded by Bell – CSGP 927- 1100* |
|  |  |  |  | Spreadsheet from CoStar database re unauthorized copying at issue - CSGP 1101-1163* |
|  |  |  |  | CoStar client list from CoStar website - CSGP 1164-1166* |
|  |  |  |  | CoStar "Know Your Market" product brochure from CoStar website - CSGP 1167-1178* |
|  |  |  |  | CoStar COMPS sample report from CoStar website - CSGP 1179-1185* |
|  |  |  |  | CoStar Property Professional sample report from CoStar website - CSGP 1186-1206* |

| | | | | EXHIBIT LIST -- CONTINUATION SHEET |
|---|---|---|---|---|
| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
| | | | | CoStar Office Report - First Quarter 2007 - Tampa / St Petersburg - CSGP 1207-1240* |
| | | | | CoStar Office Report – Year End 2007 – Tampa / St Petersburg (color version) - CSGP 1241-1274* |
| | | | | CoStar Office Report – Year End 2006 – Tampa / St Petersburg (color version) - CSGP 1275-1308* |
| | | | | Twenty-one (21) VA Certificates and Applications – CSGP 1347 – 727* |
| | | | | Four TX Certificates and Applications – CSGP 1760 – 1991* |
| | | | | Bell's 2007 and 2008 Commissions – K&H 2-3 |
| | | | | K&H Office Policy and Commission Schedule for Employees and Independent Contractors w/ Bell's signature page dated 12/18/06 - K&H 4-32 |
| | | | | Lists of K&H personnel in 2007 and 2008 - K&H38 |
| | | | | Klein & Heuchan's Complaint dated June 4, 2008 |

| EXHIBIT LIST -- CONTINUATION SHEET | | | | |
|---|---|---|---|---|
| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
| | | | | CoStar Answer, Affirmative Defenses and Counterclaims dated November 21, 2008 |
| | | | | Klein & Heuchan Answer to Counterclaims dated December 8, 2008 |
| | | | | Klein & Heuchan Reponses to Interrogatories |
| | | | | Klein & Heuchan Responses to Requests for Production |
| | | | | CoStar's Online Service (for purposes of a live demonstration) |
| | | | | CoStar's Demonstrative Exhibits |
| | | | | K & H Office Policy and Commission Schedule – K&H 4-32 |
| | | | | Independent Contractor Agreement between K & H and Bell – K&H 33 |
| | | | | Professional license for Bell – K&H 36-37 |

| | | | | EXHIBIT LIST -- CONTINUATION SHEET |
|---|---|---|---|---|
| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
| | | | | April 16, 2008 letter from Ricketts to Mark Klein – K&H 39-42 |
| | | | | April 16, 2008 letter from Ricketts to Mark Klein – K&H 43-50 |
| | | | | May 28, 2008 Ricketts fax to Mark Klein – K&H 51-60 |
| | | | | K & H deal file for 5404 Cypress Center Drive – K&H 61-161 |
| | | | | K & H deal file for 1250 Rogers Street, Suite I – K&H 162-215 |
| | | | | K & H deal file for 1250 Rogers Street, Suite J – K&H 216-258 |
| | | | | K & H deal file for 1250 Rogers Street – K&H 259-401 |
| | | | | CoStar's Answer, Affirmative Defenses and Counterclaim |
| | | | | CoStar's Rule 26 Disclosures |

| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
|---|---|---|---|---|
| | | | | CoStar's Answers to Interrogatories |
| | | | | CoStar's Response to Request for Production[i] |
| | | | | Documents for rebuttal |

**EXHIBIT LIST -- CONTINUATION SHEET**

Exhibits noted with an * are subject to a Motion in Limine regarding their admissibility of untimely produced materials.

## EXHIBIT J – COSTAR'S STATEMENT OF DAMAGES

Pursuant to 17 U.S.C. §504, at any time prior to final judgment being rendered, a copyright owner may elect to receive either actual damages and profits or statutory damages. Statutory damages shall be no less than $750 and no more than $30,000 per work infringed, except in the case of willful infringement in which case the ceiling increases to $150,000 per work infringed.

Factors to be considered in determining the amount of statutory damages include (i) the need to deter copyright infringement, (ii) the infringer's state of mind, (iii) the expenses saved or profits reaped by the infringer, and (iv) the revenue lost by plaintiff.  A copyright owner need not prove or set forth any actual damages in order to receive statutory damages.  Indeed, an infringer cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law.  The aim of the Court is not just to compensate plaintiff for its injury but also to put defendants on notice that it costs more to violate the copyright laws than it does to obey them.  Accordingly, it is common for a statutory damages award to be set at some multiple of what it would have cost to obtain a proper license, often at two to three times such amount.

At this point, CoStar elects to receive statutory damages.  CoStar seeks an award of no less than $209,661 in statutory damages jointly and severally from Bell and K & H.  The figure of $209,661 is calculated by trebling the lost license fees that Klein & Heuchan would have paid CoStar for the CoStar Property and CoStar Comps database services from January 17, 2007 through April 10, 2008.  An award in excess of $209,661 may be appropriate depending on the evidence of knowledge and willfulness developed at trial.

$209,661 represents approximately $4600 for each of the 45 works infringed.  This falls on the low end of the $750 to $30,000 non-willful statutory range.

# # # # #

_____